UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS A. FOX,

        Plaintiff,

v.

COUNTY OF SAGINAW, by its BOARD
OF COMMISSIONERS, et al.,

        Defendants.

_____/

Case No. 19-CV-11887
Hon. Thomas L. Ludington
Magistrate Patricia T. Morris

**ORDER GRANTING PLAINTIFF'S MOTIONS TO LIFT THE STAY, CERTIFY THE
CLASS, AND APPOINT CLASS COUNSEL, AND DENYING PLAINTIFF'S MOTION
FOR EXPEDITED CONSIDERATION AND WAYSIDE CHURCH'S MOTION FOR
LEAVE TO FILE A RESPONSE AS MOOT**

On June 25, 2019, Plaintiff Thomas A. Fox filed a complaint on behalf of himself and all

others similarly situated against Defendants County of Saginaw, county treasurer Timothy M.

Novak, and other Michigan counties and county officials. ECF No. 1. Plaintiff seeks damages

based on Defendants' practice of retaining surplus proceeds from a tax foreclosure sale. *Id.* On

September 4, 2019, Plaintiff amended the complaint, adding three additional counts and several

more counties and county officials. ECF No. 17. Between September and November 2019,

Defendants filed several motions to dismiss. ECF Nos. 22, 23, 66.  On January 10, 2020, this case

was stayed pending the Sixth Circuit's decision in *Freed v. Thomas*, Case No. 18-2312 (6th Cir.).

ECF No. 85.

On September 14, 2020, Plaintiff filed a series of motions asking this Court to lift the stay

and certify the proposed class in light of the Michigan Supreme Court decision *Rafaeli, LLC v.

Oakland Cty.*, No. 156849, 2020 WL 4037642 (Mich. July 17, 2020). ECF Nos. 92, 93, 94. The

parties have fully briefed Plaintiff's motions. ECF Nos. 95–101, 104–13, 117, 118, 121. On

September 30, 2020, the Sixth Circuit decided *Freed v. Thomas*, No. 18-2312, 2020 WL 5814503 (6th Cir. Sept. 30, 2020). For the reasons set forth below, Plaintiff's motions to lift the stay, certify the class, and appoint class counsel and class representative will be granted. Plaintiff's motion for expedited consideration and Wayside Church's motion for leave to file a response will be denied as moot.

## I.

### A.

Plaintiff was the owner of real property (the "Property") in Gratiot County, Michigan. As of 2017, the Property had "accrued a Tax Delinquency of approximately $3,091.23." ECF No. 17 at PageID.222. Plaintiff claims that in February 2017, Defendant Michelle Thomas "seized ownership of the Property on behalf of Gratiot County as its duly elected treasurer." *Id.* Plaintiff represents that on the date of seizure, the Property had a State Equalized Value of $25,200.00. Plaintiff reasons that "[b]ecause the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $50,400.00." *Id.* Accordingly, Plaintiff claims that he had $47,308.77 in equity in the Property (the difference between the fair market value of $50,400.00 and the tax delinquency of $3,091.23). Plaintiff contends that by retaining the funds, Defendants Thomas and Gratiot County "took or destroyed" his equity in the Property. *Id.* at PageID.223.

On June 25, 2019, Plaintiff filed a complaint on behalf of himself and all others similarly situated against numerous Michigan counties and county treasurers. ECF No. 1. Plaintiff argues that Defendants are seizing property and maintaining the equity pursuant to Michigan's General Property Tax Act ("GPTA"), M.C.L. § 211.78m, which provides:

(8) A foreclosing governmental unit shall deposit the proceeds from the sale of property under this section into a restricted account designated as the "delinquent tax property sales proceeds for the year _____". The foreclosing governmental unit shall direct the investment of the account. The foreclosing governmental unit shall credit to the account interest and earnings from account investments. Proceeds in that account shall only be used by the foreclosing governmental unit for the following purposes in the following order of priority:

> (a) The delinquent tax revolving fund shall be reimbursed for all taxes, interest, and fees on all of the property, whether or not all of the property was sold.

> [. . .]

> (f) All or a portion of any remaining balance, less any contingent costs of title or other legal claims described in subdivisions (a) through (f), may subsequently be transferred into the general fund of the county by the board of commissioners.

