UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS A. FOX,
on behalf of himself and all
others similarly situated,

         Plaintiff,

v.

COUNTY OF SAGINAW, by its BOARD
OF COMMISSIONERS, et al.,

         Defendants.

_____/

Case No. 19-CV-11887
Hon. Thomas L. Ludington
Magistrate Patricia T. Morris

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS, DISMISSING THE INDIVIDUAL DEFENDANTS, AND DISMISSING
COUNTS II, IV, V, AND VII AGAINST THE COUNTY DEFENDANTS**

On June 25, 2019, Plaintiff Thomas A. Fox filed a complaint on behalf of himself and all

others similarly situated against Defendants Gratiot County, Gratiot County Treasurer Michelle

Thomas, and other Michigan counties (the "County Defendants") and county officials (the

"Individual Defendants"). ECF No. 1. Plaintiff seeks damages based on Defendants' retention of

surplus proceeds from tax foreclosure sales. *Id.* On January 10, 2020, the case was stayed pending

a decision in *Freed v. Thomas*, No. 18-2312 (6th Cir.). On September 30, 2020, the Sixth Circuit

decided *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020). On October 16, 2020, the stay was lifted,

the class was certified, and class counsel was appointed. ECF No. 124. Several motions to dismiss

remain pending. ECF Nos. 22, 23, 66, 119, 120, 123. For the reasons stated below, Defendants'

motions to dismiss will be granted in part and denied in part, the Individual Defendants will be

dismissed, and Counts II, IV, V, and VII will be dismissed against the County Defendants.

# I.

## A.

Plaintiff was the owner of real property (the "Property") in Gratiot County, Michigan. As of 2017, the Property had "accrued a Tax Delinquency of approximately $3,091.23." ECF No. 17 at PageID.222. Plaintiff claims that in February 2017, Defendant Michelle Thomas "seized ownership of the Property on behalf of Gratiot County as its duly elected treasurer." *Id.* Plaintiff represents that on the date of seizure, the Property had a State Equalized Value of $25,200.00. Plaintiff reasons that "[b]ecause the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $50,400.00." *Id.* Accordingly, Plaintiff claims that he had $47,308.77 in equity in the Property (the difference between the fair market value of $50,400.00 and the tax delinquency of $3,091.23). Plaintiff contends that by retaining the funds, Defendants Thomas and Gratiot County "took or destroyed" his equity in the Property. *Id.* at PageID.223.

On June 25, 2019, Plaintiff filed a complaint on behalf of himself and all others similarly situated against numerous Michigan counties and county treasurers in their individual and official capacities. ECF No. 1. Plaintiff argues that Defendants are unlawfully retaining the equity in foreclosed property sold pursuant to Michigan's General Property Tax Act (the "GPTA"), M.C.L. § 211.78m. The GPTA provides,

> (8) A foreclosing governmental unit shall deposit the proceeds from the sale of property under this section into a restricted account designated as the "delinquent tax property sales proceeds for the year _____". The foreclosing governmental unit shall direct the investment of the account. The foreclosing governmental unit shall credit to the account interest and earnings from account investments. Proceeds in that account shall only be used by the foreclosing governmental unit for the following purposes in the following order of priority:

(a) The delinquent tax revolving fund shall be reimbursed for all taxes, interest, and fees on all of the property, whether or not all of the property was sold.

[. . .]

(f) All or a portion of any remaining balance, less any contingent costs of title or other legal claims described in subdivisions (a) through (f), may subsequently be transferred into the general fund of the county by the board of commissioners.

M.C.L. § 211.78m(8); *see also* ECF No. 17 at PageID.225. The Complaint sought damages from Defendants for a taking without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution (Counts I and II), inverse condemnation (Count III), violation of article X, section 2 of the Michigan Constitution (Count IV), and an excessive fine in violation of the Eighth Amendment of the United States Constitution (Count V). ECF No. 1 at PageID.11–19.

**B.**

On August 14, 2019, twenty-five Defendants filed a joint motion to dismiss the complaint. ECF No. 11. On September 4, 2019, Plaintiff filed an amended complaint naming additional counties and treasurers as Defendants. ECF No. 17. The Amended Complaint also added three additional counts: procedural due process (Count VI), substantive due process (Count VII), and unjust enrichment (Count VIII). ECF No. 17.

Following the Amended Complaint, the County Defendants now include Counties Alcona, Alpena, Arenac, Bay, Clare, Crawford, Genesee, Gladwin, Gratiot, Huron, Isabella, Jackson, Lapeer, Lenawee, Macomb, Midland, Montmorency, Ogemaw, Oscoda, Otsego, Presque Isle, Roscommon, Saginaw, Sanilac, St. Clair, Tuscola, and Washtenaw. The Individual Defendants include Cheryl Franks, Kimberly Ludlow, Dennis Stawowy, Richard F. Brzezinkski, Jenny Beemer-Fritzinger, Kate M. Wagner, Joseph V. Wakeley, Deborah Cherry, Christy Van

Tiem, Michelle Thomas, Debra McCollum, Steven W. Pickens, Karen Coffman, Dana M. Miller, Marilyn J. Woods, Lawrence Rocca, Cathy Lunsford, Jean M. Klein, Dwight McIntyre, William Kendall, Diann Axford, Bridget Lalonde, Rebecca Ragan, Timothy M. Novak, Trudy Nicol, Kelly Roberts-Burnett, Patricia Donovan-Gray, Catherine McClary, and Shawna S. Walraven.

On September 25, 2020, Defendants Dwight McIntyre and the County of Ogemaw moved to dismiss the Amended Complaint. ECF No. 22. Forty-three more Defendants filed a joint motion to dismiss the following day. ECF No. 23. On November 19, 2019, Defendants Lawrence Rocca and Macomb County also moved to dismiss the Amended Complaint. ECF No. 66. Each of the motions were fully briefed by the parties. ECF Nos. 27–31, 71, 78. Defendants argued that the Tax Injunction Act and principles of comity precluded subject matter jurisdiction. *See, e.g.*, ECF No. 23 at PageID.438–42. On January 10, 2020, the August 14 motion to dismiss was denied as moot and the case was stayed pending a decision in *Freed v. Thomas*, No. 18-2312 (6th Cir.), a case which presented nearly identical facts, substantive arguments, and jurisdictional questions. ECF No. 85.

## C.

On July 17, 2020, the Michigan Supreme Court decided *Rafaeli, LLC v. Oakland Cty.*, No. 156849, 2020 WL 4037642 (Mich. July 17, 2020). *Rafaeli* was an inverse condemnation action brought by Michigan taxpayers alleging that it was unconstitutional for counties to retain surplus proceeds from tax sales as prescribed by the GPTA. *Rafaeli*, 2020 WL 4037642, at *5. The Michigan Supreme Court agreed, holding that the retention of surplus proceeds under the GPTA constituted a taking without just compensation in violation of Michigan's Taking Clause. *Rafaeli*, 2020 WL 4037642, at *21–22.

On September 14, 2020, Plaintiff filed motions to lift the stay, certify the class, and appoint class counsel and class representative, and for expedited consideration. ECF Nos. 92, 93, 94. On September 30, 2020, the Sixth Circuit decided *Freed v. Thomas*, No. 18-2312, 2020 WL 5814503 (6th Cir. Sept. 30, 2020), holding that neither the Tax Injunction Act nor principles of comity preclude an action against Michigan counties for surplus proceeds retained under the GPTA. *Freed*, 2020 WL 5814503, at \*5–6. On October 14, 2020, the Crawford and Presque Isle County Defendants filed a motion to dismiss. ECF No. 122. The Alcona County Defendants also filed a motion to dismiss later the same day. ECF No. 123. On October 16, 2020, the stay was lifted, the class was certified, and class counsel was appointed. ECF No. 124. The certified class is as follows:

> All persons and entities that owned real property in the following counties, whose real property, during the relevant time period, was seized through a real property tax foreclosure, which was worth and/or which was sold at tax auction for more than the total tax delinquency and were not refunded the value of the property in excess of the delinquent taxes owed: Alcona, Alpena, Arenac, Bay, Clare, Crawford, Genesee, Gladwin, Gratiot, Huron, Isabella, Jackson, Lapeer, Lenawee, Macomb, Midland, Montmorency, Ogemaw, Oscoda, Otsego, Presque Isle, Roscommon, Saginaw, Sanilac, St Clair, Tuscola, and Washtenaw.

*Id.* at PageID.2291.

## II.

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movants' favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 679–79 (quotations and citation omitted).

### III.

Defendants raise many independent arguments for dismissing the Amended Complaint. The threshold issues of jurisdiction, standing, immunity, and res judicata will be addressed first.

### A.

First, as previously stated in the certification order, "*Freed* conclusively answered the jurisdictional questions raised by Defendants." ECF No. 124 at PageID.2290. "[N]either the Tax Injunction Act nor principles of comity preclude subject matter jurisdiction over a suit to recover surplus proceeds retained pursuant to the GPTA." *Id.* (citing *Freed*, 2020 WL 5814503, at *5–6). Accordingly, Defendants' various arguments regarding the Tax Injunction Act and principles of comity—all of which were raised before the Sixth Circuit decided *Freed*—must be rejected.

### B.

Defendants next urge this Court to revisit its decision finding that Defendants are juridically linked for standing purposes. Defendants correctly note that, per the Amended Complaint, Plaintiff was injured only by the Gratiot County Defendants. *See* ECF No. 17 at PageID.223–24. Normally, this would require the dismissal of the non-Gratiot County Defendants, given that "standing is a threshold constitutional question of justiciability." *Mason v. Adams Cty. Recorder*, 901 F.3d 753, 756 (6th Cir. 2018). Nonetheless, this Court certified the class and held that Plaintiff had standing against the non-Gratiot County Defendants by virtue of the "juridical link doctrine." ECF No. 124 at PageID.2291–94. The origin and application of the doctrine was explained as follows:

- 6 -

"Threshold individual standing is a prerequisite for all actions, including class actions." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). "To satisfy Article III's standing requirements, a plaintiff must show: (1) [he] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016) (internal quotation marks omitted). "Plaintiffs are not absolved of their individual obligation to satisfy the injury element of Article III just because they allege class claims . . . potential class representatives must demonstrate individual standing vis-a-vis the defendant; [they] cannot acquire such standing merely by virtue of bringing a class action." *Id.* at 582.

The Ninth Circuit, in *La Mar v. H & B Novelty & Loan Co.*, recognized two exceptions to the ordinary standing rule:

> (1) Situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury; and

> (2) Instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.

*Thompson v. Bd. of Educ. of Romeo Cmty. Sch.*, 709 F.2d 1200, 1204 (6th Cir. 1983) (discussing *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 46 (9th Cir. 1973)). Courts have since referred to these exceptions as the "juridical link doctrine" and applied them where the named plaintiff lacks traditional standing.[1] *See, e.g., Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (applying "juridical link doctrine" where "putative representatives were personally injured by the operation of the very same statute that caused the injuries to all other members of the proposed class").

ECF No. 124 at PageID.2291–92. In certifying the class, this Court rejected the notion that the juridical link doctrine was disapproved by the Sixth Circuit:

> While the Sixth Circuit has yet to apply the juridical link doctrine, Defendants mischaracterize *Thompson* and its progeny. Rather than rejecting the doctrine as a

---

[1] Defendant's reliance on *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), is mistaken. The juridical link doctrine does not "assum[e] jurisdiction for the purposes of deciding the merits"—the Ninth Circuit practice of "hypothetical jurisdiction" that the Supreme Court rejected. *Id.* The juridical link doctrine is only an "exception[] to th[e] principle that each member of a plaintiff class must have a cause of action against each defendant." *Thompson*, 709 F.2d 1200, 1204 (6th Cir. 1983) (discussing *La Mar*).

matter of law, the Sixth Circuit in *Thompson* carefully explained why the doctrine was inapplicable on the facts, stating,

> We reemphasize that this case does not involve a state statute or uniform policy being applied statewide by the defendants. Each school board adopted its own maternity leave policies to be applied to the teachers within that particular school district. A separate determination will have to be made by the district court with respect to each set of policies to decide whether, in fact, they treated pregnancy differently from other temporarily disabling conditions. This type of situation does not involve defendants that are "juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *LaMar*, 489 F.2d at 466.

*Thompson*, 709 F.2d at 1205. Had the Sixth Circuit intended to reject the doctrine *per se*, it could have easily done so. The court let another opportunity pass in the recent *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 420 (6th Cir. 2020). In *Perry*, the plaintiff-insured brought a putative class action against a group of insurer entities. *Perry*, 953 F.3d at 420. Some of the defendants were nonparties to the insurance agreement and argued that the plaintiff lacked standing against them. *Id.* The Sixth Circuit agreed and, citing *Thompson*, declined to apply the juridical link doctrine. *Id.* at 420 n.2. The Sixth Circuit explained that the doctrine applies when "the case 'involve[s] a state statute or uniform policy being applied statewide by the defendants.'" *Id.* The problem for the insured was that "[n]o such statute or statewide policy [was] at issue." *Id.*

Furthermore, since *Thompson*, several courts in this Circuit have applied the doctrine on the facts. *See, e.g.*, *Brown v. Nationwide Life Ins. Co.*, No. 2:17-CV-558, 2019 WL 4543538, at *4 (S.D. Ohio Sept. 19, 2019) (holding that "putative Defendant Class members do not share a juridical link" where plaintiff's injury is not "fairly traceable to a specific provision in a shared contract and plaintiff "presents no evidence to suggest that Defendants acted in concert"); *Mull v. All. Mortg. Banking Corp.*, 219 F. Supp. 2d 895, 908 (W.D. Tenn. 2002) ("[P]laintiffs do not fall within the 'juridical link' exception. The types of cases that fall within this exception are those that have either a contractual obligation among all defendants or a state or local statute which requires common action by defendants."); *Bromley v. Michigan Educ. Ass'n-NEA*, 178 F.R.D. 148, 163 (E.D. Mich. 1998) ("Plaintiffs argue . . . that because all union locals apply the same MEA procedures for calculating and charging service fees, they meet the first criterion, and because they are all part of a single organization, they meet the second. The court finds that plaintiffs meet both exceptions.").

ECF No. 124 at PageID.2292–93. Defendants now claim that "[t]he Sixth Circuit's denial to apply the doctrine [in *Thompson* and *Perry*], while not a *per se* rejection, was not a green light for

application in factually different cases either." ECF No. 139 at PageID.3174. Defendants are correct, of course, but the opposite is also true. This Court is not bound to reject a doctrine because the Sixth Circuit has not already applied it or because other courts have declined to do so based on different facts.[2] Indeed, Defendants admit that "[w]ith no binding precedent, this Court must determine which line of cases is best reasoned."[3] ECF No. 140 at PageID.3196–97.

To that end, Defendants' characterization of the juridical link doctrine as controversial and sparingly applied is beside the point. *See, e.g.*, ECF No. 140 at PageID.3195–97. The rare circumstances of this case justify the doctrine. Indeed, courts are rarely presented with a case where the participation of numerous local governments in the same statutory scheme "provide[s] the sole basis for liability across all eight counts of [an] amended complaint." ECF No. 124 at PageID.2294. Accordingly, this Court reaffirms its prior holding that "all Defendants have, by electing to act as foreclosing governmental unit and retaining surplus proceeds under the GPTA, become so juridically linked to one another that Plaintiff has standing against each of them to the same extent that he has standing against the Gratiot County Defendants." *Id.*

---

[2] Defendants cite *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012), which declined to apply the juridical link doctrine and criticized reliance on *La Mar* and *Payton*. The plaintiff in *Mahon*, however, claimed that a group of title insurers were juridically linked because of their shared corporate ownership and coordination in allegedly unfair business practices. *Mahon*, 683 F.3d at 61. There was no statewide policy or statutory scheme at issue.

[3] Defendants elsewhere suggest that the juridical link doctrine is foreclosed by *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998), which held that "[a] potential class representative must demonstrate individual standing vis-as-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action." *Id.* at 423. However, Plaintiff's standing against the non-Gratiot County Defendants is not predicated on "bringing a class action" but on Defendants' joint participation in a statutory scheme. Moreover, the Sixth Circuit in *Fallick* reversed a dismissal based on the plaintiff's lack of standing to represent participants in benefit plans other than his own in a putative ERISA class action. *Id.* at 421–22. The court explained that "once the district court correctly determined that Fallick had standing to bring suit under ERISA against Nationwide with respect to its application of reasonable and customary limitations to its determination of medical benefits," which Nationwide admittedly "employ[ed] in all the benefits plans which Fallick wishes to include [in] the proposed class," the question was "whether Fallick satisfied the criteria of Rule 23 with respect to the absent class members." *Id.* at 423. The Seventh Circuit has likened this analysis to the juridical link analysis. *See Payton*, 308 F.3d at 679.

## C.

The next issue is whether Defendants are immune from suit. The separate immunity defenses of the County Defendants and Individual Defendants are considered in turn below.

## 1.

The County Defendants claim that they are entitled to sovereign immunity. Generally, "subdivisions of the state, such as counties and municipalities, are not protected by the Eleventh Amendment." *Lawson v. Shelby Cty., TN*, 211 F.3d 331, 335 (6th Cir. 2000). The Supreme Court has carved a narrow exception for conduct committed while the county was "acting as an arm of the State." *N. Ins. Co. of New York v. Chatham Cty., Ga.*, 547 U.S. 189, 194 (2006). "When a county official commits an alleged constitutional violation by 'simply [ ] complying with state mandates that afford no discretion, they act as an arm of the State,' not the county." *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995 (6th Cir. 2019) (quoting *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999)); *see also Gottfried v. Med. Planning Servs., Inc.*, 280 F.3d 684, 693 (6th Cir. 2002) (holding that sheriff was entitled to sovereign immunity where he "did not have any discretionary authority regarding [] state court injunction" and was "bound to enforce it").

The County Defendants argue that when selling property under the GPTA, they were acting as "arms of the State" and are therefore immune from suit. ECF No. 120 at PageID.2107. Defendants point to various provisions of the GPTA, including M.C.L. § 211.78m(8), which states that the foreclosing government unit ("FGU") "shall deposit the proceeds from the sale of property under this section into a restricted account" and that "[p]roceeds in that account shall only be used by the [FGU] for" enumerated purposes. The County Defendants thus conclude that "[t]he Legislature [] directed foreclosing governmental units to spend the 'excess surplus' in specific ways, none of which include reimbursing the delinquent taxpayer." ECF No. 120 at PageID.2107.

- 10 -

The County Defendants' analysis overlooks their initial decision to act as FGU. Under the GPTA, Michigan counties are not compelled to act as FGU and may instead allow the State to do so. M.C.L. § 211.78(8)(a); *Rafaeli*, 2020 WL 4037642, at *7 ("Counties may elect to serve as the 'foreclosing governmental unit'; otherwise, the state will do so."). Indeed, the GPTA expressly states that "[t]he foreclosure of forfeited property by a county is *voluntary* and is *not* an activity or service required of units of local government for purposes of" article IX, section 29 of the Michigan Constitution. *Id.* § 211.78(6) (emphasis added). So, while the GPTA appears to limit their discretion as FGU,[4] the County Defendants' decision to act as FGU was solely their own.[5]

The distinction between a permissive and compulsory statutory scheme for purposes of sovereign immunity is amply supported by Sixth Circuit precedent. In *Brotherton*, a widow brought action against a county coroner alleging that her deceased husband's corneas had been removed over her objections in violation of state and federal law. *Brotherton*, 173 F.3d at 555. The coroner argued that he was acting as an arm of the State and referred to an Ohio law that allowed coroners to remove the corneas of the deceased. *Id.* at 562–63. The Sixth Circuit disagreed. "Rather than rotely enforce prescribed Ohio law, [the coroner] voluntarily implemented a policy of corneal harvesting." *Id.* at 566. "The essential question," explained the court, "asks whether [the coroner] could have chosen not to use his authority under the state statute and how he would use such authority; if he could have opted to act differently, or not to act, he did not act as an arm of Ohio . . . ." *Id.* Because "[the coroner], acting without state compulsion, chose to harvest corneas," he was not entitled to sovereign immunity. *Id.* at 567.

---

[4] As Judge Kethledge observed, "the [GPTA] appears actually to *require* the County to short the taxpayer the difference between the value of the property forfeited and the amount of taxes and penalties owed." *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 824 (6th Cir. 2017) (Kethledge, J., dissenting) (emphasis original).

[5] The County Defendants were not alone in their decision. "Seventy-five of Michigan's 83 counties elect to act as the foreclosing governmental unit." *Rafaeli*, 2020 WL 4037642, at *7 n.11.

*McNeil* and *Gottfried*, by contrast, involved claims against sheriffs for the discharge of their duties under state law. *See Gottfried*, 280 F.3d at 693 (holding that sheriff was "bound to enforce" state court injunction); *McNeil*, 945 F.3d at 995 (holding that sheriff "acts for the State when he . . . detain[s] probationers under judge-set bail amounts"). Here, like in *Brotherton*, the activity at issue was enabled by statute but not thereby compelled. The County Defendants deride this distinction as "akin to saying that the Sheriff in [*Gottfried*] had discretion because he could have chosen a different profession in the first place." ECF No. 140 at PageID.3200. This analogy is inapposite. While the County Defendants, like sheriffs, must discharge their duties under state law, there is no duty to serve as FGU.[6] Accordingly, the County Defendants are not entitled to sovereign immunity.

### 2.

With respect to the individual capacity claims (all counts except Counts III, IV, and VIII), the Individual Defendants assert qualified immunity. Qualified immunity is a judicially crafted doctrine that "shield[s] [public officials] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Public officials thus are eligible for qualified immunity if (1) they did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not 'clearly established' at the time of the alleged misconduct." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (citing *Pearson v. Callahan*,

---

[6] Defendants also argue that application of the juridical link doctrine would imply that Defendants were acting as arms of the state and therefore entitled to sovereign immunity. ECF No. 123 at PageID.2277–78. Defendants cite *Payton v. Cty. of Kane*, 308 F.3d 673 (7th Cir. 2002), which, in discussing the juridical link doctrine, noted that the sheriffs at issue were acting as "an arm of the state." *Id.* at 680. Perhaps, in a more ordinary case, the statutory scheme that renders defendants juridically linked will also make them arms of the state. Here, however, Defendants enforced the same statute to the same unconstitutional ends without state compulsion. They are, therefore, juridically linked but without sovereign immunity.

555 U.S. 223, 232, 236 (2009)). "Both inquiries are 'objective,' as they turn on what the law is today and whether it was clearly established at the time of the challenged action." *Id.* at 440 (citing *Harlow*, 457 U.S. at 818–19).

Plaintiff's individual capacity claims wither under the second inquiry; namely, whether Plaintiff alleges the violation of a clearly established right. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The same deference extends to public officials enforcing a statute. "When public officials implement validly enacted state laws that no court has invalidated, their conduct typically satisfies the core inquiry—the 'objective reasonableness of an official's conduct'—that the immunity doctrine was designed to test." *Husted*, 810 F.3d at 441. Indeed, "the Supreme Court has *never* denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated." *Id.* (emphasis original).

Plaintiff seeks to hold the Individual Defendants liable for retaining surplus proceeds consistent with the GPTA. The GPTA was properly enacted by the legislature, and before the Michigan Supreme Court decided *Rafaeli*, Michigan courts defended the retention of surplus proceeds. In fact, the Michigan Court of Appeals rejected the takings claim as "without merit." *Rafaeli, LLC v. Oakland Cty.*, No. 330696, 2017 WL 4803570, at *4 (Mich. Ct. App. Oct. 24, 2017). Plaintiff fails to distinguish *Husted*, mentioning the case briefly in a footnote. *See* ECF No.

28 at PageID.637 n.12. Based on the foregoing, *Husted* controls, and the Individual Defendants are entitled to qualified immunity.[7]

The Individual Defendants further argue that the official capacity claims (all counts except Count VIII) are redundant of the claims against the County Defendants. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978); *see also Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, *supra*, local government units can be sued directly for damages and injunctive or declaratory relief."). As such, official capacity claims against county officials are routinely dismissed as duplicative of claims against the county. *See, e.g.*, *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996). Plaintiff responds that he is "entitled to plead multiple alternative theories under Rule 8(d)(2)." ECF No. 28 at PageID.632. Even so, there is no reason that duplicative claims should survive a motion to dismiss. Accordingly, the official capacity claims will be dismissed.

## D.

Defendants next argue that the prior foreclosure action against Plaintiff is res judicata and therefore bars this case. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was

---

[7] This conclusion does not alter the analysis with respect to the County Defendants. Qualified immunity does not extend to counties, and the personal immunity of a county official does not shield the county from suit. *See Scott v. Clay Cty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000) ("[T]he doctrine of qualified immunity safeguards only certain natural person defendants in their individual capacities. By contrast, if the legal requirements of municipal or county civil rights liability are satisfied, qualified immunity will not automatically excuse a municipality or county from constitutional liability . . . .") (internal citations and emphasis omitted).

rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). "The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). Under Michigan law, "the doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id.* Michigan thus "take[s] a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

The parties agree that the Gratiot County Defendants initiated foreclosure proceedings against Plaintiff, resulting in a judgment of foreclosure against him. ECF No. 1-2. The question, therefore, is whether Plaintiff could have challenged Defendants' post-foreclosure practice of retaining surplus proceeds during the foreclosure proceedings. Defendants insist that he could have, noting that "Michigan courts indisputably hear and resolve claims and defenses brought by reference to the federal Constitution, the Michigan Constitution and common law." ECF No. 23 at PageID.444. Notwithstanding the general jurisdiction of Michigan courts, the Michigan Supreme Court has declined to apply res judicata to similar post-foreclosure litigation.

In *Dean v. Michigan Dep't of Nat. Res.*, 247 N.W.2d 876 (Mich. 1976), a taxpayer sued a state agency for unjust enrichment after her home was sold to a private buyer in a tax foreclosure sale. *Dean*, 247 N.W.2d at 877–79. The trial court dismissed the action as "nothing more than a collateral attack on the [foreclosure] judgment of the Genesee Circuit Court." *Id.* at 880. The Michigan Supreme Court disagreed, stating,

> The suit is not barred by the prior judgment of the Genesee County Circuit Court because the subject matter of that judgment, i.e. the validity of the taxes of the state and the delinquency of plaintiff in the payment of those taxes, is completely

independent of the subject matter of plaintiff's instant suit for restitution due to the unjust enrichment of the state.

The plaintiff does not here, nor, apparently has she at any time disputed that she was delinquent in the payment of her property taxes in 1964. She is not, contrary to the opinion of the trial court, collaterally attacking the judgment of the Genesee County Circuit Court that the computation of the taxes due was valid, that the plaintiff was delinquent in the payment of those taxes, and that the title of the state to the property in question would become absolute upon the expiration of the redemption period.

*Id.* Defendants' attempts to distinguish *Dean* are unpersuasive. First, they argue that *Dean* does not apply to Plaintiff's constitutional claims because such claims "indisputably challenge the validity of the GPTA prohibition against refunds." ECF No. 30 at PageID.718. Defendants seem to conflate challenging the GPTA with challenging the underlying tax deficiency. Like the unjust enrichment claim in *Dean*, Plaintiff's constitutional claims are independent from the underlying tax delinquency.

Second, Defendants argue that the reason the unjust enrichment claim was independent from the foreclosure proceeding was because the unjust enrichment claim involved the taxpayer's subsequent good faith attempt to redeem the property. *Id.* Defendants' interpretation is unduly narrow. As the Michigan Supreme Court explained in the passage quoted above, what made the taxpayer's unjust enrichment claim independent was not just her post-judgment conduct, but the fact that she had not challenged the underlying tax delinquency. *Dean*, 247 N.W.2d at 880.

Defendants' reliance on *Prawdzik v. Heidema Bros.*, 89 N.W.2d 523, 526 (Mich. 1958), is misplaced. There, the defendants in an ejectment action entered into a consent judgment with the plaintiffs resolving the dispute. *Prawdzik*, 89 N.W.2d at 524–26. Shortly thereafter, the defendants brought their own action "repeat[ing] the[ir] former claims" about the effect of certain deeds and seeking to invalidate the prior judgment as fraudulent. *Id.* at 526. The complaint was dismissed. *Id.* at 527. On appeal, they argued that because a "court must consider as true all well-pleaded

- 16 -

facts[,] . . . their allegations of fraud must be accepted and [] they are entitled to 'their day in court'

thereon." *Id.* at 527. The Michigan Supreme Court explained,

> [The former defendants now plaintiffs] have already had their day in court. A disappointed or remorseful litigant cannot, by simply alleging new facts which were, or could have been, known to him at the time of prior litigation, have another day in court, and thereafter (upon new allegations, 'admitted' by the motion to dismiss made by his harassed adversary) still another.

*Id.* at 528. Accordingly, *Prawdzik* simply restates the general rule of res judicata—that a

disappointed party cannot relitigate a previously decided case, even if the facts of her complaint

are accepted as true on a motion to dismiss. *Prawdzik* has no application where, as here, the

plaintiff litigates an independent cause of action in a subsequent case. Based on the foregoing, the

prior foreclosure does not bar Plaintiff's claims.[8]

### E.

Having decided the threshold issues, the Court will now consider arguments directed at

each count of the Amended Complaint individually. For reasons set forth below, Counts II, IV, V,

and VII will be dismissed.

### 1.

Count I alleges a taking without just compensation in violation of the Fifth and Fourteenth

Amendments. ECF No. 17 at PageID.230–32. Plaintiff brings Count I pursuant to 42 U.S.C. §

1983, which creates a civil cause of action for the deprivation of federal rights by state officials.

"[A] municipality can be found liable under § 1983 only where the municipality itself causes the

---

[8] Defendants briefly raise the issue of collateral estoppel but do not identify which of Plaintiff's claims should be estopped. ECF No. 66 at PageID.873–74. Regardless, collateral estoppel also has no application here. Three elements must be satisfied before collateral estoppel can apply: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–46 (2004) (internal quotation marks omitted). As explained above, no issue in this case—except, perhaps, uncontested facts regarding the tax delinquency—was essential to the foreclosure or actually litigated there.

constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under §

1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc.*

*Servs. of City of New York*, 436 U.S. 658, 694–95 (1978)) (emphasis original). Accordingly, to

hold the County Defendants liable, Plaintiff must "(1) identify the municipal policy or custom, (2)

connect the policy to the municipality, and (3) show that [his] particular injury was incurred due

to the execution of that policy." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir.

2010) (quoting *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005)).

Relying on *Johnson v. Turner*, 125 F.3d 324 (6th Cir. 1997), the County Defendants allege

that they cannot be held liable under *Monell* because the GPTA is a policy of Michigan, not the

County Defendants. ECF No. 23 at PageID.451. In *Johnson*, several plaintiffs sought to hold a

Tennessee county liable under § 1983 based on a memorandum drafted by a juvenile court judge.

The plaintiffs alleged that the judge was a county official with "final policy-making authority,"

and that his memorandum, which directed county officials to arrest respondents in child support

proceedings, was the "policy" that caused the plaintiffs' injury. *Johnson*, 125 F.3d at 335. The

Sixth Circuit rejected this argument, holding that the memorandum was not a policy of the county

"but rather a general restatement of state law as perceived by the juvenile court judge." *Id.*

*Johnson* is inapplicable. Plaintiff is not seeking to hold the County Defendants liable for

an interpretive legal memo but for their "affirmative, voluntary, and discretionary decision" to act

as FGU. ECF No. 17 at PageID.224. Plaintiff's theory is consistent with the structure of the GPTA,

which, as discussed in Section III.C.1, *supra*, vested the County Defendants with the discretion to

act as FGU. To the extent that they selected and enforced an unconstitutional policy,[9] the County

---

[9] Defendants note that "[e]ven if the county chooses not to make itself or its treasurer the [FGU], the county treasurer must still take the statutory steps to facilitate the State's sale of the property and the ensuing denial of any refund." ECF No. 23 at PageID.453. The Amended Complaint, however, alleges that Defendants

Defendants can be held liable under § 1983. *C.f. Johnson*, 125 F.3d at 336 ("The Shelby County government could not have altered the state statutes, nor could it have required Judge Turner to interpret those statutes differently or otherwise interfered with the means used by the juvenile court and its employees to carry out state law."). Accordingly, Plaintiff has adequately alleged a policy or practice for purposes of *Monell*.[10]

Turning to the substance of Count I, "[t]he Takings Clause of the Fifth Amendment prohibits taking 'private property . . . for public use, without just compensation.'" *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 609 (6th Cir. 2016) (quoting U.S. Const. amend. V). The Sixth Circuit recognizes a two-part test for takings claims. "First, the court must examine whether the claimant has established a cognizable property interest for the purposes of the Just Compensation Clause." *Id.* (internal quotation marks omitted). "Second, where a cognizable property interest is implicated, the court must consider whether a taking occurred." *Id.* (internal quotation marks omitted). "[T]he existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Phillips v. Washington Legal Found.*, 524 U.S. 156, 164 (1998) (internal quotation marks omitted).

Defendants deny that Plaintiff had a cognizable property interest in the foreclosed property at the time it was sold because, under the GPTA, "title to foreclosed property vests in the county treasurer when the redemption period expires – i.e., 21 days after the judgment of foreclosure." ECF No. 23 at PageID.455 (citing M.C.L. § 211.78k(6)). Therefore, "[b]y the time of the sale, Plaintiff [] no longer had any 'property interest' in the foreclosed premises under state law." *Id.*

---

exercised their discretion to act as FGU. Accordingly, this Court need not consider whether Plaintiff would have a claim if Defendants had *not* exercised their discretion.

[10] The same *Monell* analysis applies to Plaintiff's other constitutional claims.

Defendants' argument was rejected in *Rafaeli*, where the Michigan Supreme Court held that Michigan common law "recognizes a former property owner's property right to collect the surplus proceeds that are realized from the tax-foreclosure sale of property." *Rafaeli*, 2020 WL 4037642, at *19. The Court further held that this right—a vested interest in personal property—is protected by Michigan's Taking Clause and not extinguished by foreclosure. *Id.* at *20–21. As the Court explained,

> Plaintiffs had a cognizable, vested property right to collect those surplus proceeds. This vested right did not simply 'vanish[ ] into thin air.' In the same way that the foreclosure process does not eliminate the former property owner's interest in the personal property that sits on the foreclosed land, the vesting of fee simple title to the real property does not extinguish the property owner's right to collect the surplus proceeds of the sale. This is a separate property right that survives the foreclosure process.

*Id.* at *21 (quoting *Armstrong v. United States*, 364 U.S. 40, 48 (1960)). The Court thus concluded that the FGU is "required to return the surplus proceeds" and that its "failure to do so constitutes a governmental taking under Michigan's Taking Clause." *Id.*

*Rafaeli* is persuasive, and there is little reason to believe that the Fifth Amendment would demand a different result. Defendants' reliance on prior Fifth Amendment case law is ultimately misplaced. In *Nelson v. City of New York*, 352 U.S. 103 (1956), for example, the Supreme Court rejected takings and due process challenges to New York's retention of surplus proceeds where the former property owners took no "timely action to redeem or to recover[] any surplus." *Id.* at 110. The Court stated that "nothing in the Federal Constitution prevents [a city from retaining surplus proceeds] where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings." *Id. Nelson* and similar cases,[11] however, are

---

[11] Several courts have rejected constitutional challenges to the retention of surplus proceeds, relying in part on *Nelson*. *See, e.g.*, *Miner v. Clinton Cty., N.Y.*, 541 F.3d 464, 475 (2d Cir. 2008); *Ritter v. Ross*, 558 N.W.2d 909, 912–16 (Wis. Ct. App. 1996).

distinguishable insofar as they concerned the disposition of statutory rather than common law

interests. As *Rafaeli* explains,

> Read together, *Lawton* and *Nelson* establish that the Takings Clause under the United States Constitution may afford former property owners a remedy when a tax-sale statute provides the divested property owner an interest in the surplus proceeds and the government does not honor that statutory interest. What *Seaman*, *Lawton*, and *Nelson* do not tell us, however, is what occurs when the statutes governing foreclosure make no mention of, or expressly preclude, a divested property owner's right to the surplus proceeds, but the divested property owner establishes a property right to the surplus proceeds through some other legal source, such as the common law. In that instance, the failure to provide the divested property owner an avenue for recovering the surplus proceeds would produce an identical result to *Lawton*: "Property to which an individual is legally entitled has been taken without recourse."

*Rafaeli*, 2020 WL 4037642, at *15 (quoting *Coleman through Bunn v. D.C.*, 70 F. Supp. 3d 58, 80

(D.D.C. 2014)). Therefore, notwithstanding *Nelson*, Count I plausibly alleges a taking without just

compensation in violation of the Fifth Amendment.[12] To hold otherwise would mean that the

Takings Clause offers no remedy to a person whom the government has stripped of a vested interest

in personal property. Absent binding authority to the contrary, this Court declines to give the

Takings Clause such a hollow reading. Accordingly, Count I may proceed against the County

Defendants.

## 2.

Count II also alleges a taking without just compensation but purports to arise "directly"

under the Fifth and Fourteenth Amendments rather than under 42 U.S.C. § 1983. ECF No. 17 at

---

[12] This Court is aware that Plaintiff often describes the property interest at issue as lost equity, rather than the right to collect surplus proceeds. The merits of the former theory need not be reached at this juncture, as the practical difference between the theories seems limited to the measure of damages. *See Rafaeli*, 2020 WL 4037642, at *24 ("We reject the premise that just compensation requires that plaintiffs be awarded the fair market value of their properties . . . [T]he property improperly taken was the surplus proceeds, not plaintiffs' real properties."). The question here is simply whether the Amended Complaint "contain[s] either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (emphasis original).

PageID.232–33. While the Sixth Circuit recognized the existence of a direct cause of action under the Fourteenth Amendment in *Gordon v. City of Warren*, 579 F.2d 386 (6th Cir. 1978), *Gordon* was soon eclipsed by the Supreme Court's decision in *Monell*. *See Thomas v. Shipka*, 818 F.2d 496, 501–04 (6th Cir.) (discussing case law regarding direct cause of action post-*Monell*), *vacated on other grounds*, 488 U.S. 1036 (1989). Today, the Sixth Circuit recognizes § 1983 as the "exclusive remedy for constitutional violations." *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014). Accordingly, Count II will be dismissed.

### 3.

Count III is an inverse condemnation claim based on Defendants' retention of the equity in the foreclosed properties. ECF No. 17 at PageID.233. "A claim of inverse condemnation is 'a cause of action against a governmental defendant to recover the value of property which has been taken . . . even though no formal exercise of the power of eminent domain has been attempted by the taking agency.'" *Mays v. Governor of Michigan*, No. 157335, 2020 WL 4360845, at *7 (Mich. July 29, 2020) (quoting *Merkur Steel Supply Inc. v. City of Detroit*, 680 N.W.2d 485, 495 (Mich. Ct. App. 2004)). "[A] plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages." *Id.* (quoting *Hinojosa v. Dep't of Nat. Res.*, 688 N.W.2d 550, 557 (Mich. Ct. App. 2004)).

Plaintiff has clearly stated an inverse condemnation claim. As discussed in Section III.E.1., *supra*, Plaintiff plausibly alleges the taking of a cognizable property interest without just compensation in violation of the Fifth Amendment and Michigan's Taking Clause. Accordingly, Defendants' argument that Plaintiff had no cognizable property interest and that the GPTA supersedes the need for condemnation procedures has no merit. *See* ECF No. 22 at PageID.394–97. Count III may proceed against the County Defendants.

**4.**

Count IV alleges an essentially identical inverse condemnation claim but purports to arise under article X, section 2 of the Michigan Constitution. ECF No. 17 at PageID.234–35. Defendants correctly note that Count III and Count IV do not state distinct causes of action. "Michigan recognizes the theory of inverse condemnation as a means of enforcing the constitutional ban on uncompensated takings of property." *Biff's Grills, Inc. v. Michigan State Highway Comm'n*, 254 N.W.2d 824, 826 (Mich. Ct. App. 1977) (citing Mich. Const. art. X, § 2). Accordingly, Count IV is duplicative of Count III and will therefore be dismissed.

**5.**

Count V alleges that the "forfeiture" of Plaintiff's equity in the foreclosed property constitutes an excessive fine in violation of the Eighth Amendment. ECF No. 17 at PageID.235–36. "The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (quoting *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)) (emphasis original). "The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law." *Id.* at 610 (quoting *United States v. Halper*, 490 U.S. 435, 448 (1989), *abrogated by Hudson v. United States*, 522 U.S. 93 (1997)). Thus, when analyzing government action under the Excessive Fines Clause, the issue is not whether it is "civil or criminal, but rather whether it is punishment." *Id.* "A punitive fine violates the Eighth Amendment's 'Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.'" *United States v. Blackwell*, 459 F.3d 739, 771 (6th Cir. 2006) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).

Plaintiff argues that, like civil forfeiture under 21 U.S.C. §§ 881(a)(4) and (a)(7), the forfeiture of equity in foreclosed property is punitive in nature and therefore governed by the Excessive Fines Clause. *See Austin*, 509 U.S. at 622 (holding that civil forfeiture constitutes "payment to a sovereign as punishment for some offense" and is therefore subject to the Excessive Fines Clause). Plaintiff's theory must be rejected. "[T]he purpose of civil-asset forfeiture is different than the purpose of the GPTA provisions at issue here." *Rafaeli*, 2020 WL 4037642, at *10. While civil forfeiture "serves, at least in part, to punish the owner . . . [,] the GPTA is not punitive in nature. Its aim is to encourage the timely payment of property taxes and to return tax-delinquent properties to their tax-generating status, not necessarily to punish property owners for failing to pay their property taxes." *Id.* The Michigan Supreme Court's interpretation of the GPTA is controlling.[13] *See Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) ("When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes."). Accordingly, Plaintiff cannot plausibly allege that the GPTA is punitive. Count V will be dismissed.

**6.**

Count VI alleges that Defendants' failure to provide post-foreclosure procedures to refund Plaintiff's equity violated his right to due process under the Fifth and Fourteenth Amendments. ECF No. 17 at PageID.237. To establish a *prima facie* procedural due process claim, Plaintiff must allege (1) a protected property interest, (2) the deprivation of that interest by the County Defendants, and (3) the failure of the County Defendants to afford "adequate procedural rights

---

[13] *Rafaeli*'s distinction between the GPTA and civil forfeiture refuted the appellate court's reliance on *Bennis v. Michigan*, 516 U.S. 442 (1996), for the holding that no taking occurred. *See Rafaeli*, 2020 WL 4037642, at *10.

prior to" deprivation. *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002). Plaintiff has met his burden here.

To begin, Plaintiff has adequately alleged a protected property interest in the surplus proceeds. The Supreme Court has long held "that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72 (1972). Property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577. In *Rafaeli*, the Michigan Supreme Court recognized a common law right to collect surplus proceeds and characterized that right as a vested interest in personal property. *Rafaeli*, 2020 WL 4037642, at *21. If Plaintiff has alleged a property interest for purposes of the Takings Clause, then *a fortiori* he has alleged a property interest for purposes of due process. *See Frazier v. City of Chattanooga*, 151 F. Supp. 3d 830, 839 (E.D. Tenn. 2015) (holding that the failure of a due process claim foreclosed a takings claim because "[p]roperty interests are defined much more narrowly for purposes of the Takings Clause"), *aff'd sub nom. Frazier v. City of Chattanooga, Tennessee*, 841 F.3d 433 (6th Cir. 2016).

The second prong—deprivation—is readily established. Plaintiff alleges that the Gratiot County Defendants sold the foreclosed property at auction and retained the surplus proceeds. ECF No. 17 at PageID.222–23.

The remaining issue is whether Plaintiff alleged the lack of constitutionally adequate procedures. "'Procedural due process' at its core requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Defendants, relying on *Garcia*, argue that Michigan's foreclosure procedure comports with due process. *See id.* at 742–

44 (holding that Michigan's foreclosure process affords constitutionally adequate notice and hearing). Therefore, Defendants conclude that absent any allegations that Plaintiff was denied such procedure, his claim must fail.

*Garcia*, however, did not address the issue presented here. As Plaintiff notes, the claimants in *Garcia* were challenging the adequacy of Michigan's pre-foreclosure process. *See id.* at 742 ("Plaintiff's main argument is that . . . due process entitles them to a judicial hearing before foreclosure."). Here, Plaintiff challenges the post-foreclosure process; specifically, Defendants' failure to furnish adequate procedures before retaining the surplus proceeds.[14] Defendants' response that "Plaintiff [] knew he would be denied any refund" at best raises a question of fact that cannot be reached on a motion to dismiss. ECF No. 23 at PageID.459. Furthermore, the property at issue—the right to collect surplus proceeds—is distinct from title to the foreclosed property and is not extinguished in the foreclosure process. *Rafaeli*, 2020 WL 4037642, at *21. Insofar as Defendants argue that an adequate process for certain property *before* foreclosure should enable them to seize different property *after* foreclosure, they offer no authority in support. Accordingly, Count VI will proceed against the County Defendants.

### 7.

Count VII alleges that Defendants arbitrarily deprived Plaintiff of his equity in the foreclosed property and thereby violated his right to substantive due process under the Fifth and Fourteenth Amendments. ECF No. 17 at PageID.237–38. Defendants correctly note that Plaintiff's substantive due process claim is precluded by his *prima facie* takings claim. "[W]here another

---

[14] *Rafaeli* is not to the contrary. There, the Michigan Supreme Court discussed due process only insofar as it was necessary to reject the defendants' contention that "no taking occurred in this case because plaintiffs were afforded the minimal protections of due process." *See Rafaeli*, 2020 WL 4037642, at *11. At most, the Court's discussion of due process and the GPTA merely restates the general rule that an FGU's compliance with notice and hearing requirements precludes a challenge to its authority to foreclose and sell properties.

provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of 'substantive due process.'" *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Plaintiff does not deny the holding in *Conn* but instead notes his right to plead in the alternative. ECF No. 28 at PageID.647 (citing Fed. R. Civ. P. 8(d)(2)). Because Plaintiff has an "explicit textual source of constitutional protection" in the Takings Clause, Section III.E.1., *supra*, Count VII will be dismissed.

**8.**

Count VIII states that the County Defendants were unjustly enriched by seizing Plaintiff's equity and are therefore liable for restitution. ECF No. 17 at PageID.238–39. Unjust enrichment is an equitable remedy whereby "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Kammer Asphalt Paving Co. v. E. China Twp. Sch.*, 504 N.W.2d 635, 640 (Mich. 1993) (quoting Restatement (First) of Restitution § 1 (1937)). "In order to sustain the claim of unjust enrichment, plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003).

Defendants argue that the GPTA precludes an unjust enrichment claim because it vests the FGU with fee simple title in the foreclosed property prior to the foreclosure sale. ECF No. 23 at PageID.465. Defendants also note that "M.C.L. [§] 211.78m(8) statutorily prohibits refund to the taxpayer of any so-called excess or surplus proceeds" and that "[u]nder Michigan law, 'equity' cannot compel a remedy . . . that the Michigan legislature has expressly prohibited by law." *Id.* (citing *Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664, 680 (Mich. 2007)). As before,

Defendants are rebutted by *Rafaeli*, which held that *Dean*, discussed in Section III.E.1, *supra*, "exemplified" the "right to collect [surplus] proceeds under the common-law claim of unjust enrichment." *Rafaeli*, 2020 WL 4037642, at *19.

Defendants also contend that Plaintiff's unjust enrichment claim is precluded by the doctrine of unclean hands. ECF No. 66 at PageID.881. Unclean hands is an equitable defense that "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the [defendant]." *In re Sutter*, 665 F.3d 722, 729 (6th Cir. 2012) (quoting *Rose v. Nat'l Auction Grp., Inc.*, 646 N.W.2d 455, 461 (Mich. 2002). Defendants allege that Plaintiff lacks clean hands because the Amended Complaint "only refers to the 2014 taxes," even though "[b]y the time the [foreclosed] property was sold, the 2015 and 2016 taxes were owing." ECF No. 66 at PageID.881. Defendants raise questions of fact that are not properly considered on a motion to dismiss under Rule 12(b)(6). Accordingly, Count VIII may proceed against the County Defendants.

## IV.

Accordingly, it is **ORDERED** that Defendants' Motions to Dismiss, ECF Nos. 22, 23, 66, 119, 120, 122, 123, are **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Defendants Cheryl Franks, Kimberly Ludlow, Dennis Stawowy, Richard F. Brzezinkski, Jenny Beemer-Fritzinger, Kate M. Wagner, Joseph V. Wakeley, Deborah Cherry, Christy Van Tiem, Michelle Thomas, Debra McCollum, Steven W. Pickens, Karen Coffman, Dana M. Miller, Marilyn J. Woods, Lawrence Rocca, Cathy Lunsford, Jean M. Klein, Dwight McIntyre, William Kendall, Diann Axford, Bridget Lalonde, Rebecca Ragan, Timothy M. Novak, Trudy Nicol, Kelly Roberts-Burnett, Patricia Donovan-Gray, Catherine McClary, and Shawna S. Walraven are **DISMISSED**.

- 28 -

It is further **ORDERED** that Counts II, IV, V, and VII are **DISMISSED**. Counts I, III, VI, and VIII may proceed against the County Defendants.

Dated: January 13, 2021                    s/Thomas L. Ludington
                                           THOMAS L. LUDINGTON
                                           United States District Judge