UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS A. FOX, on behalf of himself and all others similarly situated,

Plaintiff,

Case No. 1:19-cv-11887

v.

Honorable Thomas L. Ludington
Magistrate Judge Patricia T. Morris

COUNTY OF SAGINAW, by its BOARD OF COMMISSIONERS, *et al.*,

Defendants.

_______________________________________/

**ORDER DIRECTING ASSET RECOVERY, INC. TO ACCOUNT FOR SOLICITATIONS, ENJOINING ASSET RECOVERY, INC. FROM FURTHER COMMUNICATIONS WITH CLASS, AND DIRECTING PLAINTIFF AND DEFENDANTS TO SUBMIT JOINT PROPOSED CURATIVE NOTICE**

This matter is before this Court upon the Order Directing Non-Party Asset Recovery, Inc. to Show Cause. ECF No. 171. In June 2019, Plaintiff Thomas A. Fox brought this action on behalf of himself and a class of Michigan property owners under 42 U.S.C. § 1983. He alleges that Saginaw County, its treasurer, and other Michigan counties and county officials are unlawfully retaining the surplus proceeds of tax-foreclosure sales pursuant to a previous version of Michigan's General Property Tax Act (GPTA), Mich. Comp. Laws § 211.1 *et seq*. Before recent amendments,[1] the GPTA allowed the statutorily defined "foreclosing governmental unit" to retain the surplus

[1] The amendments, which became effective on December 22, 2020, allow a former property owner to file a claim for "any applicable remaining proceeds from the transfer or sale of foreclosed property," subject to certain statutory conditions. *See* M.C.L. § 211.78t. One of those conditions is that the property in question must have been transferred or sold *after* July 18, 2020, the date that the Michigan Supreme Court declared the prior version of the statute unconstitutional in *Rafaeli, LLC v. Oakland Cty.*, 952 N.W.2d 434 (Mich. 2020). M.C.L. § 211.78t(1)(a). Former owners whose property was transferred or sold *before* July 18, 2020 may file a claim only if the Michigan Supreme Court declares that *Rafaeli* applies retroactively—which has yet to happen. M.C.L. § 211.78t(1)(b)(i).

proceeds of a tax-foreclosure sale without any procedure for compensating the owner. *See* M.C.L. § 211.78(m) (2015) (amended 2021).

On October 16, 2020, the following class was certified:

> All persons and entities that owned real property in the following counties, whose real property, during the relevant time period, was seized through a real property tax foreclosure, which was worth and/or which was sold at tax auction for more than the total tax delinquency and were not refunded the value of the property in excess of the delinquent taxes owed: Alcona, Alpena, Arenac, Bay, Clare, Crawford, Genesee, Gladwin, Gratiot, Huron, Isabella, Jackson, Lapeer, Lenawee, Macomb, Midland, Montmorency, Ogemaw, Oscoda, Otsego, Presque Isle, Roscommon, Saginaw, Sanilac, St Clair, Tuscola, and Washtenaw.

ECF No. 124 at PageID.2291. Plaintiff Thomas A. Fox was appointed as class representative, and his attorneys, E. Powell Miller and Phillip L. Ellison, were appointed as class counsel. *Id.* at PageID.2305.

In March 2021, the case was stayed pending the disposition of Defendants' appeal to the Sixth Circuit Court of Appeals.[2] ECF No. 166. Defendants have asked the Sixth Circuit to reverse this Court's prior decision rejecting Defendants' assertion of sovereign immunity. *See* Brief of Appellant, Saginaw County, MI, et al. v. Fox, No. 21-1108 (6th Cir. Apr. 30, 2021).

On July 15, 2021, the stay was lifted for the limited purpose of conducting show cause proceedings regarding nonparty Asset Recovery, Inc. ("ARI"). ECF No. 171. Plaintiff alleged that ARI was operating a "systematic solicitation campaign" aimed at enticing class members to opt out of the class and pursue relief in state court. *See* ECF No. 168 at PageID.4017. Plaintiff also claimed that ARI's conduct amounted to the unauthorized practice of law. *Id.* at PageID.4034.

[2] Further background on this case, including Defendant's sovereign-immunity defense, is provided in this Court's Order Directing ARI to Show Cause. *See* ECF No. 171 at PageID.4146–49.

After reviewing Plaintiff's evidence, this Court directed ARI to show cause why an order should not be entered:

> (1) enjoining Asset Recovery from soliciting Class Members for legal representation or any other purpose; (2) rescinding or invalidating all contracts between Asset Recovery and any Class Member; and (3) disqualifying Asset Recovery from any representation or providing any services in this District and the State of Michigan relating to the recovery of surplus proceeds and/or equity following tax foreclosure within this District and the State of Michigan.

ECF No. 171 at PageID.4154. ARI responded on August 6, 2021, denying that it was engaged in the unauthorized practice of law or that its communications with the class were improper. *See* ECF No. 184 at PageID.4889. ARI and Plaintiff have since filed additional briefs after obtaining leave to do so. *See* ECF Nos. 189; 201.

For the reasons stated below, this Court finds that ARI's communications with the class were abusive. Therefore, under Federal Rule of Civil Procedure 23(d), ARI will be directed to provide an accounting of the class members with whom it has communicated and will be enjoined from any further communications with the class without leave of this Court. Additionally, Plaintiff and Defendants will be directed to meet and confer regarding a curative notice and to submit a proposed notice to this Court.

**I.**

The relevant facts are largely undisputed. ARI is a Colorado-based corporation that specializes in recovering unclaimed property. *See* ECF No. 184-2 at PageID.4916 (Declaration of John Fox, ARI Managing Director). In August 2020, shortly after the Michigan Supreme Court decided *Rafaeli, LLC v. Oakland Cty.*, 952 N.W.2d 434 (Mich. 2020), "ARI's research team began identifying potential [claimants and] properties that had been foreclosed and sold with surplus funds." ECF No. 184-2 at PageID.4917. After identifying a claimant, ARI would attempt to contact the person by telephone. *Id.* at PageID.4918. If successful, an "ARI claims representative . . . would

explain ARI, the foreclosure sale and surplus, verify identification of the claimant, answer any questions about the claim, and explain [the] fee structure and ARI's services to the claimant." *Id.* ARI's services primarily consisted of "handling the logistics of the claim process . . . and hiring an attorney for the claimant." *Id.*

ARI would also send potential claimants an "outreach letter" identifying their foreclosed property and the "unclaimed funds." *Id.* The letter would also offer ARI's assistance "in claiming the funds before time runs out," promising a "seamless experience" based on ARI's familiarity with "government rules, local requirements and deadlines." ECF No. 184-3 at PageID.4927 (ARI outreach letter). Additionally, the letter would encourage potential claimants to act quickly, warning that "th[e] funds w[ould] not be available indefinitely" and that "[m]any claims h[ad] been lost due to procrastination." *Id.*

Potential claimants who expressed interest in ARI's services were sent a limited power of attorney ("POA"). ECF No. 184-2 at PageID.4920. The purpose of the POA, according to ARI, was to appoint ARI as a "fiduciary, attorney-in-fact to make decisions (in the best interest of the claimant) related to the claim." *Id.* ARI would also have such potential claimants execute a contingency fee agreement with a variable rate based on the recovery amount. *Id.*; ECF No. 184-5 (ARI contingency fee agreement). Once ARI was appointed as a potential claimant's fiduciary, it would hire the local law firm Dalton & Tomich, PLC ("Dalton & Tomich") to begin the process of recovering the surplus proceeds. ECF No. 184-2 at PageID.4921.

The details of Dalton & Tomich's activity, at least in the early months of its involvement, are unclear. In his personal declaration, Dalton & Tomich attorney Lawrence Opalewski states that, in July 2020, he advised ARI about the process of "legally effect[ing]" a claim for surplus proceeds. ECF No. 184-7 at PageID.4938 n.1. But at that time, the Michigan Supreme Court had

just decided *Rafaeli*, and the GPTA amendments establishing a statutory procedure for compensation were still several months away. Presumably, the only means of recovering surplus proceeds in the early months of ARI's solicitation campaign was to file suit.[3]

After the GPTA was amended in December 2020, however, Dalton & Tomich began filing petitions in the circuit court of the foreclosing county under M.C.L. § 211.78t. *See* ECF No. 184-7 at PageID.4940–41. Mr. Opalewski claims that seven of those petitions, filed on behalf of persons outside the class, have resulted in "full recoveries."[4] *See id.* at PageID.4941.

ARI has not identified how many communications it sent to the class but claims to have secured a fiduciary appointment from at least 30 class members, ten of which occurred before certification; another three occurred after certification but before November 12, 2020, allegedly when ARI first learned of this case. *Id.*

ARI claims that after learning of this case, it consulted with Dalton & Tomich and decided "that [the] best chance at achieving [its] clients' goals of maximizing recovery as quickly as possible, required pursuit of their respective claims outside of the *Fox* Class Action." ECF No.184-2 at PageID.4923. ARI reasoned that it did "not make sense" to wait "long periods of time for a

---

[3] The same point is illustrated in a demand letter sent by Mr. Opalewski to counsel for St. Clair County, dated October 14, 2020. *See* ECF No. 168-3. At the time, Mr. Opalewski was representing a homeowner from St. Clair County who appears to be a class member. *Id.* at PageID.4044. As detailed in the letter, the St. Clair County Treasurer had refused a previous demand to return the homeowner's surplus proceeds, citing the lack of a legislative procedure for doing so. *Id.* at PageID.4045. Mr. Opalewski described this refusal as a "tacit admission that [his] client ha[d] no other recourse than to file suit under *Rafaeli* alleging a taking." *Id.* Notably, ARI claims that the "vast majority" of its solicitation campaign took place between September 2020 and mid-October 2020—the period in which Mr. Opalewski's demand letter was sent. ECF No. 184-2 at PageID.4920.

[4] Notably, a "full recovery" for Dalton & Tomich's clients does not appear to include an award of attorney fees, *see* ECF No. 184-9 (surplus proceeds disbursement order), which Plaintiff has sought since the beginning of this case, *see* ECF No. 1 at PageID.20 (requesting award of "actual reasonable attorney fees").

class action" when it could get "the same or similar recovery . . . through the statutory framework." *See id.* (claiming "the likelihood of getting greater recovery beyond the statute [is] very low"). Accordingly, ARI "instructed counsel to opt-out of the *Fox* Class Action . . . and pursue individual actions to recover in state court." *Id.* at PageID.4924. It is unclear whether ARI furnished its reasoning to or consulted with any class member before instructing Dalton & Tomich to opt out of the class.

Naturally, ARI's conduct drew the attention of class counsel, who demanded that ARI cease its campaign. *See* ECF No. 189-3 at PageID.5480–88 (Declaration of E. Powell Miller). In June 2021, after a very direct conversation between class counsel and Mr. Opalewski,[5] ARI instructed its "claims representatives not to discuss surplus tax foreclosure claims with any Michigan claimants." *See* ECF No. 184-2 at PageID.4924. ARI claims to have since refrained from any further communication with the class. *See id.*

**II.**

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Specifically, under Federal Rule of Civil Procedure 23, "the court has the authority to control communications with the class[,] before and after class certification[,] . . . [and] the duty to restrict communications that threaten to interfere with the proper administration of [the] class action." *Bobbitt v. Acad. of Ct. Reporting*,

---

[5] Plaintiff and ARI dedicate a significant amount of briefing to discussing a series of phone calls made between April 2021 and July 2021. In short, class counsel claim that Mr. Opalewski acquiesced in their requests for ARI to cease its solicitation campaign, while Mr. Opalewski denies reaching any such agreement and describes class counsel's tone as hostile and intemperate. *Compare* ECF No. 184 at PageID.4943–45, *with* ECF No. 189-2 at PageID.5487–91. This Court declines to wade further into the controversy, as counsel's statements and temperament have little bearing on the principal issue: whether ARI communicated with the class in an abusive manner.

No. CIV A 07-10742, 2008 WL 4298458, at *2 (E.D. Mich. Sept. 18, 2008); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.33 ("The [court] has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class.").

But a district court's discretion to control communications with the class "is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules." *Gulf Oil*, 452 U.S. at 100. As the Supreme Court has explained, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101–02 ("[S]uch a weighing . . . should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.").

Furthermore, "[t]he moving party must demonstrate that the actual or anticipated communications are or will be abusive in that [they] threaten[] the proper functioning of the litigation." *Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *11 (E.D. Mich. June 30, 2016) (internal quotation marks omitted) (alterations original). Communications are abusive if they "are false or misleading, contain material omissions, or are coercive or intimidating." *Id.*

**III.**

ARI's conduct raises two interrelated issues: (1) whether ARI's communications with the class were improper; and, if so, (2) what form of relief should be afforded.[6] Each issue is addressed in turn below.

**A.**

Regarding the propriety of ARI's communications with the class, the record demonstrates that ARI's communications were abusive.

By all accounts, ARI solicited class members by telephone and mail without disclosing this case, class counsel's appointment, or this Court's duties under Rule 23. *Cf. McWilliams*, 176 F. Supp. 3d at 641 (finding competing counsel's solicitations to be misleading where they, *inter alia*, "fail[ed] to disclose that the Court ha[d] appointed Class counsel to represent Class members"). Indeed, ARI's "outreach letters" tried persuading class members to seek individual relief and thereby unknowingly abandon the class. *See* ECF No. 184-3 at PageID.4927. To that end, ARI used various factual distortions, like the claim that the surplus proceeds that class counsel had been

---

[6] Plaintiff and ARI also dispute whether ARI engaged in the unauthorized practice of law. Having carefully reviewed their briefing and the authority cited therein, this Court declines to reach that issue. The principal issue identified in the Show-Cause Order—and addressed herein—is whether ARI sent abusive communications to the class. The legal character of ARI's business model is a tangential issue. Indeed, this Court is unaware of any case in which a district court, exercising its supervisory authority under Rule 23(d), decided whether a nonparty, non-attorney entity was engaged in the unauthorized practice of law. Furthermore, deciding whether ARI engaged in the unauthorized practice of law would require this Court to resolve sensitive questions of Michigan law that are better left for Michigan courts. *See Dressel v. Ameribank*, 664 N.W.2d 151, 154 (2003) (noting that the Michigan legislature left the "practice of law" undefined); *Jackson v. City of Cleveland*, 925 F.3d 793, 808 (6th Cir. 2019) ("Federal courts generally avoid interpreting unsettled state law because state courts are in the better position to apply and interpret their own jurisdiction's law." (internal quotation marks omitted)), *cert. denied sub nom. City of Cleveland, Ohio v. Jackson*, 140 S. Ct. 855 (2020). At this juncture, this Court finds no reason to reach beyond its ordinary supervisory role and decide whether ARI engaged in the unauthorized practice of law.

pursuing in this case remained "unclaimed" and might be lost due to "procrastination." *See id.* Those kinds of distortions are misleading.

Solicitations that mislead class members or otherwise undermine the administration of a case can and should be restricted under Rule 23(d). *See Tolmasoff*, 2016 WL 3548219, at *10–11; *see also McWilliams*, 176 F. Supp. 3d at 641 (enjoining nonparty counsel from communicating with certified class where, *inter alia*, counsel's "solicitation was misleading, . . . unduly complicated th[e] proceeding, and [would] cause additional complications as the case progresse[d]"); *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003) ("Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel." (footnotes omitted)).

ARI's defense of its conduct is unconvincing. ARI claims that it is "absurd" to suggest that using the term "unclaimed property" in outreach letters was misleading. ECF No. 201 at PageID.5642. It argues that the term "unclaimed property" was accurate because "[f]unds under the GPTA need to be claimed in a particular manner, within strict time limits, or they are not paid." *Id.* But at the time ARI was sending the "vast majority" of its solicitations, the statutory recovery procedure did not even exist. *See* ECF No. 184-2 at PageID.4920. Indeed, at that time, the only hope of recovering surplus proceeds was a lawsuit against the foreclosing governmental unit.

And contrary to ARI's assertion, one need not rely on "warped mischaracterizations" to find ARI's outreach letter misleading. *See* ECF No. 201 at PageID.5642. The average reader would likely understand the letter—which characterized surplus proceeds as a pool of "unclaimed funds"

that might be "forfeit[ed] to the government"—to mean that she need only to "apply for the funds" to obtain them. *See* ECF No. 184-3 at PageID.4927. But the reader's surplus proceeds were not sitting in some collection account, awaiting her timely application. The proceeds had been seized by the foreclosing governmental unit pursuant to then-prevailing state law.

It requires little effort to imagine why ARI might have drafted its outreach letter to present the recovery of surplus proceeds as an almost administrative endeavor. It is exactly the sort of presentation that might lure unsuspecting property owners into engaging the services of an unfamiliar business specializing in the "collection" of "unclaimed money." *See id.*

ARI's communications were more than just misleading, however. They also disrupted the orderly administration of the case.

After the certification of a class under Rule 23(b)(3), the district court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). The notice must state, *inter alia*, the "nature of the class action," "the class claims, issues, or defenses," and "the time and manner for requesting exclusion." *Id.* The purpose of such notice is to ensure that absent class members are apprised of their rights and can make an informed decision about whether to remain part of the class. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.31.

In this case, class notice was stayed so that Defendants could pursue their immunity defense on appeal without incurring additional costs. *See* ECF No. 166 at PageID.3998. But because of ARI's solicitation campaign, at least 30 class members have begun pursuing relief in state court before this Court could issue a class notice or establish an opt-out procedure. As a result, the balance that this Court struck in staying the class notice is no longer balanced.

It bears emphasizing, however, that the problem with ARI's solicitation scheme is not Dalton & Tomich's preference for the statutory mode of recovery. Class litigation is superior to individual litigation in this case. *See* ECF No. 124 at PageID.2302–03 (discussing Rule 23(b)(3) finding class litigation to be a superior vehicle for recovery). But there are legitimate reasons that class members might prefer an individual and more limited path to recovery. The problem is that ARI's solicitation campaign failed to adequately inform prospective claimants not only of their rights as class members but also of ARI's insistence that they opt out of the class. Simply stated, though the decision to remain in the class or opt out resides solely with the class member, this Court must not allow nonparties who present distorted and self-serving views of facts and law to taint that decision.

Thus, this Court finds that ARI's communications with the class were abusive and, therefore, warrant remedial action under Rule 23(d).

**B.**

Having established that ARI's conduct was abusive, the next issue is the form of relief that should be afforded.[7]

"Even if there is clear evidence that a party has engaged or will engage in abusive communications with the potential class members, a court may only impose 'the narrowest possible relief which would protect the respective parties.'" *Tolmasoff*, 2016 WL 3548219, at *11 (quoting *Gulf Oil*, 452 U.S. at 102); *see also Nat'l Football League Players' Concussion Inj. Litig.*,

---

[7] Given the finding that ARI's communications were abusive, this Court declines to reach Plaintiff's other grounds for relief, some of which were raised for the first time in Plaintiff's supplemental response brief. *See* ECF No. 189 at PageID.5469–72 (arguing that, *inter alia*, ARI violated the Michigan Rules of Professional Conduct and uses an "improper fee arrangement"). Again, the proper subject of this show-cause proceeding is ARI's solicitation of class members, which this Court must regulate. *See Gulf Oil*, 452 U.S. at 100; *Bobbitt*, 2008 WL 4298458, at *2.

923 F.3d 96, 109 (3d Cir. 2019) ("[A]ny remedy under Rule 23(d) 'should be restricted to the minimum necessary to correct the effects of improper conduct under Rule 23.'" (quoting *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 310 (3d Cir. 2005)). As mentioned previously, Plaintiff seeks the entry of an order that would:

> (1) enjoin[] Asset Recovery from soliciting Class members for legal representation or any other purpose; (2) rescind[] or invalidat[e] all contracts between Asset Recovery and any Class member; and (3) disqualify[] Asset Recovery from any representation or providing any services in this District and the State of Michigan relating to the recovery of surplus proceeds and/or equity following tax foreclosure within this District and the State of Michigan.

ECF No. 171 at PageID.4154. Plaintiff's first proposed remedy is warranted on the merits but not in the scope that Plaintiff suggests. To be sure, some injunction against communication between ARI and the class is necessary. ARI has demonstrated the willingness and ability to mislead class members and has not identified any interest that outweighs the potential for future abuse. *See Gulf Oil*, 452 U.S. at 101 (holding that an order limiting communication with a class should "reflect a weighing of the need for a limitation and the potential interference with the rights of the parties"). But prohibiting ARI from soliciting any class member for "any purpose" would exceed that which is necessary to protect the class or correct any prior abuse. Accordingly, ARI will be enjoined from communicating with any class member regarding the recovery of surplus proceeds without first obtaining leave of this Court to do so.

The latter two proposed remedies—invalidation and disqualification—are plainly inappropriate.

Regarding disqualification, even if this Court could "disqualify" ARI from providing services relating to the recovery of surplus proceeds,[8] doing so would exceed "the minimum necessary to correct the effects of [ARI's] improper conduct." *Nat'l Football League Players' Concussion Inj. Litig.*, 923 F.3d at 109. Indeed, the services that ARI chooses to provide elsewhere in the State of Michigan, to persons outside the class, is of no concern to this Court. Accordingly, Plaintiff's request to disqualify ARI from providing any services related to the recovery of surplus proceeds will be denied.

Plaintiff's request to invalidate all contracts between ARI and the class is similarly problematic. First, none of the cases Plaintiff cites actually resulted in an order invalidating any agreement between putative class members and a soliciting party. *See McWilliams*, 176 F. Supp. 3d at 645 (directing parties to confer regarding "the extent to which retainer agreements entered into after class certification should be voided" but indicating that "[t]he Court [was] inclined to invalidate all of them"); *In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238 (JG), 2006 WL 1025588, at *6–8 (E.D.N.Y. Mar. 31, 2006) (directing curative notice that would allow merchants deceived by claim filing service to void their agreements); *In re Pinkins*, 213 B.R. 818, 825 (Bankr. E.D. Mich. 1997) (denying attorney-fee requests for work performed by legal assistants and clerical personnel).

Furthermore, Plaintiff has not explained why a blanket invalidation is necessary. The record demonstrates that ARI sent abusive communications to class members, likely causing some to unwittingly abandon their position in the class. Therefore, the most suitable remedy is to notify the solicited class members of their rights and to offer them a means of restoring their position in

[8] Plaintiff has not identified—nor is this Court aware of—any case in which a district court acting under Rule 23 "disqualified" a corporation from providing services related to the subject of a class action.

the class. By contrast, an order invalidating all agreements between ARI and the class would risk further prejudice to class members who might prefer to seek relief in state court or who have already recovered some part of their surplus proceeds.

Therefore, the appropriate remedy for ARI's misconduct is an injunction coupled with a curative notice allowing class members who have opted out to restore their position in the class. To help prepare that notice, ARI will be directed to submit an accounting of all class members with whom it has communicated. Plaintiff and Defendants will also be directed to meet and confer regarding the language of the curative notice.

**IV.**

Accordingly, pursuant to Federal Rule of Civil Procedure 23(d), it is **ORDERED** that:

1. Asset Recovery, Inc. is **DIRECTED** to submit to this Court, using the CM/ECF "utilities" feature, an accounting of each class member with whom it has communicated regarding the recovery of surplus proceeds. For each class member, the accounting shall include (1) name, (2) mailing address, (3) the address or property from which surplus proceeds were allegedly withheld, (4) the date of ARI's initial solicitation, and (5) whether the class member has engaged ARI's services. The accounting shall be submitted to this Court and served by first-class mail on counsel for Plaintiff and Defendants on or before **October 19, 2021.**
2. Asset Recovery, Inc. and all its employees, agents, and assigns are **ENJOINED** from communicating, through any medium, with any class member regarding the recovery of surplus proceeds, without first obtaining leave of this Court to do so.
3. Plaintiff is **DIRECTED** to draft a proposed curative notice intended for all class members who have been solicited by Asset Recovery, Inc. The proposed notice must

describe the nature and history of this case, outline the remedy that Plaintiff seeks, and contrast that remedy with the relief available under the current version of the GPTA. The proposed notice must also inform the recipients of their right to rescind any agreement entered with Asset Recovery, Inc. and, by extension, any agreement that Asset Recovery, Inc. entered with Dalton & Tomich, PLC on their behalf. Plaintiff shall submit the proposed curative notice to this Court, using the CM/ECF "utilities" feature, and send a copy of the same to counsel for Defendants **no later than 14 days after being served with Asset Recovery, Inc.'s accounting.**

4. Counsel for Plaintiff and Defendants are **DIRECTED** to meet and confer regarding Plaintiff's proposed curative notice after Defendants' counsel receives a copy of it. Counsel shall then submit to this Court, using the CM/ECF "utilities" feature, a jointly proposed curative notice **no later than 14 days after Plaintiff's proposed notice is submitted**.

Dated: October 5, 2021

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge