UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS A. FOX, on behalf of himself and
all others similarly situated,

               Plaintiff,               Case No. 1:19-cv-11887

v.                                       Honorable Thomas L. Ludington
                                         Magistrate Judge Patricia T. Morris

COUNTY OF SAGINAW, by its BOARD OF
COMMISSIONERS, *et al.*,

               Defendants,
_____/

**ORDER DIRECTING CHOICE PLUS, LLC TO ACCOUNT FOR SOLICITATIONS, ENJOINING CHOICE PLUS, LLC FROM FURTHER COMMUNICATIONS WITH CLASS MEMBERS, DIRECTING PLAINTIFF AND DEFENDANTS TO CONFER AND SUBMIT JOINT PROPOSED CURATIVE NOTICE, AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY**

      This matter is before this Court upon the Order Directing Non-Party Choice Plus, LLC to Show Cause. ECF No. 185. In June 2019, Plaintiff Thomas A. Fox brought this action on behalf of himself and a class of Michigan property owners under 42 U.S.C. § 1983. He alleges that Saginaw County, its treasurer, and other Michigan counties and county officials are unlawfully retaining the surplus proceeds of tax-foreclosure sales pursuant to a previous version of Michigan's General Property Tax Act (GPTA), Mich. Comp. Laws § 211.1 *et seq.* Before recent amendments,[1]

---

[1] The amendments, which became effective on December 22, 2020, allow a former property owner to file a claim for "any applicable remaining proceeds from the transfer or sale of foreclosed property," subject to certain statutory conditions. *See* M.C.L. § 211.78t. One of those conditions is that the property in question must have been transferred or sold *after* July 18, 2020, the date that the Michigan Supreme Court declared the prior version of the statute unconstitutional in *Rafaeli, LLC v. Oakland Cty.*, 952 N.W.2d 434 (Mich. 2020). M.C.L. § 211.78t(1)(a). Former owners whose property was transferred or sold *before* July 18, 2020 may file a claim only if the Michigan Supreme Court declares that *Rafaeli* applies retroactively—which has yet to happen. M.C.L. § 211.78t(1)(b)(i).

the GPTA allowed the statutorily defined "foreclosing governmental unit" to retain the surplus proceeds of a tax-foreclosure sale without any procedure to compensate the owner. *See* M.C.L. § 211.78(m) (2015) (amended 2021).

On October 16, 2020, the following class was certified:

> All persons and entities that owned real property in the following counties, whose real property, during the relevant time period, was seized through a real property tax foreclosure, which was worth and/or which was sold at tax auction for more than the total tax delinquency and were not refunded the value of the property in excess of the delinquent taxes owed: Alcona, Alpena, Arenac, Bay, Clare, Crawford, Genesee, Gladwin, Gratiot, Huron, Isabella, Jackson, Lapeer, Lenawee, Macomb, Midland, Montmorency, Ogemaw, Oscoda, Otsego, Presque Isle, Roscommon, Saginaw, Sanilac, St Clair, Tuscola, and Washtenaw.

ECF No. 124 at PageID.2291. Plaintiff Thomas A. Fox was appointed as class representative, and his attorneys, E. Powell Miller and Phillip L. Ellison, were appointed as class counsel. *Id.* at PageID.2305.

In March 2021, the case was stayed pending the disposition of Defendants' appeal to the Sixth Circuit Court of Appeals.[2] ECF No. 166. Defendants have asked the Sixth Circuit to reverse this Court's prior decision rejecting Defendants' assertion of sovereign immunity. *See* Brief of Appellant, Saginaw County, MI, *et al.* v. Fox, No. 21-1108 (6th Cir. Apr. 30, 2021).

On August 6, 2021, the stay was lifted for the limited purpose of conducting show cause proceedings regarding nonparty Choice Plus, LLC ("Choice Plus"). ECF No. 171. Plaintiff alleged that Choice Plus was systematically targeting class members with solicitations encouraging them to opt out of the class. *See* ECF No. 180 at PageID.4734–35. Plaintiff also claimed that Choice Plus's conduct amounted to the unauthorized practice of law. *Id.* at PageID.4756.

---

[2] Further background on this case, including Defendant's sovereign-immunity defense, is provided in this Court's Order Directing Choice Plus to Show Cause. *See* ECF No. 185 at PageID.5523–25.

After reviewing Plaintiff's evidence, this Court directed Choice Plus to show cause why an order should not be entered:

> (1) enjoining Choice Plus LLC from soliciting Class Members for legal representation or any other purpose; (2) rescinding or invalidating all contracts between Choice Plus and any Class Member; and (3) disqualifying Choice Plus from any representation or providing any services in this District and the State of Michigan relating to the recovery of surplus proceeds and/or equity following tax foreclosure within this District and the State of Michigan.

ECF No. 185 at PageID.5430. Choice Plus responded on September 3, 2021, denying that it was engaged in the unauthorized practice of law or that its communications with the class were improper. *See* ECF No. 202.

For the reasons stated below, this Court finds that Choice Plus's communications with the class were abusive. Therefore, under Federal Rule of Civil Procedure 23(d), Choice Plus will be directed to provide an accounting of the class members with whom it has communicated and will be enjoined from any further communications with the class without leave of this Court. Additionally, Plaintiff and Defendants will be directed to meet and confer regarding a curative notice and to submit a proposed notice to this Court.

## I.

Choice Plus is a Washington-based company that specializes in "locating owners and heirs to inform and assist them in the recovery of property held by public and private custodians." ECF No. 202-2 at PageID.5680 (Affidavit of Randy Hotz, Choice Plus President). After the Michigan Supreme Court decided *Rafaeli, LLC v. Oakland Cty.*, 952 N.W.2d 434 (Mich. 2020), "Choice Plus began [attempting] to locate potential tax surplus claimants in the State of Michigan." ECF No. 202-2 at PageID.5680.

The process began with the collection and analysis of property sales information from publicly available sources. *Id.* Once Choice Plus identified a property that had "sold for more than

certain threshold value above the minimum bid," it would attempt to identify and contact the priority interest holder using both telephone calls and "introductory letters." *Id.* at 5680–81. During telephone conversations with potential claimants, Choice Plus's representatives would "answer[] general questions about the claim process," including "how Choice Plus [would] be compensated, the nature of [Choice Plus's] services[,] and hiring counsel for the [potential claimant] as the [claimant's] agent." *Id.* at PageID.5681. Choice Plus's representatives would also ask potential claimants whether they were already represented by counsel or part of a class to "avoid interfering with those relationships." *Id.*

In its "introductory letter," Choice Plus presented itself as a private company "specializ[ing] in the administrative proceedings required to ensure government held assets are returned to the proper individual." *See* ECF No. 207-2 at PageID.5750 (Sample Choice Plus Letter). After identifying the name of the potential claimant, the address of the property at issue, and the "amount of [the] claim,"[3] the letter would offer the services of Choice Plus's "team of experts" to ensure that the "claim is submitted and paid as promptly as possible." *See Id.*

Choice Plus sent "agreement packages" to potential claimants who expressed an interest in its services. ECF No. 202-2 at PageID.5681. The agreement package consisted of an enclosure letter, a "tax foreclosure surplus recovery agreement," and a power of attorney.[4] *See* ECF No. 207-3 at PageID.5752 (cleaned up). The purpose was to appoint Choice Plus as the potential claimant's agent so that Choice Plus could "retain[] counsel, provid[e] administrative support, funding, and other items necessary to pursue the claim." ECF No. 202-2 at PageID.5681. In exchange, Choice

---

[3] Choice Plus seems to define the "amount of the claim" as the difference between the delinquent property taxes and the property's sale price at auction.
[4] Previously, the agreement package included a "participation agreement" and "assignment of interest in foreclosure sale proceeds" instead of a surplus recovery agreement and power of attorney. *See* ECF No. 207-3 at PageID.5752.

Plus would receive a contingency fee based on the amount of recovery. *See id.*; ECF No. 202-3 at PageID.5684 (Tax Foreclosure Surplus Recovery Agreement). Notably, the contingency fee would only be calculated "after reimbursement of legal expenses to [Choice Plus]." ECF No. 202-3 at PageID.5684.

Although the scope of Choice Plus's solicitation campaign remains unclear, Choice Plus has entered agreements with at least three class members: Andrew Paseshnik, Mary Lou Champion,[5] and Royal Technical Consultants, Inc. ("RTC"). *See* ECF No. 202 at PageID.5661–63. "[T]o assist with the legal filings necessary to claim the proceeds," Choice Plus has hired the Darren Findling Law Firm, PLC ("Findling Law"). *Id.* at PageID.5662. In turn, Findling Law has filed complaints on behalf of Mr. Paseshnik in Tuscola County Circuit Court and RTC in Roscommon County Circuit Court. *Id.* Both complaints allege inverse condemnation. *See* ECF Nos. 202-7; 202-4.

Neither case, however, remains active. RTC's case was dismissed without prejudice "to avoid an adverse ruling pending further order of this Court." *See* ECF No. 202 at PageID.5663. And Mr. Paseshnik's case was stayed in July 2021 "pending a decision by the Michigan [C]ourt of [A]ppeals determining whether [*Rafaeli* is retroactive]." *See* ECF No. 202-5 at PageID.5695.

As for Ms. Champion, Choice Plus states that no complaint has been filed because Choice Plus has "placed [her claim] on hold pending the outcome of this matter." ECF No. 202 at PageID.5663.

---

[5] Ms. Champion's agreement was executed jointly with Samara Ann Champion. ECF No. 202 at PageID.5663. Their relationship is unknown.

Choice Plus claims that it has "stopped contacting potential claimants who would fall within [the class]." *Id.* at PageID.5661. But it is unclear when that decision was made and when Choice Plus first learned of this case.[6]

## II.

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Specifically, under Federal Rule of Civil Procedure 23, "the court has the authority to control communications with the class[,] before and after class certification[,] . . . [and] the duty to restrict communications that threaten to interfere with the proper administration of [the] class action." *Bobbitt v. Acad. of Ct. Reporting*, No. CIV A 07-10742, 2008 WL 4298458, at *2 (E.D. Mich. Sept. 18, 2008); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.33 ("The [court] has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class.").

But a district court's discretion to control communications with the class "is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules." *Gulf Oil*, 452 U.S. at 100. As the Supreme Court has explained, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101–02 ("[S]uch a weighing . . . should result in a carefully drawn order that

---

[6] After RTC's complaint was filed, Defendants' counsel Allan C. Vander Laan emailed Choice Plus's counsel Andrew Black, notifying him of this case. *See* ECF No. 180-2 at PageID.4765–66 (Personal Declaration of Matthew E. Gronda). That email was sent on or around July 15, 2021. *Id.* Whether that email was Choice Plus's first notice of this case, however, is unclear.

limits speech as little as possible, consistent with the rights of the parties under the circumstances.").

Furthermore, "[t]he moving party must demonstrate that the actual or anticipated communications are or will be abusive in that [they] threaten[] the proper functioning of the litigation." *Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *11 (E.D. Mich. June 30, 2016) (internal quotation marks omitted) (alterations original). Communications are abusive if they "are false or misleading, contain material omissions, or are coercive or intimidating." *Id.*

### III.

Choice Plus's conduct raises two interrelated issues: (1) whether Choice Plus's communications with the class were improper; and, if so, (2) what form of relief should be afforded.[7] Each issue is addressed in turn below.

---

[7] Plaintiff and Choice Plus also dispute whether Choice Plus engaged in the unauthorized practice of law. Having carefully reviewed their briefing and the authority cited therein, this Court declines to reach that issue. The principal issue identified in the Show-Cause Order—and addressed herein—is whether Choice Plus sent abusive communications to the class. The legal character of Choice Plus's business model is a tangential issue. Indeed, this Court is unaware of any case in which a district court, exercising its supervisory authority under Rule 23(d), decided whether a nonparty, nonattorney entity was engaged in the unauthorized practice of law. Furthermore, deciding whether Choice Plus engaged in the unauthorized practice of law would require this Court to resolve sensitive questions of Michigan law that are better left for Michigan courts. *See Dressel v. Ameribank*, 664 N.W.2d 151, 154 (2003) (noting that the Michigan legislature left the "practice of law" undefined); *Jackson v. City of Cleveland*, 925 F.3d 793, 808 (6th Cir. 2019) ("Federal courts generally avoid interpreting unsettled state law because state courts are in the better position to apply and interpret their own jurisdiction's law." (internal quotation marks omitted)), *cert. denied sub nom. City of Cleveland, Ohio v. Jackson*, 140 S. Ct. 855 (2020). At this juncture, this Court finds no reason to reach beyond its ordinary supervisory role and decide whether Choice Plus engaged in the unauthorized practice of law.

**A.**

Regarding the propriety of Choice Plus's communications with the class, the record demonstrates that Choice Plus's communications were abusive.

The most illustrative example is Choice Plus's communications with Vinomani Gaddam, who serves as president of RTC. Choice Plus sent Ms. Gaddam an agreement package on November 17, 2020. *See* ECF No. 207-3 at PageID.5759. The letter within asked her to sign and return the enclosed agreements so that Choice Plus could "complete the administrative procedures required to collect these funds." *Id.* Thus, Ms. Gaddam likely believed that she was agreeing to, as the letter termed it, an "administrative procedure." *Id.* But there was no such "administrative procedure." Indeed, the statutory remedy[8] that Choice Plus and others now endorse was not enacted until December 2020.[9] *See supra* note 1. Accordingly, at the time Choice Plus was offering Ms. Gaddam a "risk-free" "collect[ion]" process, *see* ECF No. 207-3 at PageID.5759, the only hope of recovering surplus proceeds for RTC—or any other aggrieved property owner—was to bring a lawsuit against the foreclosing governmental unit.[10]

Furthermore, the record is devoid of any indication that Choice Plus ever informed Ms. Gaddam of RTC's rights as a class member. By the time Ms. Gaddam received an agreement package in November 2020, class counsel had been vigorously pursuing the rights of class

---

[8] Even the statutory procedure is not "administrative" in the typical sense, given that it requires the filing of a motion in the state circuit court. *See* M.C.L. § 211.78t(4).

[9] According to Choice Plus, Findling Law uses the statutory procedure in some circumstances. *See* ECF No. 202 at PageID.5664. But Findling Law has not pursued the statutory procedure on behalf of Mr. Paseshnik or RTC. The likely reason is that their properties were sold before July 18, 2020—the date that limits the procedure's retroactive application. *See supra* note 1.

[10] This point is underscored by Findling Law's complaint against Roscommon County in April 2021, which sought to recover RTC's surplus proceeds under a theory of inverse condemnation. *See* ECF No. 202-7. Notably, inverse condemnation is one of the claims alleged in this case. *See* ECF No. 17 at PageID.233–34 (Amended Complaint).

members for many months—a fact that Ms. Gaddam had no reason to know. Presumably, then, RTC was persuaded to hire Choice Plus on the promise of a "risk-free" "administrative procedure"—without knowing that no such procedure existed or that class litigation was already ongoing.

Although Choice Plus denies that any of its communications were abusive, it does not address any of the language used in its communications. Instead, Choice Plus simply notes that it "made no effort to dissuade any potential claimant from utilizing the class action and has abandon[ed] efforts related to properties or claimants falling within the potential class counties."[11] *See* ECF No. 202 at PageID.5671.

Choice Plus construes the issue too narrowly. The issue is not whether Choice Plus actively "dissuaded" class members from remaining in the class but whether, as discussed in Section II, *supra*, Choice Plus communicated in an abusive manner. *See Tolmasoff*, 2016 WL 3548219, at *11 (noting that moving party must show that communications were or will be "abusive in that [they] threaten[ ] the proper functioning of the litigation." (internal quotation marks omitted) (internal alterations original)); *McWilliams*, 176 F. Supp. 3d at 641 (enjoining nonparty counsel from communicating with certified class where, inter alia, counsel's "solicitation was misleading, . . . unduly complicated th[e] proceeding, and [would] cause additional complications as the case progresse[d]"); *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003) ("Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and

---

[11] Choice Plus's use of the term "potential class" is incorrect. The class here was certified on October 16, 2020. *See* ECF No. 124.

communications that undermine cooperation with or confidence in class counsel." (footnotes omitted)). And based on the foregoing discussion, Choice Plus's communications were misleading and, therefore, abusive.

Choice Plus also notes, correctly, that a class notice has not yet been issued and, therefore, absent class members cannot be bound by any judgment entered in this case.[12] *See* ECF No. 202 at PageID.5669 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). But the effect of class notice is irrelevant here. A court's authority to regulate abusive communications is not rooted in the issuance of class notice. *See Bobbitt*, 2008 WL 4298458, at *2 ("[T]he court has the authority to control communications with the class[,] before and after class certification . . ."); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.33 ( "The [court] has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation."). Nor is the delay of that issuance a reason to excuse abusive communications. On the contrary, the delay in this case would seem to require greater scrutiny of Choice Plus's conduct, given that most class members likely remain unaware of their rights.

It bears emphasizing, however, that the problem is not that Choice Plus and Findling Law prefer to seek individual relief. Although this Court finds class litigation superior to individual litigation in this case, *see* ECF No. 124 at PageID.2302–03 (discussing Rule 23(b)(3) and finding class litigation to be a superior vehicle for recovery), there are legitimate reasons for some class members to prefer an individual and more limited path to relief. The problem is the nature of Choice Plus's solicitation campaign, which has proven to be abusive. Simply stated, though the decision to either remain in the class or opt out resides solely with the class member, this Court

---

[12] Class notice was stayed so Defendants could pursue their immunity defense on appeal without incurring additional costs. *See* ECF No. 166 at PageID.3998.

must not allow nonparties who present distorted and self-serving views of facts and law to taint that decision.

Thus, this Court finds that Choice Plus's communications with the class were abusive and, therefore, warrant remedial action under Rule 23(d).

**B.**

Having established that Choice Plus's conduct was abusive, the next issue is the form of relief that should be afforded.

"Even if there is clear evidence that a party has engaged or will engage in abusive communications with the potential class members, a court may only impose 'the narrowest possible relief which would protect the respective parties.'" *Tolmasoff*, 2016 WL 3548219, at *11 (quoting *Gulf Oil*, 452 U.S. at 102); *see also Nat'l Football League Players' Concussion Inj. Litig.*, 923 F.3d 96, 109 (3d Cir. 2019) ("[A]ny remedy under Rule 23(d) 'should be restricted to the minimum necessary to correct the effects of improper conduct under Rule 23.'" (quoting *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 310 (3d Cir. 2005)). As mentioned previously, Plaintiff seeks the entry of an order that would:

> (1) enjoin[] [Choice Plus] from soliciting Class Members for legal representation or any other purpose; (2) rescind[] or invalidate all contracts between Choice Plus and any class member; and (3) [disqualify Choice Plus] from any representation or providing any services in this District and the State of Michigan relating to the recovery of surplus proceeds and/or equity following tax foreclosure within this District and the State of Michigan.

ECF No. 180 at PageID.4736. Plaintiff's first proposed remedy is justified on the merits but not in the scope that Plaintiff suggests. To be sure, some injunction against communication between Choice Plus and the class is necessary. Choice Plus has demonstrated the willingness and ability to mislead class members and has not identified any interest that outweighs the potential for future abuse. *See Gulf Oil*, 452 U.S. at 101 (holding that an order limiting communication with a class

should "reflect a weighing of the need for a limitation and the potential interference with the rights of the parties"). But prohibiting Choice Plus from soliciting any class member for "any purpose" would exceed that which is necessary to protect the class or correct any prior abuse. Accordingly, Choice Plus will be enjoined from communicating with any class member regarding the recovery of surplus proceeds without first obtaining leave of this Court to do so.

The latter two proposed remedies—invalidation and disqualification—are plainly inappropriate.

Regarding disqualification, even if this Court could "disqualify" Choice Plus from providing services relating to the recovery of surplus proceeds,[13] doing so would exceed "the minimum necessary to correct the effects of [Choice Plus's] improper conduct." *Nat'l Football League Players' Concussion Inj. Litig.*, 923 F.3d at 109. Indeed, the services that Choice Plus chooses to provide elsewhere in the State of Michigan, to persons outside the class, is of no concern to this Court. Accordingly, Plaintiff's request to disqualify Choice Plus from providing any services related to the recovery of surplus proceeds will be denied.

Plaintiff's request to invalidate all contracts between Choice Plus and the class is similarly problematic. Simply put, Plaintiff has not identified any reason to believe that a blanket invalidation is necessary. The record demonstrates that Choice Plus communicated with the class in a misleading manner, likely causing some class members to unwittingly abandon their position in the class. Therefore, the most suitable remedy is to notify the solicited class members of their rights and to offer them a means of restoring their position in the class. By contrast, an order invalidating all agreements between Choice Plus and the class would risk further prejudice to class

---

[13] Plaintiff has not identified—nor is this Court aware of—any case in which a district court acting under Rule 23 "disqualified" a corporation from providing services related to the subject of a class action.

members who might prefer to seek relief in state court or who have already recovered some part of their surplus proceeds.

Therefore, the appropriate remedy for Choice Plus's misconduct is an injunction coupled with a curative notice allowing class members who have opted out to restore their position in the class. To help prepare that notice, Choice Plus will be directed to submit an accounting of all class members with whom it has communicated. Plaintiff and Defendants will also be directed to meet and confer regarding the language of the curative notice.

**IV.**

After Choice Plus filed a supplemental brief, as directed by this Court, *see* ECF Nos. 205; 207, Plaintiff filed a motion for leave to file a notice of supplemental authority, *see* ECF No. 208. Plaintiff's supplemental evidence consists primarily of (1) an email from Choice Plus to a potential claimant that appears to comment on the Michigan Supreme Court's decision in *Rafaeli*; and (2) the personal declaration of a Michigan resident who was allegedly solicited by Choice Plus as recently as September 2021. *See* ECF No. 208-1 at PageID.5779–85.

Plaintiff's Motion for Leave will be denied. First, the date and addressee of the purported Choice Plus email have been redacted.[14] *See* ECF No. 208-1 at PageID.5779. Therefore, even if the email is a form of "legal analysis," as Plaintiff argues, *see* ECF No. 208 at PageID.5769, it is unclear whether Choice Plus furnished any such analysis to class members. As for the personal declaration, the resident in question resides in Clinton County and, therefore, as Plaintiff acknowledges, falls "outside the class." *See* ECF No. 208 at PageID.5770 n.2. Choice Plus's communication with persons outside the class is not at issue here.

---

[14] Plaintiff claims that the email was redacted before it was forwarded to class counsel. *See* ECF No. 208 at PageID.5768 n.1.

## V.

Accordingly, pursuant to Federal Rule of Civil Procedure 23(d), it is **ORDERED** that:

1. Choice Plus, LLC is **DIRECTED** to submit to this Court, using the CM/ECF "utilities" feature, an accounting of each class member with whom it has communicated regarding the recovery of surplus proceeds. For each class member, the accounting shall include (1) name, (2) mailing address, (3) the address or property from which surplus proceeds were allegedly withheld, (4) the date of Choice Plus's initial solicitation, and (5) whether the class member has engaged Choice Plus's services. The accounting shall be submitted to this Court and served by first-class mail on counsel for Plaintiff and Defendants on or before **October 19, 2021.**

2. Choice Plus, LLC and all its employees, agents, and assigns are **ENJOINED** from communicating, through any medium, with any class member regarding the recovery of surplus proceeds, without first obtaining leave of this Court to do so.

3. Plaintiff is **DIRECTED** to draft a proposed curative notice intended for all class members who have been solicited by Choice Plus, LLC. The proposed notice must describe the nature and history of this case, outline the remedy that Plaintiff seeks, and contrast that remedy with the relief available under the current version of the GPTA. The proposed notice must also inform the recipients of their right to rescind any agreement entered with Choice Plus and, by extension, any agreement that Choice Plus entered with the Darren Findling Law Firm, PLC on their behalf. Plaintiff shall submit the proposed curative notice to this Court, using the CM/ECF "utilities" feature, and send a copy of the same to counsel for Defendants **no later than 14 days after being served with Choice Plus's accounting.**

4. Counsel for Plaintiff and Defendants are **DIRECTED** to meet and confer regarding Plaintiff's proposed curative notice after Defendants' counsel receives a copy of it. Counsel shall then submit to this Court, using the CM/ECF "utilities" feature, a jointly proposed curative notice **no later than 14 days after Plaintiff's submits its proposed notice**.

Further, it is **ORDERED** that Plaintiff's Motion for Leave to File a Notice of Supplemental Authority, ECF No. 208, is **DENIED**.

Dated: October 5, 2021               s/Thomas L. Ludington
                                     THOMAS L. LUDINGTON
                                     United States District Judge