UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS A. FOX, on behalf of himself and
all others similarly situated,

        Plaintiff,

v.

COUNTY OF SAGINAW, by its BOARD OF
COMMISSIONERS, *et al.*,

        Defendants.
_____/

Case No. 1:19-cv-11887

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER (1) GRANTING AND DENYING IN PART PLAINTIFF'S EMERGENCY MOTION, (2) LIFTING STAY FOR PURPOSES OF LIMITED DISCOVERY AND CLASS NOTICE, (3) AUTHORIZING LIMITED DISCOVERY, (4) DIRECTING PLAINTIFF TO SUBMIT PROPOSED CLASS NOTICE, AND (5) DENYING MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF AS MOOT**

Before a statutory amendment in 2020, Michigan counties regularly sold tax-delinquent properties without refunding the surplus proceeds to the former owners. In June 2019, Plaintiff Thomas A. Fox brought this class action under 42 U.S.C. § 1983 to recover surplus proceeds from 27 counties.

While this case was pending, Michigan enacted Public Act 256 ("PA 256"), establishing an exclusive scheme for recovering surplus proceeds. Nearly 14 months later, Plaintiff filed an emergency motion to declare PA 256 unconstitutional.

Because the Michigan Court of Appeals is considering several important questions regarding PA 256, this Court will abstain from deciding the statute's constitutionality. Notwithstanding that abstention, absent class members must be apprised of their rights and PA 256's potential effect. To that end, this Court will authorize limited discovery as to the identity and contact information of class members and direct Plaintiff to file a proposed class notice.

**I.**

Before PA 256 was enacted, Michigan's General Property Tax Act (GPTA) allowed the "foreclosing governmental unit"—usually the county—to sell tax-delinquent property at auction and retain any surplus proceeds. *See* MICH. COMP. LAWS § 211.78m (amended 2020). In Plaintiff's case and many others, this practice resulted in a windfall for the government. *See* ECF No. 1 at PageID.4–5 (claiming that Defendant Gratiot County retained $21,908.77 in surplus proceeds from selling Plaintiff's property). And unlike the law governing private-foreclosure sales, the GPTA did little to protect owners' equity in the foreclosed property.[1] Rather than connecting the minimum bid to the property's fair-market value,[2] the GPTA set the minimum bid equal to the sum of the delinquent taxes and sale expenses, allowing the government to sell properties at a non-fair-market rate. *See* MICH. COMP. LAWS § 211.78m(16)(a) (amended 2020),

In June 2019, Plaintiff brought this action under 42 U.S.C. § 1983 to declare the practice unconstitutional and to recover surplus proceeds from 27 counties. One year later, the Michigan Supreme Court delivered him a considerable victory. *See Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434 (Mich. 2020). In *Rafaeli*, the court ruled that Michigan property owners have a constitutional right to surplus proceeds, which the legislature is "powerless to override." *Id.* at 446.

---

[1] In a private-foreclosure sale, the court may establish a minimum sale price (commonly called the "upset price"), generally "fixed at the fair value of the property." *James S. Holden Co. v. Applebaum*, 255 N.W. 601, 602 (Mich. 1934) ("The upset bid for the security must bear a reasonable relation to the value of the security at the time of sale." (quoting *Michigan Tr. Co. v. Dutmers*, 252 N.W. 478, 479 (Mich. 1934) (en banc))). The purpose of the rule, as explained in a prominent treatise, is "to protect the debtor from an unfair deficiency judgment resulting from the mortgagee's buying at a foreclosure sale at a bargain price and later becoming unjustly enriched by selling the property at a profit." JOHN C. CAMERON, JR., MICHIGAN REAL PROPERTY LAW, § 18.97 (3d ed. 1995).

[2] Notably, the GPTA requires local governments to determine the fair-market value of all taxable properties during their annual assessment. *See* MICH. COMP. LAWS §§ 211.10(1), 211.24(1)(b).

In response to *Rafaeli*, the Michigan Legislature enacted PA 256. As relevant here, PA 256 establishes a purportedly exclusive process for compensating former property owners through their local circuit court. *See* MICH. COMP. LAWS § 211.78t(11). To start the process, a claimant must notify her foreclosing county on a state-provided form of her intent to recover the "remaining proceeds" of a tax-foreclosure sale. *Id.* § 211.78t(2). She must then file a motion for recovery of the proceeds in her foreclosing county's circuit court identifying the property at issue, the foreclosure date, and similar information. *Id.* § 211.78t(4). If the claimant proves her interest in the foreclosed property, the circuit court must award her a portion of the surplus proceeds proportionate to the value and priority of her interest. *Id.* § 211.78t(11).

Despite some claimants having secured large recoveries through PA 256, *see* Asset Recovery's Show-Cause Br., ECF No. 184 at PageID.4895 (noting that one claimant recovered $110,308.30),[3] Plaintiff and others maintain that the statute is unfair and inadequate, *see* Pl.'s Emergency Mot., ECF No. 228 at PageID.6146; Mot. for Leave to File Amicus Br., ECF No. 234 at PageID.6242.[4] Plaintiff's criticism is primarily directed at the statute's two-year limitations period and nonretroactivity provision, the latter of which purports to bar claims stemming from tax-foreclosure sales conducted before July 18, 2020, when *Rafaeli* was decided. *See* MICH. COMP. LAWS §§ 211.78l, 211.78t(1)(b).

But even before PA 256 was enacted, Plaintiff was skeptical that the Michigan Legislature would respond adequately to *Rafaeli*. *See* Pl.'s Reply in Supp. of Mot. to Certify, ECF No. 121 at

---

[3] Asset Recovery is one of two companies that was found to have improperly solicited class members earlier in the case. *See* Op. and Order Directing Curative Notice, ECF No. 229 at PageID.6172–73.

[4] Several nonparty tax-equity claimants and their counsel have filed a motion for leave to file an *amicus curiae* brief in support of Plaintiff's emergency motion. ECF No. 234. Like Plaintiff, they argue that PA 256 is unconstitutional. *Id.* at PageID.6246. Because this Court will abstain from considering PA 256's constitutionality, their motion will be denied as moot.

PageID.2117 (claiming that a bill substantially similar to PA 256 "would not, as written, provide complete relief to the class"). This Court echoed that skepticism in granting class certification. *See Fox v. Cnty. of Saginaw*, No. 19-CV-11887, 2020 WL 6118487, at *11 (E.D. Mich. Oct. 16, 2020) ("While this case seems well-suited for legislative action, the remedies being proposed are plainly inferior to a class action."). Class litigation was superior to the then-proposed legislative remedies, this Court explained, not only because of the longer limitations period but also because of Plaintiff's more beneficial damages theory. *Id.* Rather than the difference between the tax delinquency and the sale price, Plaintiff sought—and still seeks—the difference between the tax delinquency and the fair-market value of the property. *Id.*

Defendants have long maintained that such damages are unrecoverable under *Rafaeli*. *See* Defs.' Reply in Supp. of Mot. to Dismiss, ECF No. 139 at PageID.3175–76. But that contention remains untested. Shortly after class certification, Defendants filed motions to dismiss under the doctrine of sovereign immunity. *See, e.g.*, ECF No. 120 at PageID.2108 (claiming that "Defendants did only what State law required of them, and . . . [therefore] act[ed] as an arm of the State"). Those motions were denied in relevant part, and Defendants appealed. To preserve their asserted immunity on appeal, the case was stayed. *Fox*, 2021 WL 872089, at *1.

Nearly one year later, in February 2022, the Sixth Circuit affirmed. *Fox v. Saginaw Cnty.*, No. 21-1108, 2022 WL 523023, at *1 (6th Cir. Feb. 22, 2022). Yet because Defendants filed a petition for en banc review, the mandate has not issued, leaving the year-old stay in place. *See* FED. R. APP. P. 41(b) ("The court's mandate must issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later.").

Meanwhile, Plaintiff has filed an emergency motion to either (1) declare PA 256 unconstitutional; (2) stay its enforcement under the All-Writs Act, 28 U.S.C. § 1651; or (3) lift the stay and direct class notice.[5] ECF No. 228. Plaintiff deems his motion an emergency due to an impending statutory deadline. Under Plaintiff's reading of PA 256, class members whose property was sold in 2020 have until March 31, 2022, to bring an action under the statute. *Id.* at PageID.6147. After that date, their claims might be barred due to the statute's two-year limitations period. *Id.* Although Plaintiff maintains that PA 256 is inferior to class litigation, he acknowledges that absent class members should be apprised of their rights. *Id.* at PageID.6147–48.

Given the circumstances, expediting briefing was directed. *See* ECF Nos. 230. Having carefully reviewed that briefing, this Court finds that a hearing is unnecessary and will proceed to address Plaintiff's motion on the papers. *See* E.D. Mich. LR 7.1(f)(2).

## II.

### A.

The analysis begins with Plaintiff's request to declare PA 256 unconstitutional. In many respects, Plaintiff's argument is less about the Constitution and more about the differences between PA 256 and the federal remedy.[6] For example, Plaintiff argues that PA 256 is unconstitutional because it (1) deprives claimants of interest on their surplus proceeds, *cf. Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170 (2019) ("[C]ompensation must generally consist of the total value of the

---

[5] Confusingly, Plaintiff also requests that this Court "confirm" that "all tax-foreclosure victims from the named counties within the applicable statute of limitations are members of the Certified Class," including those whose property was sold in 2020, 2021, and 2022. ECF No. 228 at PageID.6148–49. Yet it was Plaintiff who originally drafted the class definition. *See* ECF No. 93 at PageID.1278. Because Plaintiff does not explain why this Court should "confirm" the scope of the class, his request will be denied without prejudice.

[6] It is not altogether clear whether Plaintiff contends that PA 256 is facially unconstitutional or unconstitutional as applied to certain claimants. The distinction is not important at this juncture, but it might become important if this Court is forced to consider PA 256's constitutionality.

property when taken, plus interest from that time."); and (2) forces them to pay a "sales commission" worth 5% of the surplus proceeds, *cf. United States v. Reynolds*, 397 U.S. 14, 16 (1970) ("The owner is to be put in the same position monetarily as he would have occupied if his property had not been taken."). *See* ECF No. 228 at PageID.6151–58.

Although Defendants deny that PA 256 is unfair or unconstitutional, their response brief consists largely of jurisdictional arguments. *See* ECF No. 232 at PageID.6211–17. First, they argue that Plaintiff's constitutional challenge is not ripe for review because he has not shown that any class member is likely to be harmed by the statute. *Id.* at PageID.6212–13. Similarly, they argue that this Court should abstain from considering PA 256's constitutionality due to similar litigation pending in the Michigan Court of Appeals. *Id.* at PageID.6213–14 (citing *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941)).

"The threshold question in every federal case is whether the court has [jurisdiction]." *Parsons v. DOJ*, 801 F.3d 701, 709 (6th Cir. 2015). Article III of the Constitution limits federal jurisdiction to "Cases" and "Controversies." U.S. CONST. art. III. § 2. Over the years, the Supreme Court has sharpened that limitation with several jurisdictional rules, including standing, mootness, and ripeness. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (noting that mootness, ripeness, political-question doctrine, and standing "all originate in Article III's 'case' and 'controversy' language").

Ripeness is a quasi-prudential doctrine "designed to prevent the courts from, through premature adjudication, 'entangling themselves in abstract disagreements.'" *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008) (quoting *Insomnia Inc. v. City of Memphis*, 278 F. App'x 609, 612 (6th Cir. 2008)). To determine whether a claim is ripe, courts must consider: "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the

factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Id.*

In contrast to the Article III doctrines, which govern whether federal jurisdiction may be exercised, the doctrine of abstention governs whether federal jurisdiction *should* be exercised. *See Quackenbush v. Allstate Ins.*, 517 U.S. 706, 716–18 (1996) (explaining that abstention is an essentially equitable exception to federal courts' "strict duty to exercise the jurisdiction that is conferred upon them by Congress"). In *Pullman*, the Supreme Court held that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (citing *Pullman*, 312 U.S. at 500). According to the Sixth Circuit, *Pullman* abstention is appropriate when a federal court is confronted with "an unsettled state-law question [that] is best decided by or already pending in state courts." *Hill v. Snyder*, 900 F.3d 260, 265 (6th Cir. 2018) (citing *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975)).

Although the considerations underlying *Pullman* abstention and ripeness are closely intertwined, Plaintiff's request to declare PA 256 unconstitutional is best analyzed in terms of abstention. In arguing that PA 256 is unconstitutional, Plaintiff assumes that Michigan courts will interpret PA 256 to impose, among other things, a retroactive two-year limitation and a 5% sales commission *in addition to* the foreclosing county's reasonable expenses. *See* ECF No. 228 at PageID.6156–57; *see also Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434, 484 (Mich. 2020) (holding that the foreclosing county may retain proceeds equal to the fees "reasonably related to the foreclosure and sale of the property"). But that assumption depends on the outcome of parallel proceedings in the Michigan Court of Appeals, in which the plaintiffs—former property owners

represented by the same counsel as Plaintiff—argue that PA 256 is unconstitutional. *See Hathon v. State*, No. 356501 (Mich. Ct. App. filed Mar. 8, 2021).

Granted, not every difficult or novel question of law justifies abstention. *See Ada-Cascade Watch Co. v. Cascade Res. Recovery, Inc.*, 720 F.2d 897, 902 (6th Cir. 1983) ("Deferral to the state courts, however, is not appropriate merely because the state law issues are novel and critical to the case."). To properly invoke *Pullman* abstention, federal courts must identify an ambiguous statutory provision that could be interpreted to obviate the federal constitutional question. *See Hill*, 900 F.3d at 265 (noting that *Pullman* abstention is appropriate when the statutory provisions at issue are "fairly subject to an interpretation which w[ould] render unnecessary or substantially modify the federal constitutional question" (quoting *Jones v. Coleman*, 848 F.3d 744, 751 (6th Cir. 2017))).

Here, PA 265's two-year statute of limitations could be interpreted to obviate the federal constitutional question. As amended, section 211.78l prohibits a former property owner from bringing an action to recover "any proceeds from the sale or transfer of [property] . . . more than 2 years after the judgment of foreclosure of the property is effective." MICH. COMP. LAWS § 211.78l(1). Plaintiff claims that section 211.78l is unconstitutional because it retroactively reduced the statute of limitations from six years to two, extinguishing claims that vested before December 2018. *See* ECF No. 228 at PageID.6153–54.

But the prior version of section 211.78l *also* imposed a two-year statute of limitations. *See* MICH. COMP. LAWS § 211.78l (amended 2020). The problem is that the prior version did not specifically address actions to recover surplus proceeds. Instead, it addressed actions relating to "extinguished recorded or unrecorded property interests," *id.*, which the *Hathon* defendants

interpret to include actions for surplus proceeds, *see* Supplemental Brief for Defendants, *Brenier v. State of Michigan*, No. 20-00175-MZ (Mich. Ct. Cl. Feb. 8, 2021).[7]

Accordingly, one of the questions before the Michigan Court of Appeals is whether PA 256 retroactively shortened the limitations period or merely clarified the period's scope. If the answer is the latter, then Plaintiff's statute-of-limitations argument would be moot. And if the Michigan Court of Appeals declares PA 256 unconstitutional—as the *Hathon* plaintiffs have asked it to do—then Plaintiff's *entire* constitutional challenge would be moot. In other words, the Michigan Court of Appeals' decision will either obviate the federal constitutional question or at least shed considerable light on the statute's constitutionality. *Cf. Hill*, 900 F.3d at 265 (noting that abstention is warranted when state court might interpret statute in a way that "substantially modif[ies] the federal constitutional question").

Apart from these prudential considerations, abstention is also appropriate given the nature of the state policy at issue. At bottom, PA 256 represents the Michigan Legislature's effort to reform Michigan's tax-foreclosure law in the wake of a Michigan Supreme Court decision. The idea that a federal court would invalidate the statute before Michigan courts can even interpret it is irreconcilable with the "harmonious" vision of state and federal authority underlying abstention. *See Quackenbush*, 517 U.S. at 718 (noting that abstention is "a contribution of the [federal] courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers" (quoting *Pullman*, 312 U.S. at 501)).

Notwithstanding the compelling reasons for abstention, this Court is mindful that abstention would likely delay the case's resolution. Although Defendants have not raised PA 256

---

[7] *Brenier* is substantially similar to *Hathon* and was consolidated with it for purposes of appeal. *See Hathon v. State*, No. 356501 (Mich. Ct. App. Mar. 8, 2022).

as a defense, they have signaled their intent to do so as soon as the stay is lifted. *See* ECF No. 232 at PageID.6216 ("After the case returns to this Court, the Defendant Counties will bring a motion or motions to decertify . . . ."). If Plaintiff files a motion for summary judgment, and Defendants raise PA 256 as a defense, this Court would likely abstain from deciding that summary-judgment motion until the parallel proceedings have concluded. As frustrating as such a delay would be, the exceptional nature of this case requires a commensurate level of caution in navigating the issues presented. In short, this Court's interest in avoiding "needless friction with state policies" outweighs the class's interest in expediency. *See Pullman*, 312 U.S. at 500.

For these reasons, this Court will abstain from considering PA 256's constitutionality pending the final disposition of *Hathon v. State*, No. 356501 (Mich. Ct. App. filed Mar. 8, 2021).[8]

**B.**

Plaintiff's request to temporarily stay the enforcement of PA 256 under the All-Writs Act will also be rejected.

The All-Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Properly construed, the All-Writs Act is a jurisdictional aid authorizing federal courts "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in exercise of jurisdiction otherwise obtained." *United States v. City of Detroit*, 329 F.3d 515, 522 (6th Cir. 2003) (quoting *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977)).

---

[8] Because this Court will abstain from considering PA 256's constitutionality under *Pullman*, it need not address any of Defendants' alternative arguments. *See* ECF No. 232 at PageID.6210–11, 6213–16 (arguing that abstention is proper under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), that Plaintiff should have amended his complaint to challenge PA 256, and that this Court may not declare PA 256 unconstitutional until the Michigan Attorney General's time to intervene expires).

Despite the broad authority conferred by the All-Writs Act, a federal court may not enjoin state-court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

Plaintiff argues that this Court may stay Michigan courts from enforcing PA 256 because Congress expressly authorized federal courts to stay unconstitutional state-court proceedings under 42 U.S.C. § 1983. ECF No. 228 at PageID.6163. He also argues that a stay is necessary to prevent Defendants from arguing that any judgment rendered under PA 256 is res judicata in this case. *Id.* at PageID. 6164–66.

Both arguments are unavailing. First, although this Court may stay unconstitutional state-court proceedings under § 1983, *see Mitchum v. Foster*, 407 U.S. 225, 242 (1972), it may not stay Michigan courts from enforcing PA 256 on constitutional grounds while, at the same time, abstaining from considering its constitutionality. Indeed, *Mitchum* suggests that a federal court should stay a state-court proceeding under § 1983 only when necessary to "prevent great, immediate, and irreparable loss of a person's constitutional rights." *Id.*

Second, the risk that parallel state-court proceedings will have preclusive effect is inherent in every case and does not, by itself, justify a stay. *See AK Steel Corp. v. Chamberlain*, 974 F. Supp. 1120, 1124 (S.D. Ohio 1997) ("The mere existence of a parallel action in state court does not rise to the level of interference with federal jurisdiction to permit injunctive relief under the 'necessary in aid of jurisdiction' exception to the Anti–Injunction Act." (citing *Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987)); *see also Martingale LLC v. City of Louisville*, 361 F.3d 297, 303 (6th Cir. 2004) ("[T]he existence of a federal right not to have property taken without just compensation does not render equitable relief necessary in aid of the federal courts' jurisdiction.").

Presumably, Defendants will argue at summary judgment that any class member who obtained relief under PA 256 cannot obtain relief in this case. Whether that argument will prevail depends in part on whether PA 256 is constitutional. If it is unconstitutional, then class members may presumably pursue their claims here despite any judgment rendered under PA 256. *See Pike v. City of Wyoming*, 433 N.W.2d 768, 771 (Mich. 1988) (en banc) ("[T]his Court has held res judicata not to be a bar where a subsequent change in the law altered the legal principles upon which the case was to be resolved."). But if PA 256 is constitutional, then class members who elected to use it would likely be bound by their decision. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). The risk that class members will be bound by a state-court judgment does not impede federal jurisdiction; that is just how the federal system works.

For these reasons, Plaintiff's request for a stay under the All-Writs Act will be denied.

## C.

In contrast to his requests to declare PA 256 unconstitutional or to stay its enforcement, Plaintiff's request to lift the stay and to direct class notice is well founded.

As previously noted, to preserve Defendants' asserted immunity on appeal, this case was stayed before class notice could be issued. *See Fox v. Cnty. of Saginaw ex rel. Bd. of Comm'rs*, No. 19-CV-11887, 2021 WL 872089, at *1 (E.D. Mich. Mar. 9, 2021). Consequently, many class members likely have no knowledge of this case or of PA 256, which was enacted three months before the stay. This lack of notice puts the class in a precarious position. If PA 256 is upheld as constitutional and exclusive, then its two-year limitation might preclude recovery for many unsuspecting class members.

Given these circumstances, the need for immediate class notice outweighs Defendants' interest in a continued stay of proceedings. The Sixth Circuit has already affirmed this Court's order denying sovereign immunity for Defendants. *Fox v. Saginaw Cnty.*, No. 21-1108, 2022 WL 523023, at *1 (6th Cir. Feb. 22, 2022). And it is no secret that en banc review is rarely granted in the Sixth Circuit. *See Mitts v. Bagley*, 626 F.3d 366, 370 (6th Cir. 2010) (Sutton, C.J., concurring) ("The decision to grant en banc consideration is unquestionably among the most serious non-merits determinations an appellate court can make . . . . Such a determination should be made only in the most compelling circumstances." (quoting *Bartlett ex rel. Neuman v. Bowen*, 824 F.2d 1240, 1242 (D.C. Cir. 1987) (en banc) (per curiam))).

For these reasons, the stay will be lifted to issue class notice and to conduct discovery regarding the identity of absent class members. *See* ECF No. 228 at PageID.6148 (noting that the stay has precluded class counsel from "securing the names and contact information of class members"). Additionally, Plaintiff will be directed to submit a proposed class notice for approval.

**D.**

Finally, it must be noted that Plaintiff might have misidentified March 31, 2022, as PA 256's cutoff date for class members whose property was sold in 2020. According to Defendants, the cutoff date is May 15, 2022. ECF No. 232 at PageID.6209.

The confusion stems from two different sections in the statute. Section 211.78l provides that claimants must bring an action for the recovery of surplus proceeds no more than "2 years after the judgment of foreclosure . . . is effective under section 78k." MICH. COMP. LAWS § 211.78l(1). Section 211.78k, in turn, makes foreclosure judgments "effective on the March 31 immediately succeeding the [foreclosure] hearing." *Id.* § 211.78k(5).

By contrast, section 211.78t provides that a claimant may file a motion for the recovery of proceeds until the May 15 "immediately succeeding the date on which the property was sold or transferred." *Id.* § 211.78(t)(4).

Because the Michigan Court of Appeals will likely interpret these sections in *Hathon*, this Court will not opine on the issue until *Hathon* has concluded. Nevertheless, because Defendants have represented that the cutoff date is May 15, 2022, Plaintiff will be directed to use that date in drafting the proposed class notice.

### III.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Emergency Relief, ECF No. 228, is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion is **GRANTED** as to the request to lift the stay to issue class notice and to conduct limited discovery. Plaintiff's Motion is **DENIED WITHOUT PREJUDICE** in all other respects.

Further, it is **ORDERED** that this Court will **ABSTAIN** from considering PA 256's constitutionality until the final disposition of *Hathon v. State*, No. 356501 (Mich. Ct. App. filed Mar. 8, 2021).

Further, it is **ORDERED** that the stay in this case is **LIFTED** for the purpose of conducting discovery relating to identity and contact information of class members, and of issuing class notice.

Further, it is **ORDERED** that Plaintiff is **DIRECTED** to file a proposed class notice **on or before April 5, 2022**. The proposed class notice must identify May 15, 2022, as the final date on which class members whose property was sold in 2020 may file a motion for relief under PA 265. Plaintiff must also submit a copy of the proposed class notice as a Word Document through the utilities function in CM/ECF.

Further, it is **ORDERED** that Mindy Calkins, Ali Al-Faraj, Kerry Mark Properties, LLC, and Visser and Associates' Motion for Leave to File *Amicus Curiae* Brief, ECF No. 234, is **DENIED AS MOOT**.

Dated: March 29, 2022                                  s/Thomas L. Ludington
                                                      THOMAS L. LUDINGTON
                                                      United States District Judge