Exhibit C



**EXHIBIT C**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## CONTRACT TO PROVIDE SERVICES

This contract is effective May 1, 2011 by and between **Title Check, LLC**, 622 W. Kalamazoo Avenue, Kalamazoo, MI 49007 hereinafter called the "Contractor" and the **County of Bay** (County), the Bay County Treasurer in his official capacity as the Foreclosing Governmental Unit of 515 Center Avenue, Suite 103, Bay City, MI 48708 hereinafter called the "Treasurer/FGU".

WHEREAS, the Contractor and the County originally executed a contract for tax reversion services effective March 1, 2005 for one year with the option for one five year extension. On August 31, 2006 the parties exercised the option to extend the contract until March 1, 2011;

WHEREAS, the Contractor and the County desire to enter into a contract for an additional five years until April 30, 2016;

WHEREAS, the Contractor will continue to provide all terms of the prior agreement and maintain a price freeze on the current charges, to include a discount of 15% for administrative fees and title research charges for the term thereof.

THEREFORE, the Contractor and the County, in consideration of the mutual covenants, promises and agreements herein contained, agree as follows:

1. SCOPE OF WORK: The Contractor shall provide to the Treasurer/FGU the Property Tax Revision services set forth in the proposal, which is incorporated and made part hereof by this reference. Contractor shall provide, at no additional charge, the additional services of Land Bank Management and printing of the February 1st certified mail notices, at the request of the Treasurer.

2. CONTRACT DOCUMENTS: The contract documents consist of this signed contract and the referenced proposal to provide services.

3. COMPENSATION AND METHOD OF PAYMENT: For satisfactorily completing the services described and required in the contract, the Contractor shall receive payments commensurate with work completed and approved by the Treasurer/FGU.

4. TERMS AND CONDITIONS: The attached terms and conditions (attachment A) are made party of this contract.

In witness whereof the parties have caused this contract to be duly executed, intending to be bound thereby.

DATE: 10/13/11

**BAY COUNTY**

**DONALD TILLEY**
Chairman, Board of Commissioners

DATE: 10/13/11

**RICHARD F. BRZEZINSKI**
Bay Count Treasurer/Foreclosing Government Unit

DATE: 10/10/11

**TITLE CHECK, LLC**

**MARTIN J. SPAULDING**
General Manager

APPROVED AS TO LEGAL FORM ONLY

**MARTHA P FITZ**
BAY COUNTY CORPORATION COUNSEL
DATE: 9/30/11

1

## TERMS AND CONDITIONS

**Controlling Legislation:** The services to be provided hereunder are governed by the provisions of the Michigan General Property Tax Act, and Public Acts 123, 132, 133 and 134 of 1999, as amended. These Acts shall provide the minimum standard for satisfactory performance under this agreement.

**Option to Extend Term:** The Treasurer/FGU shall have the option to exercise one five-year extension to the Term. Pricing for services to be provided during such extension shall be negotiated 90 days before the expiration of the Term.

**Cost Liability:** The Treasurer/FGU is not liable for any costs incurred by the Contractor prior to the signing of this contract by all parties.

**Reports:** The Contractor shall provide online, on-demand reporting to the Treasurer/FGU through its online web portal, orco.title-check.com, or other similar application. The Treasurer/FGU may check the status of any pending file at any time by accessing this resource.

**Information Sharing:** The Treasurer/FGU shall provide to the Contractor, in a timely manner, all information necessary for the Contractor to render services under this Agreement.

**Payment for Services Rendered:** The Contractor is not entitled to payment for services on parcels that are redeemed from reversion *prior to the commencement of research activity*. Any amounts paid to Contractor for administration fees that are to be rebated to the Treasurer/FGU for such reason are to be taken as credits on the next succeeding invoice after the date of redemption. The Contractor or its personnel shall check redemption on a daily basis.

**Scope of Title Search:** The Contractor shall provide a title search on all parcels which proceed to foreclosure, and shall also examine other records as prescribed by statute. Parties identified in the search shall additionally be traced for current address and telephone number to the best of the Contractor's ability.

**Effect of Redemption:** Upon notice of redemption from forfeiture by Treasurer/FGU, Contractor shall immediately discontinue any and all research and contact tasks for the subject parcel(s), and shall remove or properly classify same in the managed database.

**Form of Official Documents:** Where promulgated by the Michigan Department of Treasury or other authority, the Contractor shall use only those approved forms or documents.

**Ownership of Records:** All original documents, files and records acquired, generated or obtained by the Contractor under this contract and which pertain directly to a particular forfeited or foreclosed parcel are the property of the Treasurer/FGU and shall be transmitted upon request, and/or no later than six months after the expiration of this contract or any renewal thereof. However, this does not include the Contractor's internal communications, documentation, mental impressions, or other information ancillary to the primary services provided to the Treasurer/FGU.

Bay County                                          1

Independent Contractor: The Contractor is an independent contractor and not an employee of the Treasurer/FGU or County. The Contractor shall secure, at its own expense, all personnel required in supplying services under the awarded contract.

Insurance: The Contractor shall maintain the following minimum insurance coverage:

1.    Commercial General Liability : $1,000,000 occurrence/aggregate
2.    Automobile : $1,000,000 occurrence
3.    Workers Compensation : statutory limits
4.    Employers' liability: $100,000 accident/disease per employee, $500,000 policy limit.
5.    Professional liability/Errors & Omissions: $ 100,000 occurrence, $300,000 aggregate.

Such coverage(s) shall name the Treasurer/FGU and County as additional insured's, and shall provide for notice of cancellation to the Treasurer/FGU. Original certificates of insurance shall be provided to the Treasurer/FGU prior to commencement of work under this contract.

Indemnification: The Contractor shall indemnify and hold harmless the Treasurer/FGU and County, its officers and employees from and against all claims, losses, damages, and expenses including but not limited to, attorney fees arising out of or resulting from the performance of the contract. This indemnification encompasses losses or claims arising from the failure of the Contractor to properly identify parties entitled to notice under the applicable legislation, but does not include losses or claims resulting from defects in the real estate, tax roll or assessment records of the Treasurer, County or local units of government, or claims based on the actual delivery of such notice where such delivery address was not a matter of local public record. Indemnification shall include a setoff for the sale amount received by the Treasurer/FGU if the property has been sold, or in an amount equal to 1.5 x State Equalized Value if the property was acquired by a local unit of government for public use.

Invoicing : The amount due for administration fee ($62.88 per parcel) shall be invoiced and paid monthly in 1/12th increments, and shall commence with the month the parcels are assigned (April annually). The amount due for title search fee ($55.25 per parcel or $21.25 per parcel) shall be invoiced when title search activity has been substantially undertaken by the Contractor.

<u>Pricing</u> : The pricing for each task is outlined below :

| TASK | UNIT COST |
|------|-----------|
| Receive/review February notices | Included in Administration Fee |
| Track redemptions | Included in Administration Fee |
| Title search* | $55.25 per parcel first time parcels.<br><br>$21.25 per parcel update fee for parcels with prior Title Check search record data <u>if complete.</u> |
| Generate notice – certified mail form | Actual Cost (postage) plus .20 per notice |
| Mail notices / receive returns / skip trace | Included in Administration fee |
| Publish alternate service | Actual Cost (printing and publishing) |
| Personal visit / service | Actual Cost (process server or agent) |
| Create court documents / proofs of notice | Included in Administration Fee |
| Market foreclosed parcels for sale | Included in Administration Fee |
| Conduct live and internet auctions | Included in Administration Fee |

* Search activity is discontinued when parcels are redeemed.

The Administration Fee shall be a base fee of **$62.88 per parcel for the administration** of the reversion and foreclosure process. *This fee is due on all parcels as of the date they are assigned by the Treasurer/FGU to the Contractor*, regardless of date of redemption. However parcels redeemed prior to any title search activity will have administration fees rebated. Prices are based on total process assignment and are not available as components without specific agreement otherwise.

Title search fees are assessable upon commencement if not redeemed at that time.

## ATTACHMENT A
## TERMS AND CONDITIONS

Controlling legislation: The services to be provided hereunder are governed by the provisions of the Michigan General Property Tax Act, and Public Acts 123, 132, 133 and 134 of 1999, as amended. They shall be considered the standard and minimum for performance under this agreement.

Term of Contract: The contract covers the period from May 1, 2011 to April 30, 2016, as well as any tasks to be completed after said date to complete the applicable contract year. Pricing for a contract extension may be negotiated 90 days before the expiration, if any, of the contract period.

Cost liability: The Treasurer/FGU is not liable for any costs incurred by the Contractor prior to the signing of this contract by all parties.

Reports: The Contractor shall provide the Treasurer/FGU with reports for each year during which this contract continues:

1.   Reports shall be due at 60, 120 and 180 days after the date upon which the contractor receives the list of forfeited parcels provided by the Treasurer/FGU. The reports shall specify the extent to which each of the tasks shall have been completed.

2.   The reports shall be submitted in an electronic format and by paper copy.

3.   The Treasurer/FGU or their authorized representative may, for good cause, extend the amount of time for submission of any report. No such extension shall allow any report to be submitted after February 28 of the year following the contract year.

Payment for services rendered: The contractor is not entitled to payment for services on parcels that are redeemed from reversion *prior to the commencement of research activity*. Any amounts paid to Contractor for administration fees that are to be rebated to the Treasurer/FGU for such reason are to be taken as credits on the next succeeding invoice after the date of redemption. The contractor or its personnel shall check redemption on a daily basis.

Scope of Title Search: The contractor shall provide a title search on all parcels which proceed to foreclosure, and shall also examine other records as prescribed by statute. Parties identified in the search shall additionally be traced for current address and telephone number to the best of the contractors' ability.

Effect of Redemption: Upon notice of redemption from forfeiture by Treasurer/FGU, Contractor shall immediately discontinue any and all research and contact tasks for the subject parcel(s), and shall remove or properly classify same in the managed database.

Form of official documents: Where promulgated by the Michigan Department of Treasury or other authority, the Contractor shall use only those approved forms or documents.

Ownership: All original documents, files and records acquired, generated or obtained by the Contractor under this contract are the property of the Treasurer/FGU and shall be transmitted upon request, and/or no later than six months after the expiration of this contract or any renewal thereof.

Independent Contractor: The Contractor is an independent contractor and not an employee of the Treasurer/FGU or County. The Contractor shall secure, at its own expense, all personnel required in supplying services under the awarded contract.

2

<u>Insurance:</u> The Contractor shall maintain the following minimum insurance coverage:

1. Commercial General Liability: $1,000,000 occurrence/aggregate
2. Automobile: $1,000,000 occurrence
3. Workers Compensation: statutory limits
4. Employers' liability: $100,000 accident/disease per employee, $500,000 policy limit.
5. Professional liability/Errors & Omissions: $ 100,000 occurrence, $300,000 aggregate.

Such coverage(s) shall name the Treasurer/FGU and County as additional insured's, and shall provide for notice of cancellation to the Treasurer/FGU. Original certificates of insurance shall be provided to the Treasurer/FGU prior to commencement of work under this contract.

<u>Indemnification:</u> The Contractor shall indemnify and hold harmless the Treasurer/FGU and County, its officers and employees from and against all claims, losses, damages, and expenses including but not limited to, attorney fees arising out of or resulting from the performance of the contract. This indemnification encompasses losses or claims arising from the failure of the Contractor to properly identify parties entitled to notice under the applicable legislation, but does not include losses or claims resulting from defects in the real estate, tax roll or assessment records of the Treasurer, County or local units of government, or claims based on the actual delivery of such notice where such delivery address was not a matter of local public record. Indemnification shall include a setoff for the sale amount received by the Treasurer/FGU if the property has been sold, or in an amount equal to 1.5 x State Equalized Value if the property was acquired by a local unit of government for public use.

<u>Invoicing:</u> The amount due for administration fee ($62.93 per parcel) shall be invoiced and paid in $1/12^{th}$ increments, and shall commence with the month the parcels are assigned (April annually). The amount due for title search fee ($55.25 or $21.25 per parcel) shall be invoiced when title search activity has been substantially undertaken by the contractor.

3

**Pricing**:   The pricing for task elements is outlined below:

| TASK | UNIT COST |
|---|---|
| Receive/review February Notices | * included in Administration fee |
| Track redemptions | * included in Administration fee |
| Title search*<br><br>* Search activity is discontinued when parcels are redeemed. | $55.25 "first time" parcels.<br><br>$21.25 update fee for parcels with prior Title Check search record data if |
| Generate Notice - certified mail form | Actual Cost (postage) plus .20 per notice |
| Mail notices/receive returns/skip trace | * included in Administration fee |
| Publish alternate service | Actual Cost (printing and publishing) |
| Personal visit/service | Actual Cost (process server or agent) |
| Create court documents / proofs of notice | * included in Administration fee |
| Market foreclosed parcels for sale | * included in Administration fee |
| Conduct Live and internet auctions | * included in Administration fee |

All items marked * shall be included in a base fee of $ 69.93 for administration of the reversion process. **This fee is due on all parcels as of the date they are assigned by the Treasurer/FGU to the contractor,** regardless of date of redemption, however parcels redeemed prior to any title search activity will have administration fees rebated. Prices are based on total process assignment and are not available as components without bidder consent.

Title Search fees are assessable upon, commencement if not redeemed at that time.

4

15-21

## RENEWAL OF CONTRACT TO PROVIDE SERVICES

Renewal of Contract to Provide Services, dated and effective as of Nov 2, 2015, between Title Check, LLC of 622 W Kalamazoo Ave, Kalamazoo, MI 49007 (the "Contractor") and the **Bay County Treasurer** of 515 Center Avenue, Suite 103, Bay City, MI 48708 (the "Treasurer/FGU").

The Contractor and the Treasurer/FGU originally executed a contract for tax reversion services in 2005. Subsequent contracts were executed in 2006 and again in 2011. The term of the most recent contract is set to expire on April 30, 2016.

The relationship between the Contractor and the Treasurer/FGU over the past 10 years has been mutually beneficial and both parties desire to continue this relationship into the future. To this end, the Contractor has offered to continue providing services to the Treasurer/FGU at the current agreed upon price for an additional five (5) years.

Accordingly, in consideration of the mutual promises stated in this Agreement, the parties agree as follows:

**Term:** The Term of this Agreement shall commence on May 1, 2016 and continue for a period of five (5) years, concluding on April 30, 2021.

**Scope of Work:** The Contractor shall provide to the Treasurer/FGU the services set forth in the attached Summary of Services Provided which is hereby incorporated and made a part of this Agreement. These services are consistent with those provided by the Contractor under past agreements.

**Terms and Conditions:** The attached Terms and Conditions are hereby incorporated and made a part of this Agreement and are substantially consistent with those Terms and Conditions included in earlier agreements.

**Compensation:** The Treasurer/FGU shall compensate the Contractor for the satisfactory rendering of services outlined in the aforementioned Proposal to Provide Services at the rate outlined in the aforementioned Terms and Conditions.

**Counterparts:** This Agreement may be executed in one or more counterparts, each of which is deemed an original but all of which together shall constitute one agreement.

To evidence the parties' agreement to this Agreement, each party has executed and delivered it on the date indicated under that party's signature.

**Bay County Treasurer**

By: _Richard F Brzezinski_
Richard Brzezinski,
Bay County Treasurer

Dated: 03-09-16

**Title Check, LLC**

By: _Thomas E. Willard_
Thomas E. Willard,
Operations Manager

Dated: 11-2-15

APPROVED AS TO LEGAL FORM ONLY
_[signature]_
BAY COUNTY CORPORATION COUNSEL
DATE: 3-9-16

# SUMMARY OF SERVICES PROVIDED

*Overview*:

Contractor provides comprehensive real estate title research, skip tracing of parties with property interest, due process notification, foreclosure processing, task management, and property disposition services.

This document outlines the services that Contractor will provide to Treasurer/FGU and those tasks which will be the responsibility of the Treasurer/FGU.

*Services Provided by Contractor*:

Contractor, quite literally, conducts substantially all of the mechanical tasks involved with the tax foreclosure and property liquidation process as the agent of the Treasurer/FGU.

Each year Contractor is assigned a list of properties that have been turned over as delinquent to the Treasurer/FGU. After this time, Contractor completes the following tasks as applicable:

1)  Generates, mails, tracks, receives and stores (by digital image) the **first certified mail notice** (aka *"the February notice"*) and its electronic receipt record. This notice is sent by the February 1st prior to forfeiture.
2)  Once the forfeiture deadline has passed and the Treasurer/FGU has recorded the Certificates of Forfeiture, the Contractor **creates a database of properties remaining delinquent.**
3)  The **database of delinquent properties is parsed,** so that each person listed on the tax roll receives an individual notice. (*Example: A husband and wife are each entitled to separate notice by law. The tax roll must be manually edited to create multiple entries for each parcel where there is more than one person listed*).
4)  The parsed delinquent tax roll database is then merged into a **test mail** form. This form is sent by first class mail to each person and each address on the delinquent tax roll to determine that the address is deliverable, and that any address forwarding orders on file are captured and incorporated into the database.
5)  **Title search and tax roll review** activity is then commenced on each parcel, to determine all parties entitled to notice under statute.
6)  As parties are identified in title and tax roll documents, their names and last-known-address are **entered into the database.**
7)  The names of spouses of married, male grantees are determined and data entered where unknown or not clearly listed.
8)  As parties are added to the notice database, **further test mail is sent** to those addresses to determine their accuracy and deliverability.
9)  An ongoing process is implemented to **compare active lists** with the Treasurer/FGU and to remove those parcels from the process where taxes have been paid and the parcel redeemed from forfeiture.

Bay County                                    1

10) An ongoing process is implemented to skip trace parties of interest where mail is being returned because of undeliverable addresses or expired forwarding orders.

11) Mail is sent to parties of record warning of pending property inspection visit and associated fees.

12) Inspection notice forms are created that meet statutory requirements, and are forwarded to the Treasurer/FGUs designated property inspector for delivery to the occupants of delinquent parcels.

13) Property inspectors are furnished with a means to document their visits (either via a hand-held tablet, or paper forms and a digital camera)

14) Notation is made in the database as to which properties appear to be occupied, unoccupied/vacant, or where lands are unimproved. The street address of properties is also captured where previously unknown.

15) The results of the property visits are returned to the Contractor for inclusion in the database and for purposes of generating proofs of notice for filing with the court.

16) Mail is sent to parties of record warning of pending publication of their names and associated fees.

17) The publication notice advertisement is created, and publication prices are negotiated with a local periodical. In many instances, the published piece is printed elsewhere to reduce cost and then inserted into the local paper as opposed to being printed in column.

18) The published notice runs three times as required by statute and an affidavit of publication is secured and furnished to the Treasurer/FGU's legal counsel for filing with the circuit court.

19) Generates, mails, tracks, receives and stores (by digital image) the final certified mail notice (aka "the notice of hearing") and its electronic receipt record. This notice is sent just prior to the show cause hearing.

20) The notice of hearing is re-sent by first class mail to any parties/addresses where the certified mail delivery was unclaimed, refused or otherwise undeliverable.

21) The notice of hearing is sent by first class mail to the occupant of properties where an address is available in the database and where it is believed that an occupied structure exists.

22) The results of the property inspection visits and the certified mail notice delivery are compiled into proofs of notice and are furnished to the Treasurer/FGU's legal counsel for filing with the circuit court.

23) After the show cause and circuit court hearings, but just prior to the final redemption date, a final "simple English" notice is sent to all parties of record by regular first-class mail. This occurs in the final 15 days of redemption.

24) All notices, database records, mail receipts and other documentation listed above is made available to the Treasurer/FGU on-line through a web portal for remote retrieval 24/7.

25) Once the redemption period has expired, the Contractor assembles a list of foreclosed parcels and re-examines the sufficiency of notice provided to determine whether any parcels should be pulled for insufficient notice.

26) Affidavits of foreclosure are created and forwarded to the Treasurer/FGU for recording, to demonstrate that the redemption period has expired. Many Treasurer/FGUs also post a copy of this notice on the parcels.

Bay County                                              2

27) Mail is sent to any foreclosed property that appears to be occupied, further notifying the occupant of foreclosure and requesting that they **vacate the premises**.

28) Contractor and the Treasurer/FGU next begin the process of more fully **identifying the foreclosed property**, inspecting it, and preparing it for auction, conveyance to local units for public purpose, or other disposition.

29) The Contractor then dispatches staff to document the location, improvements, condition, and other attributes of those foreclosed properties that will be auctioned. This typically involves a **physical inspection**, changing of locks to allow access to the interior of parcels with structures, a thorough photographing and, completion of an inventory-type checklist.

30) **Auction signs** are placed on the property.

31) The results of the property inspection are **posted on the auction website** for public viewing and the **advertising** legally required to disclose the date of the auction is placed.

32) Matters involving **situational issues are addressed** (occupied structures, contaminated properties, boundary/encroachment or other legal issues, condemnation or demolition orders), rectified, or abated as determined practical.

33) **Contested foreclosures are finalized or set aside** as the conditions warrant.

34) The **auction** is held, usually with other adjacent counties in a convenient, central location. The auction is held both physically and online simultaneously.

35) Buyer funds are collected and placed into an **escrow account**. This includes an allowance for recording of the deed as well as summer taxes due on the property at the time of the auction.

36) **Deeding information is collected** from buyers and deeds generated and forwarded to the Treasurer/FGU for execution within statutory time allowances.

37) **Final auction proceeds** are forwarded to the Treasurer/FGU.

*Tasks Completed by Treasurer/FGU*:

During the forfeiture and foreclosure process, the Contractor performs most of the time-consuming mechanical tasks related to title search, delivery of notice, and database management.

This frees the staff of the Treasurer/FGU to focus on more intensive interaction with its taxpayers, implement procedures to prevent foreclosure, and streamline hardship and payment arrangement policies.

The Treasurer/FGU:

1) Records the Certificate of Forfeiture with the Register of Deeds by April 15th each year.

2) Retains legal counsel, and files the complaint along with a list of forfeited property with Circuit Court by June 15th annually.

3) Schedules the show cause hearing in its office, and obtains the date of the judicial hearing from Circuit Court.

4) Develops and implements outreach programs to identify, contact and counsel with at-risk owner-occupants to prevent foreclosure and loss of homesteads.

Bay County                                   3

5)   Identifies and co-ordinates efforts with local, state, or federal agencies that are available to assist delinquent taxpayers prevent the loss of property.

6)   Promotes foreclosure prevention through the local media.

7)   Interacts with Contractor to maintain a current and accurate list of un-redeemed parcels, and prevent *redeemed* parcel owners from receiving further communication.

8)   Forwards any updated contact detail (new or additional addresses, situational events such as death, divorce or similar) to Contractor.

9)   Holds the show cause administrative hearing, and appears at the final hearing.

10)  Enters into payment arrangements or exemption agreements with taxpayers.

11)  Co-ordinates public purpose takings with local units of government after foreclosure.

12)  Aids in the assessment of foreclosed properties and determines policy regarding the level of involvement with specific properties.