UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS A. FOX, on behalf of himself
and all others similarly situated,

          Plaintiff,                    Case No. 1:19-cv-11887

v.                                          Honorable Thomas L. Ludington
                                               United States District Judge

COUNTY OF SAGINAW, by its BOARD OF
COMMISSIONERS *et al.*,

          Defendants.
_____/

**OPINION AND ORDER (1) DENYING DEFENDANTS' MOTION FOR RECONSIDERATION, (2) GRANTING AND DENYING IN PART PLAINTIFF'S MOTION TO EXPEDITE, (3) LIFTING STAY, AND (4) DIRECTING PLAINTIFF TO SUBMIT REVISED CLASS NOTICE**

        This is a class action brought under 42 U.S.C. § 1983. Three weeks ago, this Court partially lifted a stay that had been in place for more than a year while Defendants pursued an immunity defense in the court of appeals. One day later, the Sixth Circuit granted Defendants' 17-month-old motion for leave to appeal the class-certification order, triggering a new wave of motion practice and a renewed request to stay these proceedings.

        For the reasons explained hereafter, despite the Sixth Circuit's recent decision, a new stay will not be imposed. Accordingly, Defendants' motion for reconsideration will be denied, Plaintiff's emergency motion to compel will be granted in part and denied in part, the stay will be lifted, and Plaintiff will be directed to submit a revised class notice and supplemental briefing.

**I.**

For decades, Michigan's General Property Tax Act (GPTA) allowed a "foreclosing governmental unit"—typically, the local county—to sell tax-delinquent property at auction and retain the surplus proceeds. *See* MICH. COMP. LAWS § 211.78m (amended 2020). In Plaintiff's case and many others, this practice resulted in a windfall for the government. *See* ECF No. 1 at PageID.4–5 (claiming that Defendant Gratiot County retained $21,908.77 in surplus proceeds from selling Plaintiff's property). In June 2019, Plaintiff brought this action under 42 U.S.C. § 1983 to declare the practice unconstitutional and to recover the surplus proceeds from 26 counties. *Id.*

Shortly after class certification, Defendants filed motions to dismiss based on sovereign immunity. *See, e.g.*, ECF No. 120 at PageID.2108 (claiming that "Defendants did only what State law required of them, and . . . [therefore] act[ed] as an arm of the State"). Those motions were denied in relevant part, and Defendants appealed. To preserve their asserted immunity on appeal, the case was stayed. *Fox v. Cnty. of Saginaw ex rel. Bd. of Comm'rs*, No. 19-CV-11887, 2021 WL 872089, at *1 (E.D. Mich. Mar. 9, 2021).

A few months before the case was stayed, Michigan enacted Public Act No. 256 ("PA 256"), which amended the GPTA and established a purportedly exclusive process for compensating former property owners. *See* MICH. COMP. LAWS § 211.78t(11). Although some have used PA 256 to their advantage, *see* Asset Recovery's Show-Cause Br., ECF No. 184 at PageID.4895 (noting that one claimant recovered $110,308.30),[1] not all have been pleased with the legislative remedy. Since its enactment, PA 256 has been criticized by Plaintiff and others as offering an unfair and inadequate recovery, focusing on its two-year statute of limitations and

---

[1] Asset Recovery is one of two companies that was found to have improperly solicited class members earlier in the case. *See* Op. and Order Directing Curative Notice, ECF No. 229 at PageID.6172–73.

nonretroactivity provision. *See* Pl.'s Emergency Mot., ECF No. 228 at PageID.6146. Some have even challenged PA 256's legality under Michigan law. *See Hathon v. State*, No. 356501 (Mich. Ct. App. filed Mar. 8, 2021).

In February 2022, the Sixth Circuit affirmed this Court's decision denying sovereign immunity to Defendants. *Fox v. Saginaw Cnty. ex rel. Bd. of Comm'rs*, No. 21-1108, 2022 WL 523023, at *1 (6th Cir. Feb. 22, 2022). One week later, before the mandate issued, Plaintiff filed an emergency motion to either (1) declare PA 256 unconstitutional; (2) stay its enforcement under the All-Writs Act, 28 U.S.C. § 1651; or (3) lift the stay and direct class notice. ECF No. 228. Plaintiff deemed his motion an emergency due to an impending statutory deadline, which threatened to bar relief for class members who had not filed a motion in their local circuit court. *Id.* at PageID.6147.

Because the Michigan Court of Appeals was (and is) considering several questions relevant to PA 256's constitutionality, Plaintiff's request to declare the statute unconstitutional or stay its enforcement was denied on abstention grounds. *See Fox v. Cnty. of Saginaw ex rel. Bd. of Comm'rs*, No. 1:19-CV-11887, 2022 WL 944284, at *5 (E.D. Mich. Mar. 29, 2022). Nonetheless, given the potential prejudice to class members who might be affected by PA 256, this Court granted Plaintiff's requests to partially lift the stay and to issue class notice. *Id.* at *7. Plaintiff was directed to submit a proposed class notice and was authorized to conduct limited discovery necessary to issue it. *Id.*

The plan was to ensure that absent class members who might be affected by PA 256 would have notice of this case and of PA 256 before May 15. *See id.* (noting that "[t]he lack of notice puts the class in a precarious position"). Yet the best-laid plans of a district court, like those of mice or men, often go awry. *See* ROBERT BURNS, TO A MOUSE (1785).

The day after the order was entered, the Sixth Circuit granted Defendants' Rule 23(f) motion for leave to appeal this Court's certification order.[2] *See In re Alpena Cnty.*, No. 20-0110 (6th Cir. Mar. 30, 2022), ECF No. 16; *In re Alpena Cnty.*, No. 20-0111 (6th Cir. Mar. 30, 2022), ECF No. 32. Defendants' motion, filed 17 months earlier, argued that this Court erred by granting class certification using the juridical-link doctrine. *Id.* In Defendants' view, the class should not have been certified without a named plaintiff that had individual standing as to each Defendant. *Id.* Because the motion raised a "novel and unsettled question of law," the Sixth Circuit granted Defendants leave to appeal. *Id.* at 4.

Defendants quickly responded to the Sixth Circuit's decision by filing a motion for reconsideration. ECF No. 241. In effect, Defendants' motion seeks to reimpose the stay for the duration of the Rule 23(f) appeal. *Id.*

Shortly after Defendants filed their motion, Plaintiff filed an emergency motion to compel Defendants and their non-party foreclosure contractor, Title Check, LLC, to respond to certain discovery requests. ECF No. 243. Plaintiff argues that the information requested is necessary to prepare the class notice, and that Defendants and Title Check might not comply in time for class notice to issue before the May 15 deadline. *Id.* at PageID.6465–66.

Having carefully reviewed the parties' briefing, this Court finds that a hearing is unnecessary and will proceed to address the pending motions on the papers. *See* E.D. Mich. LR 7.1(f)(2).

---

[2] Rule 23(f) provides that a court of appeals "may permit an appeal from an order granting or denying class-action certification" but that such appeal "does not stay proceedings in the district court unless the district judge or the court of appeals so orders." FED. R. CIV. P. 23(f).

**II.**

**A.**

The first issue is whether the partially lifted stay should be fully reimposed. Defendants argue that the stay should be reimposed (1) because this Court's reason for lifting the stay (i.e., providing notice to class members likely to be affected by PA 256) was erroneous and (2) because of the pending Rule 23(f) appeal. *See* ECF No. 241 at PageID.6427–29.

Although Defendants' motion nominally seeks "reconsideration," only their first argument raises an issue that was previously "considered." The second argument—that this Court should reimpose the stay due to the Rule 23(f) appeal—involves new issues of law and fact that should have been raised in a new motion to stay.

Accordingly, Defendants' first argument will be addressed under the reconsideration framework, and their second argument will be addressed under the stay framework.

**i.**

In this District, motions for reconsideration of nonfinal orders are governed by Local Rule 7.1(h), which provides:

> **(2) Non-Final Orders.** Motions for reconsideration of non-final orders are disfavored. They must be filed within 14 days after entry of the order and may be brought only upon the following grounds:
> **(A)** The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
> **(B)** An intervening change in controlling law warrants a different outcome; or
> **(C)** New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.1(h)(2).

Defendants argue that this Court's decision to partially lift the stay and issue class notice was premised on a misinterpretation of their briefing. ECF No. 241 at PageID.6436. In his

emergency motion to declare PA 256 unconstitutional, Plaintiff claimed that class members whose property was sold in 2020 had until March 31, 2022 to seek relief under the statute—hence Plaintiff's decision to label the motion as an "emergency." ECF No. 228 at PageID.6147. Defendants disagreed, claiming that the cutoff date was not March 31 but May 15. ECF No. 232 at PageID.6209. Because the issue turned on a statutory question that the Michigan Court of Appeals was likely to address, this Court decided to abstain from resolving it. *See Fox v. Cnty. of Saginaw ex rel. B.d of Comm'rs*, No. 1:19-CV-11887, 2022 WL 944284, at *7 (E.D. Mich. Mar. 29, 2022). Nonetheless, because Defendants asserted that the cutoff date was May 15, Plaintiff was directed to use that date in the class notice. *Id.*

But as Defendants now note, their brief did not state that the cutoff date was May 15, 2022; it stated that the cutoff date was "May 15, 2021." ECF No. 241 at PageID.6437. Thus, they argue, this Court erred in partially lifting the stay and directing Plaintiff to use the May 15, 2022 date. *Id.*

Defendants are correct that an error was made. But they are incorrect to assume that this error justifies reimposing the stay.

The stay was partially lifted so that absent class members who might be affected by PA 256 would not be kept in the dark. *See Fox*, 2022 WL 944284, at *7. If Defendants' interpretation of PA 256 is correct, then the deadline to seek relief has already come and gone for the 2020 claimants. But as Plaintiff notes, "regardless of the year at issue or the statute's precise operation, Public Act 256 seems to have *a* May 15 deadline." ECF No. 256 at PageID.6576. Indeed, though Defendants studiously avoid admitting as much, May 15, 2022 must be the cutoff date for *some* subset of absent class members. *See* ECF No. 232 at PageID.6209 (noting that "[a] motion under [PA 256] must be filed during the period beginning on February 1 immediately succeeding the date on which the property was sold or transferred . . . and ending on the immediately succeeding

May 15" (quoting MICH. COMP. LAWS § 211.78t(4)). Although this Court is reluctant to decide the issue for abstention reasons, *see Fox*, 2022 WL 944284, at *7, it seems fair to assume that the May 15, 2022 cutoff date applies to absent class members whose property was sold in 2021. Accordingly, despite this Court's initial error, partially lifting the stay was justified.

Defendants' argument is unpersuasive for another reason, as well. Shortly after Defendants filed their motion for reconsideration, the Sixth Circuit issued the mandate in the sovereign-immunity appeal. ECF No. 245. Thus, according to this Court's order staying the case, the stay must be lifted absent some reason for reimposing it. *See* ECF No. 166.

**ii.**

Defendants also argue that the stay should be reimposed due to the pending Rule 23(f) appeal. ECF No. 241 at PageID.6438.

In deciding whether to stay a case pending an appeal, courts "consider the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Those factors are:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal;
> (2) the likelihood that the moving party will be irreparably harmed absent a stay;
> (3) the prospect that others will be harmed if the court grants the stay; and
> (4) the public interest in granting the stay.

*Id.* "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.*

**a.**

The first factor is the likelihood of success on appeal. *Id.* To justify a stay, "a movant need not always establish a high probability of success on the merits." *Id.* Rather, "[t]he probability of

success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay." *Id.*

For reasons discussed *infra*, the likelihood of Defendants suffering an irreparable injury is low. *See infra* Section II.A.ii.b. Therefore, to prevail on the first factor, Defendants must show a relatively high likelihood of success. *Griepentrog*, 945 F.2d at 153.

This Court has already discussed the merits of the juridical-link issue on multiple occasions. *See Fox v. Cnty. of Saginaw ex rel. Bd. of Comm'rs*, No. 19-CV-11887, 2020 WL 6118487, at *5–6 (E.D. Mich. Oct. 16, 2020); *Fox v. Cnty. of Saginaw ex rel. Bd. of Comm'rs*, No. 19-CV-11887, 2021 WL 120855, at *3–6 (E.D. Mich. Jan. 13, 2021). Since the class-certification stage, Defendants have argued that Plaintiff may not maintain this action because he does not have individual standing against each Defendant. *See, e.g.*, ECF Nos. 112 at PageID.1870–73; 139 at PageID.3174. Defendants' argument is supported by numerous cases, most of which are from outside this circuit. *See* ECF No. 241 at PageID.6438–42 (discussing cases).

Meanwhile, Plaintiff has argued that the juridical-link doctrine excuses his lack of individual standing against each Defendant. *See, e.g.*, ECF No. 93 at PageID.1291. As defined by the Sixth Circuit, the juridical-link doctrine is "a sparingly applied class-certification doctrine" that allows "a plaintiff without a cause of action against each defendant in a class action" to maintain the action if "the case 'involve[s] a state statute or uniform policy being applied statewide by the defendants.'" *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 420 n.2 (6th Cir. 2020) (quoting *Thompson v. Bd. of Educ. of Romeo Cmty. Schs.*, 709 F.2d 1200, 1205 (6th Cir. 1983)).

Rather than repeat those arguments, this Court will rely on its prior analysis, neatly summarized at the motion-to-dismiss stage:

> This Court is not bound to reject a doctrine because the Sixth Circuit has not already applied it or because other courts have declined to do so based on different facts.

> Indeed, Defendants admit that "[w]ith no binding precedent, this Court must determine which line of cases is best reasoned."
>
> To that end, Defendants' characterization of the juridical link doctrine as controversial and sparingly applied is beside the point. The rare circumstances of this case justify the doctrine. Indeed, courts are rarely presented with a case where the participation of numerous local governments in the same statutory scheme "provide[s] the sole basis for liability across all eight counts of [an] amended complaint."

*Fox*, 2021 WL 120855, at *5–6 (citations and footnotes omitted).

Notably, the Sixth Circuit has not indicated that this analysis was incorrect. In granting Defendants' Rule 23(f) petition, the Sixth Circuit relied solely on the novelty of the question presented and did not even address Defendants' likelihood of success on appeal. *See In re Alpena Cnty.*, No. 20-0110 (6th Cir. Mar. 30, 2022), ECF No. 16, at 4 ("Given that we have 'unfettered discretion' to grant or deny an appeal and that '[p]ermission is most likely to be granted . . . when the certification decision turns on a novel or unsettled question of law,' we grant the defendants' petition on this factor alone." (quoting *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1710 (2017))); *In re Alpena Cnty.*, No. 20-0111 (6th Cir. Mar. 30, 2022), ECF No. 32, at 4 (same).

Although Defendants' arguments against the juridical-link doctrine are researched and briefed well, this Court is not convinced that they present a high likelihood of success on appeal. For this reason, the first factor weighs against a stay.

**b.**

The second factor is the likelihood that Defendants "will be irreparably harmed absent a stay." *Griepentrog*, 945 F.2d at 153. In considering this second factor, courts generally look to "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Id.* at 154. Yet no matter how substantial, injuries "in terms of

money, time and energy necessarily expended in the absence of a stay, are not enough." *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

First, Defendants argue that the class could be irreparably harmed absent a stay because the Sixth Circuit might decertify the case, causing substantial confusion. *See* ECF No. 241 at PageID.6443. Defendants cite an unpublished case from the Southern District of Ohio for the proposition that "[i]n cases involving Rule 23(f) appeals, district courts ordinarily should stay the dissemination of class notice to avoid the confusion and substantial expense of renotification that may result from appellate reversal or modification." *Id.* (quoting *Jenkins v. Hyundai Motor Fin. Co.*, No. C2-04-720, 2008 WL 2268319, at *4 (S.D. Ohio June 2, 2008)).

Defendants' argument is unpersuasive. First, the second factor addresses harm to the "movant," and the class is not the movant here. *Griepentrog*, 945 F.2d at 153. Second, Defendants have not explained why the confusion resulting from a decertification order could not be cured by a corrective notice. *Cf. Lyngaas v. Curaden AG*, No. 17-CV-10910, 2019 WL 2635966, at *3 (E.D. Mich. June 27, 2019) (denying motion to stay case pending Rule 23(f) appeal despite potential confusion because "[t]he Court s[aw] no reason to assume that the class members [were] incapable of understanding any notice that is sent to them"). Moreover, the *Jenkins* court did not stay the case entirely. *See Jenkins*, 2008 WL 2268319, at *4 (staying only the class notice). Nor did it suggest that the confusion to class members would be irreparable. *See id.*

Defendants next argue that they could be irreparably harmed absent a stay because they might incur significant expenses. ECF No. 241 at PageID.6444–45. They also claim that "[i]f the Sixth Circuit rejects the application of the juridical link doctrine, all but one of th[e] [Defendant] counties will be dismissed." *Id.* at PageID.6444 (referring to Gratiot County, which sold Plaintiff's property).

As previously noted, unnecessary expenses are an inherent risk of every interlocutory appeal and do not typically justify a stay. *See Griepentrog*, 945 F.2d at 153. Here, part of the discovery burden seems likely to be shared by nonparties. *See* ECF No. 243 at PageID.6465–66 (seeking to compel discovery from Defendants' nonparty foreclosure contractor). And even if Defendants end up bearing the full exposure of discovery, they have not provided any reason to believe that their burden would be exceptional relative to the defendants in similar cases.

Defendants are also incorrect to assume that a favorable ruling from the Sixth Circuit would end the case. In his response brief, Plaintiff states that after the stay is lifted, he will file a motion to "add a class representative for every Defendant county." ECF No. 256 at PageID.6582. If granted, that motion would likely moot the issue presented in Defendants' Rule 23(f) appeal. *Id.* Although Plaintiff maintains that adding additional named plaintiffs is unnecessary given the juridical-link doctrine, he claims that a "belt-and-suspenders" approach might be necessary to counter "Defendants' scorched-earth defense." *Id.* at PageID.6583.

Defendants contend that "Plaintiff's ability to cure a lack of standing by amending his complaint is doubtful." ECF No. 241 at PageID.6446. But they do not cite any binding authority in support. *Id.* Nor do they address the prior case in which this Court allowed a class representative to add named plaintiffs to cure defects in standing. *See Bromley v. Mich. Educ. Ass'n–NEA*, 178 F.R.D. 148, 159 (E.D. Mich. 1998).

Although this Court will not speculate as to whether Plaintiff may amend his complaint at this juncture, Defendants' assumption that he *may not* is at least equally "doubtful." ECF No. 241 at PageID.6446.

For these reasons, the second factor weighs against a stay.

**c.**

The third factor is "the prospect that others will be harmed if the court grants the stay." *Griepentrog*, 945 F.2d at 153.

Defendants argue that the only possible harm of another stay would be further delay, which is typically insufficient to support denying a stay. ECF No. 241 at PageID.6446–47. But another stay would also mean another indefinite period without class notice, which, as explained in the prior order, could end poorly for many unsuspecting class members. *See Fox v. Cnty. of Saginaw ex rel. Bd. of Comm'rs*, No. 1:19-CV-11887, 2022 WL 944284, at *7 (E.D. Mich. Mar. 29, 2022) (noting that many class members are likely unaware of either this case or PA 256).

Defendants also argue that because this Court decided to abstain from resolving PA 256's constitutionality until the conclusion of the parallel state-court proceedings, some level of delay is inevitable. ECF No. 241 at PageID.6448.

Delaying the case for one reason, however, does not justify delaying it for every reason. This Court decided to abstain from resolving PA 256's constitutionality for strong prudential reasons. *Fox*, 2022 WL 944284, at *3–5. This abstention might last through summary judgment if the parallel state-court proceedings have not concluded, and if Defendants formally raise PA 256 as a defense. *Id.* at *5. Yet summary judgment motions are still months away, and Defendants have not yet raised PA 256 as a defense. And if one delay does not necessarily justify another, then a hypothetical delay should not justify an actual delay.

For these reasons, the third factor weighs against a stay.

**d.**

The fourth and final factor is "the public interest in granting the stay." *Griepentrog*, 945 F.2d at 153.

Defendants acknowledge that class members have a strong interest in having their constitutional rights vindicated. *See* ECF No. 241 at PageID.6449; *see also Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010) ("[I]t is always in the public interest to prevent violation of a party's constitutional rights." (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998))). In Defendants' view, that interest is consistent with a stay, because a stay would allow the Sixth Circuit to reach the proper resolution of the case. *Id.*; *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 6 (D.D.C. 2002) ("[T]he public interest really is rooted in the *proper* resolution of the important issues raised in this case . . . .").

Yet the Sixth Circuit has not been asked to reach the merits of the case; it has been asked to address a certification issue, which does not seem dispositive. In other words, it is unclear whether a stay is necessary to facilitate the "proper" resolution of the case. *In re Lorazepam*, 208 F.R.D at 6.

Still, because Defendants are county governments, their interest in avoiding unnecessary litigation is part of the public interest. *See Malam v. Adducci*, 452 F. Supp. 3d 643, 661–62 (E.D. Mich. 2020) ("[T]he government's interest is the public interest." (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016))).

Given the competing public interests, the fourth factor is neutral.

### e.

Because the factors score 3–0–1, Defendant's request for a stay will be denied. *See Griepentrog*, 945 F.2d at 153 (noting that the four factors are "not prerequisites that must be met, but are interrelated considerations that must be balanced together").

### iii.

Given that another stay is inappropriate, the current stay must be lifted in its entirety. For the past 13 months, this case has been stayed so that Defendants could preserve their assertion of immunity on appeal. *See Fox v. Cnty. of Saginaw ex rel. Bd. of Comm'rs*, No. 19-CV-11887, 2021 WL 872089, at *6 (E.D. Mich. Mar. 9, 2021). Recently, the Sixth Circuit affirmed this Court's denial of sovereign immunity, denied Defendants' petition for a rehearing, and issued the mandate. *See Fox v. Saginaw Cnty. ex rel. Bd. of Comm'rs*, No. 21-1108, 2022 WL 523023, at *5 (6th Cir. Feb. 22, 2022); *Fox v. Saginaw Cnty. ex rel. Bd. of Comm'rs*, No. 21-1108 (6th Cir. Apr. 4, 2022), ECF No. 64; *Fox*, No. 21-1108 (6th Cir. Apr. 13, 2022), ECF No. 65.

Accordingly, the stay will be lifted, and a scheduling order will be issued.

### B.

The final issue is whether Defendants and their nonparty foreclosure contractor, Title Check, LLC, should be compelled provide certain discovery.

The same day that the stay was partially lifted, Plaintiff served discovery requests on Defendants and Title Check, LLC, seeking the name, last known address, and 18 other categories of information related to "all foreclosures from 2008 to present." ECF No. 243-2 at PageID.6476; ECF No. 243-3 at PageID.6485.

Ten days later, Plaintiff filed an emergency motion to compel Defendants and Title Check to respond to his requests by April 12, 2022—within four days of his motion.[3] ECF No. 243 at PageID.6466. He reasoned that their response deadlines (April 15, 2022 for Title Check and April 28, 2022 for Defendants) "le[ft] precious little time for service of the [class] notice." *Id.* at

---

[3] Despite being named an "emergency motion to expedite production," Plaintiff's motion is properly construed as a motion to compel, given that it seeks to compel discovery. *See Id.* at PageID.6470.

PageID.6466. He also noted that, because Defendants had recently filed a motion for reconsideration, they were unlikely to comply with the request. *Id.*

Plaintiff's concern was partially vindicated on April 15, 2022, when Title Check, which is represented by the same counsel as Defendants, served him with objections. ECF No. 255-1. Title Check argues that Plaintiff's request imposes an undue burden, seeks information beyond the scope of discovery, and does not allow a reasonable time for compliance. *Id.* at PageID.6555–57.

Similarly, Defendants have filed a response brief arguing that Plaintiff's requests are overbroad and unduly burdensome. ECF No. 244 at PageID.6509. They note that "[o]f the twenty categories of information demanded, only two—name of former owner and last known address of former owner—are actually allowed by the Court's order." *Id.*

To successfully compel discovery, the moving party must establish that the information at issue falls within the scope of discovery. *See O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015). The scope of discovery is governed by Federal Rule of Civil Procedure 26(b), which provides:

> **(b) Discovery Scope and Limits.**
> **(1) Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

Accordingly, parties may only compel the production of information that is both (1) "relevant to any party's claim or defense" and (2) "proportional to the needs of the case." *Id.* "It is well established that the scope of discovery is within the sound discretion of the trial court."

*Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).

Here, it is undisputed that the information Plaintiff seeks is relevant. The only question is whether that information is proportional to the needs of the case.

Defendants and Title Check contend that Plaintiff's requests are unduly broad because they seek more information than what was allowed in this Court's prior order. *See* ECF Nos. 244 at PageID.6509; 255-1 at PageID.6555–56. They also note that Plaintiff seeks information going back to 2008, long before this case was filed. *Id.*

To the extent that Defendants and Title Check seek to limit Plaintiff's requests to the scope of the previously authorized discovery, their argument is likely to be moot soon. After the stay is lifted, a scheduling order will be issued, allowing for fulsome discovery.

Even so, Defendants and Title Check raise an important point regarding the range of documents requested. In his reply brief, Plaintiff argues that some of the class claims might have arisen in 2008, given that inverse-condemnation claims have a six-year statute of limitations, and that a similar class action was filed in 2014 (*Wayside Church v. Van Buren County*, No. 14-cv-1274 (W.D. Mich 2014)). *See* ECF No. 253 at PageID.6534. But that argument assumes that the filing of *Wayside Church* tolled the statute of limitations in *this* case. Plaintiff does not cite any binding authority in support,[4] and this Court is reluctant to decide the issue on an expedited basis.

Moreover, Plaintiff's "emergency" concerns only a relatively small subset of absent class members: those whose property was sold in 2021 and who, therefore, might be affected by PA

---

[4] In *American Pipe & Construction Co. v. Utah*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). *American Pipe* did not, however, involve the question presented here: whether the filing of one class action tolls the statute of limitations in *another* class action.

256's May 15, 2022 deadline. Most class members, whose property was sold before PA 256's enactment, have no stake in the May 15 deadline.

Given the lingering proportionality concerns, and the relatively limited scope of Plaintiff's emergency, Plaintiff's motion will be granted only as to the information regarding foreclosure sales that occurred in 2021.[5] That information is reasonably necessary to effect class notice, and Defendants have not provided any reason to believe that producing such information would impose undue burden or expense. To the extent that Plaintiff, Defendants, and Title Check cannot resolve the remaining objections on their own, Plaintiff may file a renewed motion to compel.

Because Plaintiff's motion will only be granted in part, class notice will be sequenced so that class members who might be affected by PA 256's impending deadline will be the first to receive notice. To that end, Plaintiff will be directed (1) to submit a revised class notice and (2) to file supplemental briefing identifying (a) his proposed method of notice and (2) his claims administrator. After Plaintiff has filed these materials—assuming that such materials are satisfactory—this Court will enter an order approving the notice and directing Plaintiff to serve notice on the limited group of class members outlined above.

Unfortunately, due to the delay already incurred, class notice might arrive closer to the May 15 cutoff date than originally intended. This Court will take every reasonable measure to expedite the process—but it cannot move mountains. Nor can it fix every emergency that might arise, regardless of who is at fault. *Compare* ECF No. 244 at PageID.6510 ("The hurry-up

---

[5] Title Check need not produce any information that can be produced by Defendants. *See* FED. R. CIV. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."); *In re CareSource Mgmt. Grp.*, 289 F.R.D. 251, 254 (S.D. Ohio 2013) (declining to enforce nonparty subpoena because requesting party had not shown that it could not obtain requested information from party opponent). Title Check and Defendants should have little difficulty coordinating their production; they are represented by the same counsel.

approach adopted by Plaintiff, purportedly as a result of his decision to ignore the deadlines imposed by PA 256 for more than a year, should be rejected by the Court."), *with* ECF No. 256 at PageID.6570 ("Defendants want to *further* stay the case to *further* keep their victims in the dark. In particular, they want to conceal the very existence of Public Act 256 and lay the groundwork to argue that its Rube Goldberg-style thicket of deadlines make recovery for all but a handful of victims impossible."). This Court can, however, sanction parties who disobey a court order and will do so if necessary to protect the integrity of these proceedings. *See, e.g.*, *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011); *see* FED. R. CIV. P. 37(c).

### III.

Accordingly, it is **ORDERED** that Defendant's Motion for Reconsideration, ECF No. 241, is **DENIED**.

Further, it is **ORDERED** that Plaintiff's Motion to Expedite, EF No. 243, is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion is **GRANTED** as to the request to compel discovery relative to foreclosures conducted in 2021. Plaintiff's Motion is **DENIED WITHOUT PREJUDICE** in all other respects.

Further, it is **ORDERED** that Defendants and Non-Party Title Check, LLC are **DIRECTED** to respond to Plaintiff's discovery requests, insofar as such requests seek information regarding foreclosures conducted in 2021, **on or before April 28, 2022.**

Further, it is **ORDERED** that Plaintiff is **DIRECTED** to submit a revised class notice and to file supplemental briefing identifying (1) his proposed notice method and (2) his claims administrator, **on or before April 25, 2022**.

Further, it is **ORDERED** that the stay is **LIFTED**.

Further, it is **ORDERED** that the parties are **DIRECTED** to appear for an in-person scheduling conference on **May 10, 2022 at 10:00 AM**. Except to the extent already authorized, the parties may not conduct additional discovery until a scheduling order is issued.

Dated: April 22, 2022                               s/Thomas L. Ludington
                                                    THOMAS L. LUDINGTON
                                                    United States District Judge