UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS A. FOX, on behalf of himself
and all others similarly situated,

        Plaintiff,

v.

COUNTY OF SAGINAW, by its BOARD OF
COMMISSIONERS, *et al.*,

        Defendants.
_____/

Case No. 1:19-cv-11887

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER DENYING PLAINTIFF'S EMERGENCY
MOTION TO COMPEL**

This is a class action brought under 42 U.S.C. § 1983. Recently, Plaintiff filed an emergency motion to compel discovery and to hold Defendants in contempt for disobeying a prior discovery order. ECF No. 269. For the reasons stated below, Plaintiff's motion will be denied.

**I.**

For decades, Michigan's General Property Tax Act (GPTA) allowed a "foreclosing governmental unit"—typically, the local county—to sell tax-delinquent property at auction and retain any surplus proceeds. *See* MICH. COMP. LAWS § 211.78m (amended 2020). In Plaintiff's case and many others, this practice resulted in a windfall for the government. *See* ECF No. 1 at PageID.4–5 (claiming that Defendant Gratiot County retained $21,908.77 in surplus proceeds from selling Plaintiff's property). In June 2019, Plaintiff brought this action under 42 U.S.C. § 1983 to declare the practice unconstitutional and to recover the surplus proceeds from 26 counties. *Id.*

Shortly after class certification, Defendants filed motions to dismiss based on sovereign immunity. *See, e.g.*, ECF No. 120 at PageID.2108 (claiming that "Defendants did only what State

law required of them, and . . . [therefore] act[ed] as an arm of the State" (internal quotations omitted)). Those motions were denied in relevant part, and Defendants appealed. To preserve their asserted immunity on appeal, the case was stayed. *Fox v. Cnty. of Saginaw ex rel. Bd. of Comm'rs*, No. 19-CV-11887, 2021 WL 872089, at *1 (E.D. Mich. Mar. 9, 2021).

A few months before the case was stayed, Michigan enacted Public Act No. 256 ("PA 256"), amending the GPTA and establishing a purportedly exclusive process for compensating former property owners. *See* MICH. COMP. LAWS § 211.78t(11). Although some have used PA 256 to their advantage, *see* Asset Recovery's Show-Cause Br., ECF No. 184 at PageID.4895 (noting that one claimant recovered $110,308.30), not all have been pleased with the new system. Since its enactment, Plaintiff and others have criticized PA 256 as offering an unfair and inadequate recovery, focusing on its two-year statute of limitations and nonretroactivity provision. *See* Pl.'s Emergency Mot., ECF No. 228 at PageID.6146. Some have even challenged the statute's legality under Michigan law. *See Hathon v. State*, No. 356501 (Mich. Ct. App. filed Mar. 8, 2021).

In February 2022, the Sixth Circuit affirmed this Court's decision denying sovereign immunity to Defendants. *Fox v. Saginaw Cnty. ex rel. Bd. of Comm'rs*, No. 21-1108, 2022 WL 523023, at *1 (6th Cir. Feb. 22, 2022). Two months later—and more than a year after class certification was granted—the stay was finally lifted. *Fox v. Cnty. of Saginaw ex rel. Bd. of Comm'rs*, No. 1:19-CV-11887, 2022 WL 1198203, at *1 (E.D. Mich. Apr. 22, 2022).

Due to an impending deadline under PA 256, class notice was sequenced so that the 2021 claimants would receive notice first. *Id.* at *9. To that end, Defendants and their foreclosure contractor, Title Check, were directed to respond to certain discovery requests that Plaintiff had issued to help prepare the class notice. *Id.* at *10 (directing Defendants and Title Check "to respond

to Plaintiff's discovery requests, insofar as such requests seek information regarding foreclosures conducted in 2021").

One week later, Plaintiff filed an emergency motion to compel discovery in a "usable format" and to hold Defendants and Title Check in contempt. ECF No. 269. He claims that Defendants and Title Check, in order to "frustrate the Court-ordered notice process," have produced "insufficient" discovery, including documents "commingled with all sorts of extra, unusable data." *Id.* at PageID.6871–72.

Defendants and Title Check deny these allegations and maintain that their productions were consistent with this Plaintiff's discovery requests and this Court's order. *See, e.g.*, ECF No. 281 at PageID.7193–94. They also claim that Plaintiff disregarded his obligations to confer in good faith under the Federal Rules of Civil Procedure and the Local Rules before filing his motion. *Id.* at PageID.7194 (noting that "Plaintiff sent one lone email 54 minutes before filing its Motion to Compel").

Having reviewed the parties' briefing, this Court finds that a hearing is unnecessary and will proceed to address Plaintiff's motion on the papers. *See* E.D. Mich. LR 7.1(f)(2).

**II.**

Under Federal Rule of Civil Procedure 37, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B). A party that fails to comply with a discovery order may be sanctioned up to and including being held in contempt. FED. R. CIV. P. 37(b)(2)(A). Similarly, a court may hold a nonparty served with a subpoena in contempt if the nonparty "fails without adequate excuse to obey the subpoena or an order related to it." FED. R. CIV. P. 45(g).

To prepare the class notice, Plaintiff requested that Defendants and Title Check produce "[a] complete copy of tax foreclosure, former ownership, and other data in Microsoft Excel or database format." ECF No. 269-2 at PageID.6884. That production had to include, "[a]t minimum," 20 separate data fields, including "address," "name of former owner(s)," and "last known address of former owner(s)." *Id.*

Plaintiff claims that Defendants and Title Check have attempted to thwart this Court's discovery order by producing "insufficient" data. ECF No. 269 at PageID.6871. But it is patently unclear how Defendants and Title Check's production was "insufficient" or why it merits a sanction as drastic as contempt. *Id.*

In his Motion, Plaintiff makes vague references to "unusable" "scanned paper" and spreadsheets "commingled with all sorts of extra, unusable data." *Id.* at PageID.6872, 74. His primary complaint seems to be that the data that Defendants and Title Check produced does not distinguish between the titleholders of the properties—the class members that Plaintiff seeks to notify—and the other lienholders. *Id.* at PageID.6872 (claiming that the production "commingles the title owner Class Members with other 'interest holders' for each property"). He insinuates that Title Check is wrongfully withholding a database of titleholder information kept in "easily-managed comma delimited format."[1] *Id.* at PageID.6871–72.

But based on this Court's review of the record, Plaintiff's accusations are unfounded.

Consider, for example, Alcona County's production. Alcona County, indirectly through Title Check, produced two spreadsheets providing substantially all the information that Plaintiff

---

[1] Plaintiff does not explain what he means by "comma delimited format," but the term generally refers to an electronic format in which individual data fields can be easily transferred to other applications. Notably, Plaintiff did not use the term in his discovery requests.

requested.[2] *See* ECF Nos. 273-3; 273-4. The spreadsheets also seem to have been produced in "comma delimited format," given that they were produced in .csv format—the "csv" standing for "comma-separated values." ECF No. 273 at PageID.6951.

All the Defendants that use Title Check seem to have produced similar spreadsheets. *See, e.g.*, ECF Nos. 277-1 (providing spreadsheets for various Defendants); 279 at PageID.7089–90 (listing the counties for which Title Check provided information). And the Defendants that do not use Title Check seem to have produced the same information in other ways.

Washtenaw County, for example, produced copies of foreclosure judgments and a spreadsheet of the properties on which it foreclosed in 2021.[3] *See* ECF No. 281-3. And Macomb County, whose response is cited in Plaintiff's motion, *see* ECF No. 269-7, did not conduct any tax foreclosure sales in 2021, *see* ECF No. 278 at PageID.7078.

Plaintiff's apparent belief that Title Check maintains all relevant titleholder information in a single database lacks evidentiary support. Indeed, Title Check denies that it keeps any "database or other designation that can definitely differentiate between fee owners and other interest holders." *See* ECF No. 279 at PageID.7099.

In short, it is unclear how Defendant and Title Check disregarded their discovery obligations or, even if they did, how Plaintiff would propose to rectify the problem. *See* ECF No.

---

[2] As a general matter, the Federal Rules of Civil Procedure do not require a party to create a document for purposes of discovery. *See Dearborn Tree Serv., Inc. v. Gray's Outdoorservices, LLC*, No. 13-CV-12584, 2014 WL 6886407, at *4 (E.D. Mich. Dec. 4, 2014) ("A request to produce cannot ask the responding party to create documents, such as lists; Rule 34 'can be used only to require the production of things in existence.'"). Even so, Defendants and Title Check appear to have created these spreadsheets to ensure that they provided responsive information. *See* ECF No. 279 at PageID.7096 (noting that Title Check went "well beyond" its obligations under the Federal Rules).

[3] Plaintiff notes that Washtenaw County did not produce any "owner data," but the County explains that in 2021, it foreclosed only on vacant or unoccupied properties, so the information it provided to Plaintiff was the information it had. *See* ECF No. 281 at PageID.7899.

269 at PageID.6876 (requesting an order compelling Defendants and Title Check to produce the data "in the usable form available to Title Check"). This Court is mindful that the nature of the data seems to have made service of class notice more difficult than Plaintiff or his claims administrator anticipated. *See id.* at PageID.6874 (noting that "Plaintiff is hard at work discerning Class Member contact information . . . , with multiple attorneys working full time, and through the weekend"). But, as explained above, there is no evidence that this difficulty can be avoided with a simple order to compel.[4] And, as noted in the prior order, this Court "cannot move mountains"—including mountains of imperfect or unsatisfying data. *See Fox v. Cnty. of Saginaw ex rel. Bd. of Comm'rs*, No. 1:19-CV-11887, 2022 WL 1198203, at *9 (E.D. Mich. Apr. 22, 2022).

For these reasons, Plaintiff's emergency motion to compel discovery and hold Defendants and Title Check in contempt will be denied.[5] Plaintiff should continue to prepare and serve as many class notices as possible.

### III.

Accordingly, it is **ORDERED** that Plaintiff's Emergency Motion to Compel, ECF No. 269, is **DENIED**.

Dated: April 14, 2022                                s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

---

[4] To the extent that Plaintiff seeks an order requiring Defendants or Title Check to perform some additional data analysis, this Court agrees with Alcona County that Defendants are under no obligation to "do [Plaintiff's] job for him." ECF No. 273 at PageID.6957; *see also* ECF No. 279 at PageID.7100 (noting that Plaintiff has not cited "any caselaw that would require Title Check to conduct additional title research and engage in the arduous task of differentiating between fee owners and other interest holders on Plaintiff's behalf").

[5] Defendants' argument that Plaintiff's motion should be denied for failure to confer in good faith is duly noted but need not be decided for purposes of this Opinion. To the extent that Defendants seek to litigate Plaintiff's compliance with the Federal Rules of Civil Procedure, they may raise the issue by motion after the scheduling conference on May 10, 2022.