M.C.L. § 211.78m(8); *see also* ECF No. 17 at PageID.225. The original complaint alleged that the practice was an unconstitutional taking in violation of the Fifth and Fourteenth Amendments (Counts I, II), inverse condemnation under Michigan law (Count III), violation of Article X, Section 2 of the Michigan Constitution (Count IV), and excessive fine in violation of the Eighth Amendment (Count V). ECF No. 1 at PageID.11–19.

## B.

On August 14, 2019, twenty-five Defendants filed a motion to dismiss the complaint. ECF No. 11. On September 4, 2019, Plaintiff filed an amended complaint naming additional counties and treasurers as Defendants and adding three counts: procedural due process (Count VI), substantive due process (Count VII), and unjust enrichment (Count VIII). ECF No. 17. After the amended complaint, the roster of Defendants includes Counties Alcona, Alpena, Arenac, Bay, Clare, Crawford, Genesee, Gladwin, Gratiot, Huron, Isabella, Jackson, Lapeer, Lenawee, Macomb, Midland, Montmorency, Ogemaw, Oscoda, Otsego, Presque Isle, Roscommon, Saginaw, Sanilac, St. Clair, Tuscola, and Washtenaw, and county treasurers Cheryl Franks,

- 3 -

Kimberly Ludlow, Dennis Stawowy, Richard F. Brzezinski, Jenny Beemer-Fritzinger, Kate M. Wagner, Joseph V. Wakeley, Deborah Cherry, Christy Van Tiem, Michelle Thomas, Debra McCollum, Steven W. Pickens, Karen Coffman, Dana M. Miller, Marilyn J. Woods, Lawrence Rocca, Cathy Lunsford, Jean M. Klein, Dwight McIntyre, William Kendall, Diann Axford, Bridget Lalonde, Rebecca Ragan, Timothy M. Novak, Trudy Nicol, Kelly Roberts-Burnett, Patricia Donovan-Gray, Catherine McClary, and Shawn S. Walraven. ECF No. 17.

On September 25, 2020, Defendants Dwight McIntyre and the County of Ogemaw moved to dismiss the amended complaint. ECF No. 22. Forty-three more Defendants filed a motion to dismiss the following day. ECF No. 23. On November 19, 2019, Defendants Lawrence Rocca and Macomb County also moved to dismiss the amended complaint. ECF No. 66. Each of the motions were fully briefed by the parties. ECF Nos. 27–31, 71, 78. Defendants argued that, *inter alia*, the Tax Injunction Act and principles of comity precluded subject matter jurisdiction. *See, e.g.*, ECF No. 23 at PageID.438–42. On January 10, 2020, the August 14 motion to dismiss was denied as moot and the case was stayed pending a decision in *Freed v. Thomas*, Case No. 18-2312 (6th Cir.), which presented nearly identical facts, substantive arguments, and jurisdictional questions. ECF No. 85.

## C.

On July 17, 2020, the Michigan Supreme Court decided *Rafaeli, LLC v. Oakland Cty.*, No. 156849, 2020 WL 4037642 (Mich. July 17, 2020), which held that the retention of surplus proceeds under the GPTA is an unconstitutional taking under Michigan's Takings Clause. *Rafaeli*, 2020 WL 4037642 at *21–22.

On September 14, 2020, Plaintiff filed motions to lift the stay, certify the class, and appoint class counsel and class representative, and for expedited consideration. ECF Nos. 92, 93, 94.

Plaintiff argues that, given *Rafaeli* and the impending "deluge of new cases," this Court should lift the stay and certify the proposed class as it did in a related case, *Arkona, LLC v. Cty. of Cheboygan*, Case No. 1:19-CV-12372 (E.D. Mich.). ECF No. 92 at PageID.1171–74. The parties have since briefed Plaintiff's motions. ECF Nos. 95–101, 104–13, 117, 118, 121.

Shortly after Plaintiff's motions were filed, the parties were ordered to appear for a telephonic conference on October 6, 2020 to discuss the status of the case. ECF No. 103. A week before the conference, the Sixth Circuit decided *Freed v. Thomas*, No. 18-2312, 2020 WL 5814503 (6th Cir. Sept. 30, 2020), which held that neither the Tax Injunction Act nor principles of comity bar an action against Michigan counties for surplus proceeds retained under the GPTA. *Freed*, 2020 WL 5814503, at *5–6. On October 6, 2020, just before the conference, Defendants Washtenaw County and Catherine McClary moved to dismiss the amended complaint. ECF Nos. 119, 120. At the status conference, the parties discussed a range of matters, including the significance of *Freed* and *Rafaeli*, the pending motions, efforts of other class counsel to certify a statewide class,[1] and progress toward a legislative remedy. Counsel for certain Defendants indicated that additional dispositive motions were forthcoming.

## II.

Federal Rule of Civil Procedure 23, the rule governing class actions, requires a two-stage analysis for determining whether class certification is appropriate. At stage (a), the plaintiff must establish four elements — numerosity, commonality, typicality, and adequacy of representation. Subsection (a) of Rule 23 provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

---

[1] The other counsel is plaintiffs' counsel in *Wayside Church v. Cty. of Van Buren*, No. 1:14-CV-1274 (W.D. Mich.). On the eve of the status conference, plaintiffs in *Wayside* moved for leave to respond to Plaintiff's motions (ECF No. 116) but did not move to intervene under Federal Rule of Civil Procedure 24. Accordingly, the motion will be denied as moot.

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). At stage (b), the plaintiff must satisfy the requirements of one of the types of class actions set forth in Rule 23(b). Here, Plaintiff moves for certification under the "predominance" subsection set forth in subsection (b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A court's analysis under Rule 23 must be "rigorous." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). "Rule 23," the Supreme Court instructs, "does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule — that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 350. Moreover, a class can be certified "only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id*. at 350–51 (citations and internal quotation marks omitted) (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982)).

Rule 23(g) provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In doing so, a court "must consider,"

(i)      the work counsel has done in identifying or investigating potential claims in the action;

(ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class;

Fed R. Civ. P. 23(g)(1)(A). In addition to these mandatory factors, "a [court] may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed R. Civ. P. 23(g)(1)(B).

## III.

### A.

Plaintiff first moves to lift the stay. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014) (citing *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir.1977)).

*Freed* conclusively answered the jurisdictional questions raised by Defendants. According to the Sixth Circuit, neither the Tax Injunction Act nor principles of comity preclude subject matter jurisdiction over a suit to recover surplus proceeds retained pursuant to the GPTA. *Freed*, 2020 WL 5814503, at *5–6. The Sixth Circuit, however, expressly "decline[d] Freed's invitation . . . to render a decision on the merits of his claims." *Id.* at 9. Accordingly, the stay will be lifted.

## B.

Plaintiff next proposes certification of the following class:

> All persons and entities that owned real property in the following counties, whose real property, during the relevant time period, was seized through a real property tax foreclosure, which was worth and/or which was sold at tax auction for more than the total tax delinquency and were not refunded the value of the property in excess of the delinquent taxes owed: Alcona, Alpena, Arenac, Bay, Clare, Crawford, Genesee, Gladwin, Gratiot, Huron, Isabella, Jackson, Lapeer, Lenawee, Macomb, Midland, Montmorency, Ogemaw, Oscoda, Otsego, Presque Isle, Roscommon, Saginaw, Sanilac, St Clair, Tuscola, and Washtenaw.

ECF No. 93 at PageID.1278. Before considering the merits of certification, two preliminary issues must be addressed. The first is standing. "Threshold individual standing is a prerequisite for all actions, including class actions." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). "To satisfy Article III's standing requirements, a plaintiff must show: (1) [he] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016) (internal quotation marks omitted). "Plaintiffs are not absolved of their individual obligation to satisfy the injury element of Article III just because they allege class claims . . . potential class representatives must demonstrate individual standing vis-a-vis the defendant; [they] cannot acquire such standing merely by virtue of bringing a class action." *Id.* at 582.

The Ninth Circuit, in *La Mar v. H & B Novelty & Loan Co.*, recognized two exceptions to the ordinary standing rule:

> (1) Situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury; and
> (2) Instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.

*Thompson v. Bd. of Educ. of Romeo Cmty. Sch.*, 709 F.2d 1200, 1204 (6th Cir. 1983) (discussing *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 46 (9th Cir. 1973)). Courts have since referred to these exceptions as the "juridical link doctrine" and applied them where the named plaintiff lacks traditional standing. *See, e.g.*, *Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (applying "juridical link doctrine" where "putative representatives were personally injured by the operation of the very same statute that caused the injuries to all other members of the proposed class").

Plaintiff relies on the juridical link doctrine for standing against the non-Gratiot County Defendants. ECF No. 93 at PageID.1291. He argues that "[w]here, as here, the defendants are governmental entities operating under the same state law, a class representative harmed by one such governmental entity may bring a class on behalf of the victims of all of them." *Id.* at PageID.1292. Defendants deny that the juridical link doctrine is applicable, noting that the Sixth Circuit has not applied the doctrine.[2] ECF No. 112 at PageID.1870–73.

While the Sixth Circuit has yet to apply the juridical link doctrine, Defendants mischaracterize *Thompson* and its progeny. Rather than rejecting the doctrine as a matter of law, the Sixth Circuit in *Thompson* carefully explained why the doctrine was inapplicable on the facts, stating,

> We reemphasize that this case does not involve a state statute or uniform policy being applied statewide by the defendants. Each school board adopted its own maternity leave policies to be applied to the teachers within that particular school district. A separate determination will have to be made by the district court with respect to each set of policies to decide whether, in fact, they treated pregnancy differently from other temporarily disabling conditions. This type of situation does not involve defendants that are "juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *LaMar*, 489 F.2d at 466.

---

[2] As mentioned previously, multiple groups of Defendants have filed response briefs, often with overlapping arguments. ECF Nos. 95–101, 105, 111–13. Referring to each group separately would be inefficient; hence, this opinion refers to "Defendants" collectively. Nonetheless, each individual response brief has been considered.

*Thompson*, 709 F.2d at 1205. Had the Sixth Circuit intended to reject the doctrine *per se*, it could have easily done so. The court let another opportunity pass in the recent *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 420 (6th Cir. 2020). In *Perry*, the plaintiff-insured brought a putative class action against a group of insurer entities. *Perry*, 953 F.3d at 420. Some of the defendants were nonparties to the insurance agreement and argued that the plaintiff lacked standing against them. *Id.* The Sixth Circuit agreed and, citing *Thompson*, declined to apply the juridical link doctrine. *Id.* at 420 n. 2. The Sixth Circuit explained that the doctrine applies when "the case 'involve[s] a state statute or uniform policy being applied statewide by the defendants.'" *Id.* The problem for the insured was that "[n]o such statute or statewide policy [was] at issue." *Id.*

Furthermore, since *Thompson*, several courts in this Circuit have applied the doctrine on the facts. *See, e.g.*, *Brown v. Nationwide Life Ins. Co.*, No. 2:17-CV-558, 2019 WL 4543538, at *4 (S.D. Ohio Sept. 19, 2019) (holding that "putative Defendant Class members do not share a juridical link" where plaintiff's injury is not "fairly traceable to a specific provision in a shared contract and plaintiff "presents no evidence to suggest that Defendants acted in concert"); *Mull v. All. Mortg. Banking Corp.*, 219 F. Supp. 2d 895, 908 (W.D. Tenn. 2002) ("[P]laintiffs do not fall within the 'juridical link' exception. The types of cases that fall within this exception are those that have either a contractual obligation among all defendants or a state or local statute which requires common action by defendants."); *Bromley v. Michigan Educ. Ass'n-NEA*, 178 F.R.D. 148, 163 (E.D. Mich. 1998) ("Plaintiffs argue . . . that because all union locals apply the same MEA procedures for calculating and charging service fees, they meet the first criterion, and because they are all part of a single organization, they meet the second. The court finds that plaintiffs meet both exceptions.").

The Court declines Defendants' invitation to do what the Sixth Circuit has not and, instead, holds that Defendants are juridically related for purposes of standing. The entire case turns on whether Defendants, in retaining surplus proceeds under the GPTA, violated state and federal rights belonging to the putative class members. Indeed, Defendants actions under the GPTA provide the sole basis for liability across all eight counts of the amended complaint. *See* ECF No. 17 at PageID.230–39. Given the factual basis for treating Defendants as juridically linked, there is no reason to "truncate potentially efficient uses of the class action device." *Payton*, 308 F.3d at 681. Accordingly, all Defendants have, by electing to act as foreclosing governmental unit and retaining surplus proceeds under the GPTA, become so juridically linked to one another that Plaintiff has standing against each of them to the same extent that he has standing against the Gratiot County Defendants.

## C.

The next issue is whether certification would be "premature" given the pending motions to dismiss and Defendants' lack of pre-certification discovery. ECF No. 97 at PageID.1532 (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1077 (6th Cir. 1996)). In *American Medical Systems*, the Sixth Circuit held that "[a]lthough Rule 23 requires that a class certification shall be decided as soon as practicable after the commencement of an action, this does not mandate precipitate action. The court should defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues."[3] *In re Am. Med. Sys., Inc.*, 75 F.3d at 1086.

Contrary to Defendants' suggestion, certification would not contradict *American Medical Systems*. The defendant in *American Medical Systems* was challenging an amended order of certification entered only three days after it was served. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1077.

---

[3] The "as soon as practicable" language derives from a previous version of Rule 23, which has since been amended.

By contrast, Plaintiff's amended complaint was filed in September 2019, and the most recent Defendants were served in January 2020. ECF Nos. 17, 87, 89. Furthermore, the record here, which includes documentary evidence, is adequate for purposes of Rule 23. *C.f. In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (reversing certification where "plaintiffs' complaint and class certification motion simply allege the elements of Rule 23(a) in conclusory terms without submitting any persuasive evidence" and "plaintiffs did not create a factual record").

Defendants next argue that the Court should decide Defendants' qualified immunity defenses before considering certification. ECF No. 112 at PageID.1861–62. Defendants' note, correctly, that qualified immunity should be addressed at the earliest possible time. *See Smith v. Leis*, 407 F. App'x 918, 926 (6th Cir. 2011) ("[P]ermitting further litigation prior to ruling on the immunity claims directly contradicts this court's mandate that district courts may not avoid ruling on properly raised claims of immunity."); *Everson v. Leis*, 556 F.3d 484, 491 (6th Cir. 2009) ("Like in *Skousen*, *Wallin*, and *Summers*, the district court permitted discovery to continue before first resolving the qualified-immunity question. Thus, Defendants would be forced to go through a large part of the litigation process that the qualified immunity doctrine seeks to avoid.") (internal quotation marks omitted). However, this case is distinguishable for two reasons. First, additional motions to dismiss are forthcoming—a fact that is particularly significant where, as here, intervening decisions have delayed the ordinary course and changed the legal landscape. Second, unlike in *Smith* and *Everson*, there is no prejudice to Defendants because discovery will not begin until the pending and forthcoming motions to dismiss have been decided.

Rule 23 requires consideration of certification "at an early practicable time," and based on the foregoing, neither the lack of pre-certification discovery nor the pending motions warrant further delay. Fed R. Civ. P. 23(c)(1)(A).

**D.**

**1.**

With respect to the merits of certification, Plaintiff has carried his burden under Rule 23. First, the class is sufficiently numerous to make joinder "impracticable." Fed. R. Civ. P. 23(a)(1); *see generally* 32B Am. Jur. 2d Fed. Courts, *When Joinder is Impracticable* § 1608 (2012). Impracticability is not impossibility—rather, "class representatives must demonstrate only that 'common sense' suggests that it would be difficult or inconvenient to join all class members." *Varacallo v. Mass. Mut. Life Ins. Co*., 226 F.R.D. 207, 229 (D.N.J. 2005) (quoting *In re the Prudential Ins. Co. of Am.*, 962 F. Supp. 450, 495, 510 (D.N.J. 1997)); *see Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 168 (E.D. Mich. 2006) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."), *aff'd* 511 F.3d 554 (6th Cir. 2007). "There is no specific number below which class action relief is automatically precluded," the Sixth Circuit notes, elaborating: "Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. Gen. Motors Corp*., 532 F2d 511, 523 n.24 (1976); *cf. Flood v. Dominguez*, 270 F.R.D. 413, 417(N.D. Ind. 2010) ("Generally speaking, when the putative class consists of more than 40 members, numerosity is met, but there is nothing magical about that number.").

Using public records, Plaintiff has identified 1,297 parcels foreclosed upon by Defendants in 2018 with a fair market value greater than the tax delinquency. *See* ECF No. 93-3. Plaintiff estimates that, given the class period, there may be more than 9,000 putative class members. ECF No. 93 at PageID.1295. Defendants reject Plaintiff's estimation as "guess-work." ECF No. 112 at PageID.1863. Specifically, Defendants criticize Plaintiff's reliance on the fair market value of the

parcels and his assumption that "every previous property owner is entitled to collect surplus proceeds." ECF No. 113 at PageID.1883. Defendants suggest, per *Rafaeli*, that the proper measure of surplus proceeds is the sales price, not fair market value, and that putative class members may not be entitled to the surplus proceeds because of outstanding liens on the property. *Id.* at PageID.1883–84.

Defendants' arguments are unpersuasive. Rule 23(a) requires a common sense judgment, not practical certainty. While Defendants correctly note that *Rafaeli* rejects a fair market value calculation for compensation, *Rafaeli*, 2020 WL 4037642 at *24, Plaintiff's putative class includes owners of real property "which was worth *and/or* which was sold at tax auction for more than the total tax delinquency." ECF No. 93 at PageID.1278 (emphasis added). This Court has yet to decide the proper measure of damages,[4] and common sense suggests that if Plaintiff's estimate is even reasonably accurate, joinder would be implausible. Defendants' contention that some putative class members would owe their share of damages to other creditors is simply irrelevant for purposes of numerosity.

Furthermore, Defendant's reliance on *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005), is misplaced. In *Golden*, the plaintiff sought to represent "tenants in Columbus whose water service was or will be terminated because of the landlord's or prior tenant's indebtedness." *Golden*, 404 F.3d at 966. To prove numerosity, the plaintiff relied solely on the total number of Columbus tenants, 150,000. *Id.* Naturally, the Sixth Circuit found that "reference to the total number of tenants in Columbus is not probative of the number of tenants reasonably likely to face the harm for which [the plaintiff] seeks redress." *Id.* Plaintiff's estimate, by contrast, is based on

---

[4] Plaintiff undoubtedly prefers damages measured by the fair market value of the foreclosed property. *See* ECF No. 17 at PageID.235 (relying on Mich. Const. art. X, § 2).

public records of foreclosure that are surely probative of the number of putative class members. Accordingly, the class is sufficiently numerous.

**2.**

Second, the class shares common issues of fact and law. Commonality, as noted, requires a plaintiff to demonstrate "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "That language is easy to misread, since any competently crafted class complaint literally raises common questions." *Wal-Mart*, 564 U.S. at 349 (internal alterations and quotation marks omitted). The common issue must involve—indeed, resolve—an essential element of the class members' claim:

> Their claims must depend upon a common contention — for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id*. at 350. The Sixth Circuit similarly notes, "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)).

In this case, the putative class consists of persons and entities that "were not refunded the value of the property in excess of the delinquent taxes owed." ECF No. 93 at PageID.1278. Legally, the question of whether this is a cognizable constitutional injury is the same for each of the putative class members. As in *Powers*, the dispositive facts and law are the same as to each class member. *C.f. Powers*, 501 F.3d at 619 ("Powers has asserted a single factual theory of wrongdoing and seeks to recover based on the single legal claim that the Public Defender's practice violated class members' due process rights."). Defendants, however, contend that the putative class

- 15 -

lacks commonality because of dissimilarities in damages and the application of liens and other property rights. ECF No. 113 at PageID.1184–87. Defendants conclude that the necessity of "individual inquiries" will turn the case into a "logistical nightmare." *Id.* at PageID.1885–86.

Defendants are ultimately concerned with a dissimilarity in damages, rather than legal questions. "No matter how individualized the issue of damages may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action."[5] *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 854 (6th Cir. 2013). The Michigan Court of Claims held similarly when certifying a related class. *See Hathon v. State of Michigan*, Case No. 19-000023-MZ, at 9 (Jun. 7, 2019) ("The common and controlling legal questions of whether the GPTA's retention procedures are constitutionally infirm are not affected by actions former lienholders might take . . . in the event [the plaintiffs succeed.]").

Contrary to Defendants' suggestion, *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017), and *Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998), are inapplicable. In *Sandusky*, the defendants in a putative "junk fax" class action had raised a consent defense, which meant that "if [the] 40,343-member class were certified, the district court would be tasked with filtering out those members to whom [a defendant] was not liable." *Sandusky*, 863 F.3d at 468. The Sixth Circuit thus held that the "predominant issue of fact is undoubtedly one of individual consent." *Id.* Similarly, *Sprague* concerned a putative class of General Motors retirees pursuing ERISA claims premised on theories of contract and estoppel. *Sprague*, 133 F.3d 388 at 398. Commonality was precluded by "myriad variations" among the claims, including differences in governing legal documents, oral and written representations by

---

[5] Of course, this assumes that such liens survived the tax foreclosure. *See Hathon*, at 9 (noting that the "GPTA accounts for, and extinguishes, all liens").

GM, and the subjective understanding and reliance of the retirees. *Id.* Here, the putative class shares obvious questions of fact and law and would require minimal individualized assessment.

Defendants further argue that, regardless of "common questions," a "common answer" is unreachable because a nonparty, the State of Michigan, authored the GPTA. ECF No. 112 at PageID.1864–65. This argument appears to be an extension of Defendants' substantive defense that county officials cannot be held liable for enforcing a duly enacted statute. *See, e.g.*, ECF No. 23 at PageID.445–49. This substantive defense will be considered in due course along with all other defenses raised in the motions to dismiss. For purposes of certification, however, the argument is inapposite. The substantive question of whether Defendants are liable for unlawfully retaining surplus proceeds is neither relevant to commonality nor ripe for review in a certification order. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d at 851–52. ("District courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits.") (internal quotation marks omitted).

Defendants finally claim that because Plaintiff "has not identified even a single other potential class member . . . [,] whether other people exist who [] Plaintiff believes may be similarly situated is yet to be determined." ECF No. 97 at PageID.1537. This claim is not credible. Regardless of the lack of names, Plaintiff has adequately demonstrated the existence of a large class of similarly situated persons and entities sharing common questions of fact and law. Accordingly, the commonality requirement has been met.

### 3.

Plaintiff has likewise established typicality as required by Rule 23(a)(3). Conceptually, typicality and commonality may be distinct. As a practical matter, however, they "tend to merge." *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 158 n.13 (1982); *see generally Rosario v.*

*Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality.").

The purpose of the requirement, the Supreme Court explains, is a screening mechanism "for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158 n. 13.

Here, Plaintiff's claims are typical of the class, all of which boil down to a simple proposition: Defendants unlawfully retained surplus funds after seizing property to satisfy a tax delinquency. Defendants' arguments to the contrary are unconvincing and essentially restate their position regarding the authorship of the GPTA, the lack of additional named plaintiffs, the prematurity of certification, and the effect of outstanding liens. *See, e.g.*, ECF No. 113 at PageID.1887–89. There can be little doubt that Plaintiff's claims and the class claims are "so interrelated that the interests of the class members will be fairly and adequately protected." *Falcon*, 457 U.S. at 158 n.13. This is true even if "the evidence relevant to [Plaintiff's] claim varies from other class members, some class members would be subject to different defenses, and the members [] have suffered varying levels of injury." *Davidson v. Henkel Corp.*, 302 F.R.D. 427, 438 (E.D. Mich. 2014) (citing *Reese v. CNH America LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005)). Accordingly, Plaintiff's claims are typical of the class.

**4.**

Plaintiff has also established that he "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "tends to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)

(internal quotation marks omitted) (citing *Falcon*, 457 U.S. at 158 n.13). The purpose of the adequacy requirement is "to uncover conflicts of interest between named parties and the class they seek to represent." *Id*. at 625 (citing *Falcon*, 457 U.S. at 157–58). The Sixth Circuit therefore holds that "to satisfy the adequate representation requirements under Rule 23 . . . there must be an absence of a conflict of interest, and the presence of common interests and injury." *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998).

Here, there is no evidence of a conflict of interest. Defendants hint at the existence of antagonisms between Plaintiff, his counsel, and the class but provide no evidence in support. ECF No. 112 at PageID.1866–67. Defendant's also argue, without merit, that the adequacy inquiry is "premature" and that "common interests have not been established." ECF No. 97 at PageID.1537. To the contrary, given the discussion so far, the incentives of the class members, Plaintiff and his counsel are aligned, and all share the same goal: maximizing recovery. Moreover, as discussed in Section III.E., *infra*, Plaintiff's counsel appears qualified to act as class counsel. Accordingly, Plaintiff has established the adequacy of representation required by Rule 23(a)(4).

## 5.

Finally, the common questions pertinent to the class "predominate over any questions affecting only individual members," and a class action is a superior vehicle "for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To establish predominance, the plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 564 (6th Cir. 2007) (quotation marks omitted) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)). The Supreme Court explains that the "predominance inquiry tests whether proposed

classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

Whether Defendants unlawfully retained surplus proceeds is a specific legal question that is subject to generalized proof by all members of the putative class. Moreover, class litigation is superior to having putative class members pursue recovery in various courts individually. Indeed, for some putative class members, a class action is probably the only practical remedy because the cost of litigation will, in some cases, exceed the likely amount of recovery. *C.f. Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits.").

Defendants' argument to the contrary is premised on the notion that creditors will eventually descend on the class to secure their portion of the recovery. As already discussed, the risk of involving lienholders is insufficient to defeat class certification. *See* Section III.D.2., *supra*. Ultimately, even if Defendants are correct and a substantial number of creditors emerge, Defendants have failed to show that litigation scattered across the Michigan courts would be preferable to a class action. Class-wide resolution remains the superior method.

The prospect of a legislative remedy does not prove otherwise. Currently, there are two bills in the Michigan Legislature that would establish a statutory remedy for putative class members: Senate Bill 1137 and House Bill 6261. Confusingly, Defendants discuss Senate Bill 1137, while Plaintiff discusses House Bill 6261. ECF No. 113 at PageID.1889; ECF No. 121 at PageID.2117. It is unclear whether the parties are aware that there are, in fact, two separate bills. In any case, both bills would establish a procedure through proposed M.C.L. § 211.78(t) whereby property owners can claim an interest in surplus proceeds retained by a foreclosing governmental unit after a tax foreclosure sale. *See* H.B. 6261 (Mich. 2020); S.B. 1137 (Mich. 2020).

While this case seems well-suited for legislative action, the remedies being proposed are plainly inferior to a class action. Both bills would preclude recovery of surplus proceeds resulting from foreclosures beyond the preceding two-year statutory period. *See* H.B. 6261 (Mich. 2020) (proposed M.C.L. § 211.78t(1)(b)(ii)); S.B. 1137 (Mich. 2020) (proposed M.C.L. § 211.78l(1)). Similarly, both bills would limit damages to the difference between the amount received for the property and the delinquent taxes (including costs and expenses). *See* H.B. 6261 (Mich. 2020) (proposed M.C.L. § 211.78t(2)(b)(v)); S.B. 1137 (Mich. 2020) (proposed M.C.L. § 211.78t(12)(b)). Furthermore, as Plaintiff notes, it is unclear how effective the legislative framework, if enacted, will prove in practice. The proposed class offers greater recovery for a larger group of claimants and is, therefore, superior under Rule 23(b)(3).

### E.

Plaintiff also seeks the appointment of counsel Mr. E. Powell Miller of The Miller Law Firm PC and Mr. Phillip L. Ellison of Outside Legal Counsel PLC as class counsel. *Id.* "In determining lead counsel, a court should conduct an independent review to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." *In re Delphi ERISA Litig.*, 230 F.R.D. 496, 498 (E.D. Mich. 2005).

The Rule 23(g) factors support the appointment of Mr. E. Powell Miller and Mr. Phillip L. Ellison as class counsel. First, counsel have devoted substantial time and resources to the prosecution of Plaintiff's claims and seem prepared to continue litigating the matter for as long as necessary. Indeed, counsel represent similar classes in other cases, such as *Arkona, LLC v. Cty. of Cheboygan*, Case No. 1:19-CV-12372 (E.D. Mich.). More generally, counsel have substantial experience litigating class actions and novel constitutional questions. *See* ECF Nos. 93-5, 93-6.

Defendants state no objection other than the already-rejected argument that appointment would be "premature." ECF No. 97 at PageID.1539–40. Accordingly, Mr. E. Powell Miller and Mr. Phillip L. Ellison will be appointed class counsel, and Plaintiff Thomas A. Fox will be appointed class representative.

## IV.

Accordingly, it is **ORDERED** that Plaintiff's Emergency Motion to Lift Stay, ECF No. 92, is **GRANTED**.

It is further **ORDERED** that Plaintiff's Motion for Class Certification and Appointment of Class Counsel and Class Representative, ECF No. 93, is **GRANTED**. The class is certified. Plaintiff Thomas A. Fox is appointed class representative. Mr. E. Powell Miller of The Miller Law Firm PC and Mr. Phillip L. Ellison of Outside Legal Counsel PLC are appointed class counsel.

It is further **ORDERED** that Plaintiff's Motion for Expedited Consideration of Plaintiff's Motion for Class Certification and Appointment of Class Counsel and Class Representative, ECF No. 94, is **DENIED AS MOOT**.

It is further **ORDERED** that Wayside Church's Motion for Leave to File Response, ECF No. 116, is **DENIED AS MOOT**.

Dated: October 16, 2020                         s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge