# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

THOMAS A. FOX; ~~and~~ ROBERT A.
MACKENZIE, Chapter 7 Trustee for HOME
OPPORTUNITY, LLC; NANCY LAMBERT;
KYLE ROWEKAMP; BRIAN SCHERZER;
FELIX ESCARENO; ANNA PENCE, as
beneficiary and on behalf of the estate of TROY
PENCE, deceased; Estate of AMY CANTOR by
its Personal Representative JEFFREY CANTOR;
MICHEAL BLASZCZAK; KENNETH G.
MCNEIL; DONNA SINCLAIR; GLORIA DOTY;
CYNTHIA M. ZAK; COLBY SMITH; ALBERT
MOORE JR.; LISA DUFORE; EUGENE
CAUSLEY SR.; MITCHELL D. JAMES;
HAROLD F. RENO JR.; NICOLE VEDRODE;
SHALENE POPE f/k/a SHALENE SWIFT;
LAWRENCE EDWARDS; BRENDA
EDWARDS; BANDACAR, INC.; and GINA
LOVE for ~~himself~~ themselves and all those
similarly situated

     Plaintiffs,

     v.

COUNTY OF ALCONA by its BOARD OF
COMMISSIONERS; CHERYL FRANKS, in her
individual and official capacity; COUNTY OF
ALPENA by its BOARD OF COMMISSIONERS;
KIMBERLY LUDLOW, in her individual and
official capacity;  COUNTY OF ARENAC by its
BOARD OF COMMISSIONERS; DENNIS
STAWOWY, in his individual and official
capacity; COUNTY OF BAY by its BOARD OF
COMMISSIONERS; WESTON PRINCE, in his
individual and official capacity, SHAWNA
WALRAVEN, in her individual capacity,
RICHARD F. BRZEZINSKI, in his individual
capacity; COUNTY OF CLARE by its BOARD

Case No. 19-cv-11887
Hon. Thomas L. Ludington
Magistrate Patricia T. Morris

**~~FIRST~~[PROPOSED]
SECOND AMENDED
COMPLAINT**

**(JURY DEMANDED)**

**\*\* CLASS ACTION \*\***

1

OF COMMISSIONERS; JENNY BEEMER-
FRITZINGER, in her individual and official
capacity; COUNTY OF CRAWFORD by its
BOARD OF COMMISSIONERS; KATE M.
WAGNER, in her individual and official capacity;
JOSEPH V. WAKELEY, in his individual
capacity; COUNTY OF GENESEE by its BOARD
OF COMMISSIONERS; DEBORAH CHERRY,
in her individual and official capacity; COUNTY
OF GLADWIN by its BOARD OF
COMMISSIONERS; CHRISTY VAN TIEM, in
her individual and official capacity, COUNTY OF
GRATIOT by its BOARD OF
COMMISSIONERS; TERRI R. BALL, in her
individual and official capacity, MICHELLE
THOMAS, in her individual capacity; COUNTY
OF HURON by its BOARD OF
COMMISSIONERS; DEBRA MCCOLLUM, in
her individual and official capacity; COUNTY OF
ISABELLA by its BOARD OF
COMMISSIONERS; STEVEN W. PICKENS, in
his individual and official capacity;
COUNTY OF JACKSON by its BOARD OF
COMMISSIONERS; and KAREN COFFMAN, in
her individual and official capacity, COUNTY OF
LAPEER by its BOARD OF COMMISSIONERS;
DANA M. MILLER, in her individual and official
capacity; COUNTY OF LENAWEE, by its
BOARD OF COMMISSIONERS, ERIN VAN
DYKE, in her individual and official capacity,
MARILYN J. WOODS, in her individual
capacity;, COUNTY OF MACOMB, by its
BOARD OF COMMISSIONERS; LAWRENCE
ROCCA, in his individual and official capacity;
COUNTY OF MIDLAND by its BOARD OF
COMMISSIONERS; CATHY LUNSFORD, in her
individual and official capacity; COUNTY OF
MONTMORENCY by its BOARD OF
COMMISSIONERS; CHERI EGGETT, in her
individual and official capacity, JEAN M. KLEIN,

2

in her individual capacity; COUNTY OF
OGEMAW by its BOARD OF
COMMISSIONERS; CAREN PIGLOWSKI, in
her individual and official capacity, DWIGHT
MCINTYRE, in his individual capacity; COUNTY
OF OSCODA by its BOARD OF
COMMISSIONERS; WILLIAM KENDALL, in
his individual and official capacity; ~~COUNTY OF
OTSEGO by its BOARD OF COMMISSIONERS;
DIANN AXFORD, in her individual and official
capacity;~~ COUNTY OF PRESQUE ISLE by its
BOARD OF COMMISSIONERS; BRIDGET
LALONDE, in her individual and official capacity;
COUNTY OF ROSCOMMON by its BOARD OF
COMMISSIONERS; REBECCA RAGAN, in her
individual and official capacity; COUNTY OF
SAGINAW by its BOARD OF
COMMISSIONERS; TIMOTHY M. NOVAK, in
his individual and official capacity; COUNTY OF
SANILAC by its BOARD OF
COMMISSIONERS; TRUDY M. BOWERS f/k/a
TRUDY NICOL, in her individual and official
capacity; COUNTY OF ST CLAIR by its BOARD
OF COMMISSIONERS; KELLY ROBERTS-
BURNETT, in her individual and official capacity;
COUNTY OF TUSCOLA by its BOARD OF
COMMISSIONERS; ASHLEY BENNETT, in her
individual and official capacity, PATRICIA
DONOVAN-GRAY, in her individual capacity;
COUNTY OF WASHTENAW, by its BOARD OF
COMMISSIONERS, CATHERINE MCCLARY,
in her individual and official capacity, SHAWNA
S. WALRAVEN, in her individual capacity;

     Defendants

_____ /

## ~~FIRST~~SECOND AMENDED COMPLAINT

3

~~Plaintiff~~Plaintiffs   T~~homas~~HOMAS   A.   F~~ox~~OX,   ~~and   Robert~~OBERT   A. Mackenzie,~~MACKENZIE,~~ Chapter 7 Trustee for Home Opportunity, LLC; Nancy Lambert; Kyle Rowekamp; Brian Scherzer; Felix Escareno; Estate of Troy Pence c/o Anna Pence; Estate of Amy Cantor c/o Jeffrey Cantor; Michael Blaszczak; Kenneth G. McNeil; Donna Sinclair; Gloria Doty; Cynthia M. Zak; Colby Smith; Albert Moore Jr.; Lisa Dufore; Eugene Causley Sr.; Mitchell D. James; Harold F. Reno Jr.; Nicole Vedrode; Shalene Pope f/k/a Shalene Swift; Lawrence Edwards; Brenda Edwards; Bandacar, Inc.; and Gina Love both individually and on behalf of a class of similarly situated individuals and entities, by and through counsel, for ~~his~~their Complaint ~~states~~state as follows:

## INTRODUCTION

1.      This is a case of gross governmental abuse that cries out for a remedy. Counties throughout this District have illegally seized property in the form of excess/surplus equity from private citizens without any compensation at all.

2.      The abuse stems from the Defendant Counties' tax foreclosure process. Michigan law generally authorizes counties to foreclose on parcels in order to satisfy outstanding unpaid property taxes. But the Defendant Counties and their officials abuse this process. They do not foreclose on the parcel; sell it; keep the amount of the outstanding taxes plus reasonable fees; and return the rest to the property owner. Rather, they foreclose; sell the property at a reduced amount; and keep *all* of the

4

proceeds and excess/surplus equity for themselves. As a result, property owners lose the entire value of their property, which is often orders of magnitude more than the outstanding tax bills.

3.     As set forth below, this constitutes a violation of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution; a violation of Article X Section 2 of the Michigan Constitution; and an impermissible inverse condemnation under Michigan law.

**PARTIES**

4.     Plaintiff Thomas A. Fox is a resident of Gratiot County who owned property in Gratiot County.

5.     Plaintiff Robert A. Mackenzie is the Trustee of the Bankruptcy Estate of Home Opportunity, LLC ("Home Opportunity") in Case No. 2:21-bk-04924 in the United States Bankruptcy Court for the District of Arizona. Home Opportunity was in the business of buying residential properties and owned property in Alcona, Midland, and Ogemaw and suffered foreclosures and equity seizures in these counties.

6.     Plaintiff Nancy Lambert is a resident of Alpena County who owned property in Alpena County.

7.     Plaintiff Kyle Rowekamp is a resident of Arenac County who owned property in Arenac County.

8. Plaintiff Brian Scherzer is a resident of Bay County who owned property in Bay County.

9. Plaintiff Felix Escareno is a resident of Clare County who owned property in Clare County.

10. Plaintiff Anna Pence, as beneficiary and on behalf of the estate of Troy Pence, deceased, who was a resident of Crawford County who owned property in Crawford County.

11. Plaintiff Estate of Amy Cantor, by its Personal Representative Jeffrey Cantor, is the estate of the late Amy Cantor, who was a resident of Genesee County who owned property in Genesee County.

12. Plaintiff Michael Blaszczak is a resident of Gladwin County who owned property in Gladwin County.

13. Plaintiff Kenneth G. McNeil is a resident of Huron County who owned property in Huron County.

14. Plaintiff Donna Sinclair is a resident of Isabella County who owned property in Isabella County.

15. Plaintiff Gloria Doty is a resident of Jackson County who owned property in Jackson County.

16. Plaintiff Cynthia M. Zak is a resident of Lapeer County who owned property in Lapeer County.

17.     Plaintiff Colby Smith is a resident of Lenawee County who owned property in Lenawee County.

18.     Plaintiff Albert Moore Jr. is a resident of Macomb County who owned property in Macomb County.

19.     Plaintiff Lisa Dufore is a resident of Montmorency County who owned property in Montmorency County.

20.     Plaintiff Eugene Causley Sr. is a resident of Oscoda County who owned property in Oscoda County.

21.     Plaintiff Mitchell D. James is a resident of Presque Isle County who owned property in Presque Isle County.

22.     Plaintiff Harold F. Reno Jr. is a resident of Roscommon County who owned property in Roscommon County.

23.     Plaintiff Nicole Vedrode is a resident of Saginaw County who owned property in Saginaw County.

24.     Plaintiff Shalene Pope, f/k/a Shalene Swift, is a resident of Sanilac County who owned property in Sanilac County.

25.     Plaintiffs Lawrence & Brenda Edwards are residents of St. Clair County who owned property in St. Clair County.

26.     Plaintiff Bandacar, Inc. which owned property in Tuscola County.

27.   Plaintiff Gina Love is a resident of Washtenaw County who owned property in Washtenaw County.

5.28.  Defendants Counties of Alcona, Alpena, Arenac, Bay, Clare, Crawford, Genesee, Gladwin, Gratiot, Huron, Isabella, Jackson, Lapeer, Lenawee, Macomb, Midland, Montmorency, Ogemaw, Oscoda, ~~Otsego,~~ Presque Isle, Roscommon, Saginaw, Sanilac, St. Clair, Tuscola, and Washtenaw are named as legal entities formed and/or existing under the laws of the State of Michigan and are controlled or operated by duly-designated Boards of Commissioners.

6.29.  The individually-listed Defendants are or were public officials serving as county treasurers for their respective county and are sued in their personal, individual capacities.

7.30.  The individually-listed Defendants, except Defendants Joseph V. Wakeley, ~~and~~ Richard F. Brzezinski, Michelle Thomas, Marilyn Woods, Jean M. Klein, Dwight McIntyre, Patricia Donovan-Gray, and Shawna S. Walraven are current, office-holding public officials serving as county treasurers for their respective county and are also sued in their official capacities.

31.   Each county and/or treasurer is a Foreclosing Governmental Unit by the affirmative, voluntary, and discretionary decision of each respective county as its own county policy pursuant to MCL §211.78.

8.32.   Plaintiffs acknowledge that the Court has dismissed the previous claims against the individual defendants. (ECF No. 148). They respect this decision, but make claims against them here in order to preserve appellate rights, and because, since the time of the Court's dismissal of such claims, counties represented by defense counsel in this case have argued that claims against the counties must be dismissed because their treasurers are the only viable defendants with respect to analogous claims. *See Fingal et al v. Ontonagon County et* al, Case No. 2:23-cv-00061 (W.D. Mich, filed March 31, 2023)(ECF No. 27, PageID.856).

## JURISDICTION

9.33.   This is a civil action brought seeking unpaid "just compensation" and other monetary damages against Defendants for violations of the Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

10.34.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343, which authorizes federal courts to hear civil rights cases; 28 U.S.C. § 2201, which authorizes declaratory judgments via the Declaratory Judgment Act; and 28 U.S.C. § 1367, which authorizes supplemental state law claims.

11.35.   Venue is proper in this Court as Defendants, individually and collectively, conduct or have conducted their business in the Eastern District of

9

Michigan. Indeed, the Counties are not only situated within the District, but the Court's organization is defined in terms of the Counties. 28 U.S.C. § 102.

## GENERAL ALLEGATIONS

### I.    Michigan's Tax Foreclosure Process

~~12.~~36.Like many states, Michigan provides for the taxation of real property in order to finance local governments such as counties, municipalities, and school districts and the collection of delinquent taxes.

~~13.    However, this case involves what happens *after* the taxation process is completed and excess or surplus equity remains after each county is paid in full for all delinquent taxes, interest, penalties, and fees. *See Coleman v. District of Columbia*, 70 F. Supp. 3d 58 (2014).~~

~~14.~~37.The Defendants administer a foreclosure-and-auction process generally, so that after they sell a parcel at auction (often times for less than its fair market value), they retain the *entire* amount of the proceeds. Furthermore, even if the sale proceeds exceed the amount of the delinquent taxes – indeed, even if the proceeds far exceed the tax bill – they do not return any of the excess to the property's former owner or provide compensation for that portion of the Equity destroyed by underselling the parcel.

~~15.~~38.As used in this Complaint, "Tax Delinquency" means the past due tax owed on a property plus additional compounding interest, fees, penalties, and costs; "Equity" means the amount by which a property's value exceeds its Tax Delinquency.

## II.   The Foreclosure of the ~~Plaintiff's Property~~<u>Plaintiffs' Properties</u> and Seize of Equity

### A.   <u>Thomas A. Fox – Gratiot County</u>~~Plaintiff Fox~~

~~16.~~<u>39.</u>Plaintiff Thomas A. Fox was the owner~~(s)~~ of 109 South Court Ave, Alma, Michigan (hereinafter the "<u>Gratiot</u>~~Fox~~ Property").

~~17.~~<u>40.</u>The <u>Gratiot</u>~~Fox~~ Property is located within Gratiot County.

~~18.~~<u>41.</u>As of date of the auction sale, the <u>Gratiot</u>~~Fox~~ Property accrued a Tax Delinquency of approximately $3,091.23.

~~19.~~<u>42.</u>On or around February 21, 2017, Defendant Michelle Thomas seized ownership of the <u>Gratiot</u>~~Fox~~ Property on behalf of Gratiot County as its duly elected treasurer.

~~20.~~<u>43.Defendant Michelle Thomas served as Gratiot County's Treasurer from 2014 until 2020 and was succeeded by Defendant Terri R. Ball, the current Gratiot County Treasurer. At all times relevant, these Defendants acted pursuant to a uniform policy, custom, and practice of seizing real property as discussed below.</u>

~~21.~~<u>44.</u>As of th<u>e</u> date <u>of the seizure</u>, the <u>Gratiot</u>~~Fox~~ Property had a State Equalized Value of $25,200.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $50,400.00.

22.45. On behalf of Gratiot County, Defendant Michelle Thomas sold the GratiotFox Property at a tax auction and conveyed the Property on or about August 16, 2017, for $25,500.00.

23.46. Thus, the difference between what Plaintiff Thomas A. Fox owed as a Tax Delinquency and what the County received was $22,408.77. The difference between what Plaintiff Thomas A. Fox owed as a Tax Delinquency and the minimum fair market value of the Property was $47,308.77.

24.47. Given that the minimum fair market value of the GratiotFox Property was $50,400.00, and given that the Tax Delinquency was $3,091.23, Plaintiff Thomas A. Fox had at least $47,308.77 in Equity in the GratiotFox Property.

25.48. Even taking the most conservative approach, and assuming *arguendo* that Equity werewas defined as the difference between the auction price and the outstanding Delinquent Tax, Plaintiff had at least $22,408.77 in Equity in the GratiotFox Property.

26.49. The County of Gratiot and Defendant Michelle Thomas seized this Equity from Plaintiff by foreclosing the GratiotFox Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Plaintiff.

27.50. Neither the County of Gratiot, Defendant Ball, nor Defendant Michelle Thomas afforded Plaintiff any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

28.51. Thus, the County of Gratiot, Defendant Ball, and Defendant Michelle Thomas took or destroyed all of Plaintiff's Equity in the GratiotFox Property.

29.52. Defendants Michelle Thomas, Ball, and the County of Gratiot refused and refuse to pay just compensation for Plaintiff's Equity in the GratiotFox Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

30.53. Neither the County of Gratiot nor Defendant Michelle Thomas initiated any condemnation action or process for the Plaintiff's Equity in the GratiotFox Property.

31.54. In addition to the GratiotFox Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Gratiot County from Plaintiff Thomas A. Fox and others.

32.55. Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**B.     Home Opportunity – Alcona County**

56.    Home Opportunity was the owner of 329 E. Main Street, Lincoln, Michigan (hereinafter the "Alcona Property").

57.    The Alcona Property is located within Alcona County.

58.    As of date of the auction sale, the Alcona Property accrued a Tax Delinquency of approximately $3,400.00.

59.    On or around 2016, Defendant Cheryl Franks seized ownership of the Alcona Property on behalf of Alcona County as its duly elected treasurer.

60.    As of that date, the Alcona Property had a State Equalized Value of $15,900.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $31,800.00.

61.    On behalf of Alcona County, Defendant Cheryl Franks sold the Alcona Property at a tax auction and conveyed the Alcona Property on or about 2016 for $6,700.00.

62.    Thus, the difference between what Home Opportunity owed as a Tax Delinquency and what the County received was $3,300.00. The difference between what Home Opportunity owed as a Tax Delinquency and the minimum fair market value of the Alcona Property was $28,400.00.

63.    Given that the minimum fair market value of the Alcona Property was $31,800.00 and given that the Tax Delinquency was $3,400.00, Home Opportunity had at least $28,400.00 in Equity in the Alcona Property.

64.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Home Opportunity had at least $3,300.00 in Equity in the Alcona Property.

65.   The County of Alcona and Defendant Cheryl Franks seized this Equity from Home Opportunity by foreclosing the Alcona Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Home Opportunity.

66.   Neither the County of Alcona nor Defendant Cheryl Franks afforded Home Opportunity any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

67.   Thus, the County of Alcona and Defendant Cheryl Franks took or destroyed all of Home Opportunity's Equity in the Alcona Property.

68.   Defendant Cheryl Franks and the County of Alcona refused and refuse to pay just compensation for Home Opportunity's (or, later, the Trustee's) Equity in the Alcona Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

69.   Neither the County of Alcona nor Defendant Cheryl Franks initiated any condemnation action or process for Home Opportunity's Equity in the Alcona Property.

70.    In addition to the Alcona Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Alcona County.

71.    Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**C.    Nancy Lamber – Alpena County**

72.    Nancy Lambert was the owner of 6980 Long Rapids Rd. Alpena, Michigan (hereinafter the "Alpena Property").

73.    The Alpena Property is located within Alpena County.

74.    As of date of the auction sale, the Alpena Property accrued a Tax Delinquency of approximately $3,200.00.

75.    On or around 2018, Defendant Kimberly Ludlow seized ownership of the Alpena Property on behalf of Alpena County as its duly elected treasurer.

76.    As of that date, the Alpena Property had a State Equalized Value of $23,100.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $46,200.00.

77.    On behalf of Alpena County, Defendant Kimberly Ludlow sold the Alpena Property at a tax auction and conveyed the Alpena Property on or about 2018 for $14,000.00.

78.   Thus, the difference between what Nancy Lambert owed as a Tax Delinquency and what the County received was $10,800.00. The difference between what Nancy Lambert owed as a Tax Delinquency and the minimum fair market value of the Alpena Property was $43,000.00.

79.   Given that the minimum fair market value of the Alpena Property was $46,200.00, and given that the Tax Delinquency was $3,200.00, Nancy Lambert had at least $43,000.00 in Equity in the Alpena Property.

80.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Nancy Lambert had at least $10,800.00 in Equity in the Alpena Property.

81.   The County of Alpena and Defendant Kimberly Ludlow seized this Equity from Nancy Lambert by foreclosing the Alpena Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Nancy Lambert.

82.   Neither the County of Alpena nor Defendant Kimberly Ludlow afforded Nancy Lambert any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

83.   Thus, the County of Alpena and Defendant Kimberly Ludlow took or destroyed all of Nancy Lambert's Equity in the Alpena Property.

84.     Defendant Kimberly Ludlow and the County of Alpena refused and refuse to pay just compensation for Nancy Lambert's Equity in the Alpena Property. These Defendants also has failed to provide any mechanism at all for any such compensation.

85.     Neither the County of Alpena nor Defendant Kimberly Ludlow initiated any condemnation action or process for Nancy Lambert's Equity in the Alpena Property.

86.     In addition to the Alpena Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Alpena County.

87.     Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**D.     Kyle Rowekamp – Arenac County**

88.     Kyle Rowekamp was the owner of 2329 N. Lentner Rd., Turner, Michigan (hereinafter the "Arenac Property").

89.     The Arenac Property is located within Arenac County.

90.     As of date of the auction sale, the Arenac Property accrued a Tax Delinquency of approximately $5,607.00.

91.     On or around 2021, Defendant Dennis Stawowy seized ownership of the Arenac Property on behalf of Arenac County as its duly elected treasurer.

92.    As of that date, the Arenac Property had a State Equalized Value of $38,600.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $77,200.00.

93.    On behalf of Arenac County, Defendant Dennis Stawowy sold the Arenac Property at a tax auction and conveyed the Arenac Property on or about 2021 for $17,500.00.

94.    Thus, the difference between what Kyle Rowekamp owed as a Tax Delinquency and what the County received was $11,893.00. The difference between what Kyle Rowekamp owed as a Tax Delinquency and the minimum fair market value of the Arenac Property was $71,593.00.

95.    Given that the minimum fair market value of the Arenac Property was $77,200.00, and given that the Tax Delinquency was $5,607.00, Kyle Rowekamp had at least $71,593.00 in Equity in the Arenac Property.

96.    Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Kyle Rowekamp had at least $11,893.00 in Equity in the Arenac Property.

97.    The County of Arenac and Defendant Dennis Stawowy seized this Equity from Kyle Rowekamp by foreclosing the Arenac Property, selling it at

auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Kyle Rowekamp.

98.   Neither the County of Arenac nor did Defendant Dennis Stawowy afforded Kyle Rowekamp any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

99.   Thus, the County of Arenac and Defendant Dennis Stawowy took or destroyed all of Kyle Rowekamp's Equity in the Arenac Property.

100.   Defendant Dennis Stawowy and the County of Arenac refused and refuse to pay just compensation for Kyle Rowekamp's Equity in the Arenac Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

101.   Neither the County of Arenac nor Defendant Dennis Stawowy initiated any condemnation action or process for Kyle Rowekamp's Equity in the Arenac Property.

102.   In addition to the Arenac Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Arenac County.

103.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**E.     Brian Scherzer – Bay County**

104.   Brian Scherzer was the owner of 1804 S. Kiesel, Bay City, Michigan (hereinafter the "Bay Property").

105.   The Bay Property is located within Bay County.

106.   As of date of the auction sale, the Bay Property accrued a Tax Delinquency of approximately $8,800.00.

107.   On or around 2019, Defendant Shawna Walraven seized ownership of the Bay Property on behalf of Bay County as its duly elected treasurer.

108.   Defendant Shawna Walraven served as Bay County's Treasurer from February 2019 until May 2022. Defendant Shawna Walraven's was preceded as Treasurer by Defendant Richard F. Brezinki, who held the position for eight years, and was succeeded by Defendant Weston Prince, the current Bay County Treasurer. At all times relevant, these Defendants acted pursuant to a uniform policy, custom, and practice of seizing real property as discussed below.

109.   As of the date of the seizure, the Bay Property had a State Equalized Value of $20,750.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $41,500.00.

110.   On behalf of Bay County, Defendant Shawna Walraven sold the Bay Property at a tax auction and conveyed the Bay Property on or about 2019 for $25,750.00.

111.   Thus, the difference between what Brian Scherzer owed as a Tax Delinquency and what the County received was $16,950.00. The difference between what Brian Scherzer owed as a Tax Delinquency and the minimum fair market value of the Bay Property was $32,700.00.

112.   Given that the minimum fair market value of the Bay Property was $41,500.00, and given that the Tax Delinquency was $8,800.00, Brian Scherzer had at least $32,700.00 in Equity in the Bay Property.

113.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Brian Scherzer had at least $16,950.00 in Equity in the Bay Property.

114.   The County of Bay and Defendant Shawna Walvaren seized this Equity from Brian Scherzer by foreclosing the Bay Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Brian Scherzer.

115.   Neither the County of Bay, Defendant Prince, nor Defendant Shawna Walraven afforded Brian Scherzer any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

116.   Thus, the County of Bay, Defendant Prince, and Defendant Shawna Walraven took or destroyed all of Brian Scherzer's Equity in the Bay Property.

117.   Defendant Shawna Walraven, Defendant Prince, and the County of Bay refused and refuse to pay just compensation for Brian Scherzer's Equity in the Bay Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

118.   Neither the County of Bay nor did Defendant Shawna Walraven initiated any condemnation action or process for Brian Scherzer's Equity in the Bay Property.

119.   In addition to the Bay Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Bay County.

120.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**F.      Felix Escareno – Clare County**

121.   Felix Escareno was the owner of 10845 Cedar Ln., Gladwin, Michigan (hereinafter the "Clare Property").

122.   The Clare Property is located within Clare County.

123.   As of date of the auction sale, the Clare Property accrued a Tax Delinquency of approximately $3,800.00.

124.   On or around 2019, Defendant Jenny Beemer-Fritzinger seized ownership of the Clare Property on behalf of Clare County as its duly elected treasurer.

125.   As of that date, the Clare Property had a State Equalized Value of $29,300.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $58,600.00.

126.   On behalf of Clare County, Defendant Jenny Beemer-Fritzinger sold the Clare Property at a tax auction and conveyed the Clare Property on or about 2019 for $18,000.00.

127.   Thus, the difference between what Felix Escareno owed as a Tax Delinquency and what the County received was $14,200.00. The difference between what Felix Escareno owed as a Tax Delinquency and the minimum fair market value of the Clare Property was $54,800.00.

128.   Given that the minimum fair market value of the Clare Property was $58,600.00, and given that the Tax Delinquency was $3,800.00, Felix Escareno had at least $54,800.00 in Equity in the Clare Property.

129.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Felix Escareno had at least $14,200.00 in Equity in the Clare Property.

130.   The County of Clare and Defendant Jenny Beemer-Fritzinger seized this Equity from Felix Escareno by foreclosing the Clare Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Felix Escareno.

131.   Neither the County of Clare nor Defendant Jenny Beemer-Fritzinger afforded Felix Escareno any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

132.   Thus, the County of Clare and Defendant Jenny Beemer-Fritzinger took or destroyed all of Felix Escareno's Equity in the Clare Property.

133.   Defendant Jenny Beemer-Fritzinger and the County of Clare refused and refuse to pay just compensation for Felix Escareno's Equity in the Clare Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

134.   Neither the County of Clare nor Defendant Jenny Beemer-Fritzinger initiated any condemnation action or process for Felix Escareno's Equity in the Clare Property.

135.   In addition to the Clare Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Clare County.

136.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**G.     Troy Pence – Crawford County**

137.   Troy Pence was the owner of 3076 Creekview Dr., Grayling Michigan (hereinafter the "Crawford Property").

138.   The Crawford Property is located within Crawford County.

139.   As of date of the auction sale, the Crawford Property accrued a Tax Delinquency of approximately $6,200.00.

140.   On or around 2016, Defendant Joseph V. Wakeley seized ownership of the Crawford Property on behalf of Crawford County as its duly elected treasurer.

141.   Defendant Joseph V. Wakeley served as the Crawford County Treasurer from 1973 until his retirement in 2019. Defendant Joseph V. Wakeley was succeeded as Treasurer by Defendant Kate M. Wagner, the current Crawford County Treasurer. At all times relevant, these Defendants acted pursuant to a uniform policy, custom, and practice of seizing real property as discussed below.

142.   As of the date of the seizure, the Crawford Property had a State Equalized Value of $82,800.00. Because the fair market value of a property is at

least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $165,600.00.

143.   On behalf of Crawford County, Defendant Joseph V. Wakeley sold the Crawford Property at a tax auction and conveyed the Crawford Property on or about 2016 for $89,000.00.

144.   Thus, the difference between what Troy Pence owed as a Tax Delinquency and what the County received was $82,800.00. The difference between what Troy Pence owed as a Tax Delinquency and the minimum fair market value of the Crawford Property was $159,400.00.

145.   Given that the minimum fair market value of the Crawford Property was $165,600.00, and given that the Tax Delinquency was $6,200.00, Troy Pence had at least $159,400.00 in Equity in the Crawford Property.

146.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Crawford had at least $82,800.00 in Equity in the Crawford Property.

147.   The County of Crawford and Defendant Joseph V. Wakeley seized this Equity from Troy Pence by foreclosing the Crawford Property, selling it at auction

for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Troy Pence.

148.   Neither the County of Crawford, Defendant Wagner, nor Defendant Joseph V. Wakeley afforded Troy Pence any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

149.   Thus, the County of Crawford, Defendant Wagner, and Defendant Joseph V. Wakeley took or destroyed all of Troy Pence's Equity in the Crawford Property.

150.   Defendant Joseph V. Wakeley, Defendant Wagner, and the County of Crawford refused and refuse to pay just compensation for Troy Pence's Equity in the Crawford Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

151.   Neither the County of Crawford nor Joseph V. Wakeley initiated any condemnation action or process for Troy Pence's Equity in the Crawford Property.

152.   In addition to the Crawford Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Crawford County.

153.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**H.     Amy Cantor — Genesee Property**

154. Amy Cantor was the owner of 2129 Williamson Ave., Burton, Michigan (hereinafter the "Genesee Property").

155. The Genesee Property is located within Genesee County.

156. As of date of the auction sale, the Genesee Property accrued a Tax Delinquency of approximately $5,400.00.

157. On or around 2019, Defendant Deborah Cherry seized ownership of the Genesee Property on behalf of Genesee County as its duly elected treasurer.

158. As of that date, the Genesee Property had a State Equalized Value of $6,400.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $12,800.00.

159. On behalf of Genesee County, Defendant Deborah Cherry sold the Genesee Property at a tax auction and conveyed the Genesee Property on or about 2019 for $31,750.00.

160. Thus, the difference between what Amy Cantor owed as a Tax Delinquency and what the County received was $27,250.00. The difference between what Amy Cantor owed as a Tax Delinquency and the minimum fair market value of the Genesee Property was $7,400.00.

161.   Given that the minimum fair market value of the Genesee Property was $12,800.00, and given that the Tax Delinquency was $5,400.00, Amy Cantor had at least $7,400.00 in Equity in the Genesee Property.

162.   If Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Amy Cantor had at least $27,250.00 in Equity in the Genesee Property.

163.   The County of Genesee and Defendant Deborah Cherry seized this Equity from Amy Cantor by foreclosing the Genesee Property, selling it at auction for an amount far more than the Tax Delinquency, and failing to return any of the Equity to Amy Cantor.

164.   Neither the County of Genesee nor Defendant Deborah Cherry afforded Amy Cantor any process, plan, or legal mechanism to seek or achieve the return of the Equity it seized.

165.   Thus, the County of Genesee and Defendant Deborah Cherry took or destroyed all of Amy Cantor's Equity in the Genesee Property.

166.   Defendant Deborah Cherry and the County of Genesee refused and refuse to pay just compensation for Amy Cantor's Equity in the Genesee Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

167.   Neither the County of Genesee nor Defendant Deborah Cherry initiated any condemnation action or process for Amy Cantor's Equity in the Genesee Property.

168.   In addition to the Genesee Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Genesee County.

169.   Moreover, the other named Defendants and Counties have carried out this practice in their respective jurisdictions.

**I.     Michael Blaszczak – Gladwin County**

170.   Michael Blaszczak was the owner of Hay Rd., Beaverton, Michigan (hereinafter the "Gladwin Property").

171.   The Gladwin Property is located within Gladwin County.

172.   As of date of the auction sale, the Gladwin Property accrued a Tax Delinquency of approximately $5,700.00.

173.   On or around 2016, Defendant Christy Van Tiem seized ownership of the Gladwin Property on behalf of Gladwin County as its duly elected treasurer.

174.   As of that date, the Gladwin Property had a State Equalized Value of $36,000.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $72,000.00.

175.   On behalf of Gladwin County, Defendant Christy Van Tiem sold the Gladwin Property at a tax auction and conveyed the Gladwin Property on or about 2016 for $37,500.00.

176.   Thus, the difference between what Michael Blaszczak owed as a Tax Delinquency and what the County received was $31,800.00. The difference between what Michael Blaszczak owed as a Tax Delinquency and the minimum fair market value of the Gladwin Property was $66,300.00.

177.   Given that the minimum fair market value of the Gladwin Property was $72,000.00, and given that the Tax Delinquency was $5,700.00, Michael Blaszczak had at least $66,300.00 in Equity in the Gladwin Property.

178.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Michael Blaszczak had at least $31,800.00 in Equity in the Gladwin Property.

179.   The County of Gladwin and Defendant Christy Van Tiem seized this Equity from Michael Blaszczak by foreclosing the Gladwin Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Michael Blaszczak.

180.   Neither the County of Gladwin nor Defendant Christy Van Tiem afforded Michael Blaszczak any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

181.   Thus, the County of Gladwin and Defendant Christy Van Tiem took or destroyed all of Michael Blaszczak's Equity in the Gladwin Property.

182.   Defendant Christy Van Tiem and the County of Gladwin refused and refuse to pay just compensation for Michael Blaszczak's Equity in the Gladwin Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

183.   Neither the County of Gladwin nor Defendant Christy Van Tiem initiated any condemnation action or process for Michael Blaszczak's Equity in the Gladwin Property.

184.   In addition to the Gladwin Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Gladwin County.

185.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**J.     Kenneth G. McNeil – Huron County**

186.   Kenneth G. McNeil was the owner of 2865 N. Van Dyke Rd., Bad Axe, Michigan (hereinafter the "Huron Property").

187.   The Huron Property is located within Huron County.

188.   As of date of the auction sale, the Huron Property accrued a Tax Delinquency of approximately $9,000.00.

189.   On or around 2018, Defendant Debra McCollum seized ownership of the Huron Property on behalf of Huron County as its duly elected treasurer.

190.   As of that date, the Huron Property had a State Equalized Value of $92,000.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $184,000.00.

191.   On behalf of Huron County, Defendant Debra McCollum sold the Huron Property at a tax auction and conveyed the Huron Property on or about 2018 for $39,000.00.

192.   Thus, the difference between what Kenneth G. McNeil owed as a Tax Delinquency and what the County received was $30,000.00. The difference between what Kenneth G. McNeil owed as a Tax Delinquency and the minimum fair market value of the Huron Property was $175,000.00.

193.   Given that the minimum fair market value of the Huron Property was $184,000.00, and given that the Tax Delinquency was $9,000.00, Kenneth G. McNeil had at least $175,000.00 in Equity in the Huron Property.

194.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Kenneth G. McNeil had at least $30,000.00 in Equity in the Huron Property.

195.   The County of Huron and Defendant Debra McCollum seized this Equity from Kenneth G. McNeil by foreclosing the Huron Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Kenneth G. McNeil.

196.   Neither the County of Huron nor Defendant Debra McCollum afforded Kenneth G. McNeil any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

197.   Thus, the County of Huron and Defendant Debra McCollum took or destroyed all of Kenneth G. McNeil's Equity in the Huron Property.

198.   Defendant Debra McCollum and the County of Huron refused and refuse to pay just compensation for Kenneth G. McNeil's Equity in the Huron Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

199.   Neither the County of Huron nor Debra McCollum initiated any condemnation action or process for Kenneth G. McNeil's Equity in the Huron Property.

200.   In addition to the Huron Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Huron County.

201.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**K.     Donna Sinclair – Isabella County**

202.   Donna Sinclair was the owner of 715 Whitney St., Mt. Pleasant, Michigan (hereinafter the "Isabella Property").

203.   The Isabella Property is located within Isabella County.

204.   As of date of the auction sale, the Isabella Property accrued a Tax Delinquency of approximately $10,000.00.

205.   On or around 2017, Defendant Steven W. Pickens seized ownership of the Isabella Property on behalf of Isabella County as its duly elected treasurer.

206.   As of that date, the Isabella Property had a State Equalized Value of $40,000.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $80,000.00.

207.   On behalf of Isabella County, Defendant Steven W. Pickens sold the Isabella Property at a tax auction and conveyed the Isabella Property on or about 2017 for $43,000.00.

208.  Thus, the difference between what Donna Sinclair owed as a Tax Delinquency and what the County received was $33,000.00. The difference between what Donna Sinclair owed as a Tax Delinquency and the minimum fair market value of the Isabella Property was $70,000.00.

209.  Given that the minimum fair market value of the Isabella Property was $80,000.00, and given that the Tax Delinquency was $10,000.00, Donna Sinclair had at least $70,000.00 in Equity in the Isabella Property.

210.  Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Donna Sinclair had at least $33,000.00 in Equity in the Isabella Property.

211.  The County of Isabella and Defendant Steven W. Pickens seized this Equity from Donna Sinclair by foreclosing the Isabella Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Donna Sinclair.

212.  Neither the County of Isabella nor Defendant Steven W. Pickens afforded Donna Sinclair any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

213.  Thus, the County of Isabella and Steven W. Pickens took or destroyed all of Donna Sinclair's Equity in the Isabella Property.

214. Defendant Steven W. Pickens and the County of Isabella refused and refuse to pay just compensation for Donna Sinclair's Equity in the Isabella Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

215. Neither the County of Isabella nor Steven W. Pickens initiated any condemnation action or process for Donna Sinclair's Equity in the Isabella Property.

216. In addition to the Isabella Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Isabella County.

217. Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**L.     Gloria Doty – Jackson County**

218. Gloria Doty was the owner of 7999 Wellman Rd., Parma, Michigan (hereinafter the "Jackson Property").

219. The Jackson Property is located within Jackson County.

220. As of date of the auction sale, the Jackson Property accrued a Tax Delinquency of approximately $18,250.00.

221. On or around 2018, Defendant Karen Coffman seized ownership of the Jackson Property on behalf of Jackson County as its duly elected treasurer.

222.   As of that date, the Jackson Property had a State Equalized Value of $65,177.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $130,354.00.

223.   On behalf of Jackson County, Defendant Karen Coffman sold the Jackson Property at a tax auction and conveyed the Jackson Property on or about 2018 for $33,000.00.

224.   Thus, the difference between what Gloria Doty owed as a Tax Delinquency and what the County received was $14,750.00. The difference between what Gloria Doty owed as a Tax Delinquency and the minimum fair market value of the Jackson Property was $112,104.00.

225.   Given that the minimum fair market value of the Jackson Property was $130,354.00, and given that the Tax Delinquency was $18,250.00, Gloria Doty had at least $112,104.00 in Equity in the Jackson Property.

226.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Gloria Doty had at least $14,750.00 in Equity in the Jackson Property.

227.   The County of Jackson and Defendant Karen Coffman seized this Equity from Gloria Doty by foreclosing the Jackson Property, selling it at auction

for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Gloria Doty.

228.   Neither the County of Jackson nor Defendant Karen Coffman afforded Gloria Doty any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

229.   Thus, the County of Jackson and Defendant Karen Coffman took or destroyed all of Gloria Doty's Equity in the Jackson Property.

230.   Defendant Karen Coffman and the County of Jackson refused and refuse to pay just compensation for Gloria Doty's Equity in the Jackson Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

231.   Neither the County of Jackson nor Defendant Karen Coffman initiated any condemnation action or process for Gloria Doty's Equity in the Jackson Property.

232.   In addition to the Jackson Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Jackson County.

233.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**M.     Cynthia M. Zak – Lapeer County**

234.   Cynthia M. Zak was the owner of 4087 Peters Rd., Columbiaville, Michigan (hereinafter the "Lapeer Property").

235.   The Lapeer Property is located within Lapeer County.

236.   As of date of the auction sale, the Lapeer Property accrued a Tax Delinquency of approximately $3,400.00.

237.   On or around 2016, Defendant Dana M. Miller seized ownership of the Lapeer Property on behalf of Lapeer County as its duly elected treasurer.

238.   As of that date, the Lapeer Property had a State Equalized Value of $76,500.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $153,000.00.

239.   On behalf of Lapeer County, Defendant Dana M. Miller sold the Lapeer Property at a tax auction and conveyed the Lapeer Property on or about 2016 for $65,500.00.

240.   Thus, the difference between what Cynthia M. Zak owed as a Tax Delinquency and what the County received was $62,100.00. The difference between what Cynthia M. Zak owed as a Tax Delinquency and the minimum fair market value of the Lapeer Property was $149,600.00.

241.   Given that the minimum fair market value of the Lapeer Property was $153,000.00, and given that the Tax Delinquency was $3,400.00, Cynthia M. Zak had at least $149,600.00 in Equity in the Lapeer Property.

242.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Cynthia M. Zak had at least $62,100.00 in Equity in the Lapeer Property.

243.   The County of Lapeer and Defendant Dana M. Miller seized this Equity from Cynthia M. Zak by foreclosing the Lapeer Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Cynthia M. Zak.

244.   Neither the County of Lapeer nor Defendant Dana M. Miler afforded Cynthia M. Zak any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

245.   Thus, the County of Lapeer and Defendant Dana M. Miller took or destroyed all of Cynthia M. Zak's Equity in the Lapeer Property.

246.   Defendant Debra M. Miller and the County of Lapeer refused and refuse to pay just compensation for Cynthia M. Zak's Equity in the Lapeer Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

247.   Neither the County of Lapeer nor Defendant Dana M. Miller initiated any condemnation action or process for Cynthia M. Zak's Equity in the Lapeer Property.

248.   In addition to the Lapeer Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Lapeer County.

249.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**N.     Colby Smith – Lenawee County**

250.   Colby Smith was the owner of 6501 N. Adrian Hwy, Tecumseh, Michigan (hereinafter the "Lenawee Property").

251.   The Lenawee Property is located within Lenawee County.

252.   As of date of the auction sale, the Lenawee Property accrued a Tax Delinquency of approximately $8,654.43.

253.   On or around 2021, Defendant Erin Van Dyke seized ownership of the Lenawee Property on behalf of Lenawee County as its duly elected treasurer.

254.   Defendant Erin Van Dyke began serving as Lenawee County Treasurer in 2021. Defendant Erin Van Dyke was preceded as Treasurer by Defendant Marilyn Woods who held the Treasurer position for sixteen years. At all times relevant, these

Defendants acted pursuant to a uniform policy, custom, and practice of seizing real property as discussed below.

255.   As of 2021, the Lenawee Property had a State Equalized Value of $43,300,00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $86,600.00.

256.   On behalf of Lenawee County, Defendant Erin Van Dyke sold the Lenawee Property at a tax auction and conveyed the Lenawee Property on or about 2021 for $52,001.00.

257.   Thus, the difference between what Colby Smith owed as a Tax Delinquency and what the County received was $43,346.57. The difference between what Colby Smith owed as a Tax Delinquency and the minimum fair market value of the Lenawee Property was $77,945.57.

258.   Given that the minimum fair market value of the Lenawee Property was $86,600.00, and given that the Tax Delinquency was $8,654.43, Lenawee had at least $77,945.57 in Equity in the Lenawee Property.

259.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Colby Smith had at least $43,346.57 in Equity in the Lenawee Property.

260.   The County of Lenawee and Defendant Erin Van Dyke seized this Equity from Colby Smith by foreclosing the Lenawee Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Colby Smith.

261.   Neither the County of Lenawee nor Defendant Erin Van Dyke afforded Colby Smith any process, plan, or legal mechanism to seek or achieve the return of the Equity it seized.

262.   Thus, the County of Lenawee and Defendant Erin Van Dyke took or destroyed all of Colby Smith's Equity in the Lenawee Property.

263.   Defendant Erin Van Dyke and the County of Lenawee refused and refuse to pay just compensation for Colby Smith's Equity in the Lenawee Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

264.   Neither the County of Lenawee nor Defendant Erin Van Dyke initiated any condemnation action or process for Colby Smith's Equity in the Lenawee Property.

265.   In addition to the Lenawee Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Lenawee County.

266.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**O.   Albert Moore Jr. – Macomb County**

267.   Albert Moore Jr. was the owner of 172 N. Wilson Blvd., Mount Clemens, Michigan (hereinafter the "Macomb Property").

268.   The Macomb Property is located within Macomb County.

269.   As of date of the auction sale, the Macomb Property accrued a Tax Delinquency of approximately $2,119.79.

270.   On or around 2016, Defendant Lawrence Rocca seized ownership of the Macomb Property on behalf of Macomb County as its duly elected treasurer.

271.   As of that date, the Macomb Property had a State Equalized Value of $26,647.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $53,294.00.

272.   On behalf of Macomb County, Defendant Lawrence Rocca sold the Macomb Property at a tax auction and conveyed the Macomb Property on or about 2016 for $46,000.00.

273.   Thus, the difference between what Albert Moore Jr. owed as a Tax Delinquency and what the County received was $43,880.21. The difference between

what Albert Moore Jr. owed as a Tax Delinquency and the minimum fair market value of the Macomb Property was $51,174.21.

274.   Given that the minimum fair market value of the Macomb Property was $53,294.00, and given that the Tax Delinquency was $2,119.79, Albert Moore Jr. had at least $51,174.21 in Equity in the Macomb Property.

275.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Albert Moore Jr. had at least $43,880.21 in Equity in the Macomb Property.

276.   The County of Macomb and Defendant Lawrence Rocca seized this Equity from Albert Moore Jr. by foreclosing the Macomb Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Albert Moore Jr.

277.   Neither the County of Macomb nor Defendant Lawrence Rocca afforded Albert Moore Jr. any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

278.   Thus, the County of Macomb and Defendant Lawrence Rocca took or destroyed all of Albert Moore Jr.'s Equity in the Macomb Property.

279.   Defendant Lawrence Rocca and the County of Macomb refused and refuse to pay just compensation for Albert Moore Jr.'s Equity in the Macomb

Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

280.   Neither the County of Macomb nor Defendant Lawrence Rocca initiated any condemnation action or process for Albert Moore Jr.'s Equity in the Macomb Property.

281.   In addition to the Macomb Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Macomb County.

282.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**P.     Home Opportunity – Midland County**

283.   Home Opportunity was the owner of 529 W. Wixom Road, Sanford, Michigan (hereinafter the "Midland Property").

284.   The Midland Property is located within Midland County.

285.   As of date of the auction sale, the Midland Property accrued a Tax Delinquency of approximately $8,512.21.

286.   On or around 2017, Defendant Catherine L. Lunsford seized ownership of the Midland Property on behalf of Midland County as its duly elected treasurer.

287.   As of that date, the Midland Property had a State Equalized Value of $29,100.00. Because the fair market value of a property is at least twice the amount

of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $58,200.00.

288.  On behalf of Midland County, Defendant Catherine L. Lunsford sold the Midland Property at a tax auction and conveyed the Midland Property on or about 2017 for $13,500.00.

289.  Thus, the difference between what Home Opportunity owed as a Tax Delinquency and what the County received was $4,987.79. The difference between what Home Opportunity owed as a Tax Delinquency and the minimum fair market value of the Midland Property was $49,687.79.

290.  Given that the minimum fair market value of the Midland Property was $58,200.00 and given that the Tax Delinquency was $8,512.21, Home Opportunity had at least $49,687.79 in Equity in the Midland Property.

291.  Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Home Opportunity had at least $4,987.79 in Equity in the Midland Property.

292.  The County of Midland and Defendant Catherine L. Lunsford seized this Equity from Home Opportunity by foreclosing the Midland Property, selling it at auction for an amount much lower than its fair market value, but still far more

than the Tax Delinquency, and failing to return any of the Equity to Home Opportunity.

293.   Neither the County of Midland nor Defendant Catherine L. Lunsford afforded Home Opportunity any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

294.   Thus, the County of Midland and Defendant Catherine L. Lunsford took or destroyed all of Home Opportunity's Equity in the Midland Property.

295.   Defendant Catherine L. Lunsford and the County of Midland refused and refuse to pay just compensation for Home Opportunity's (or, later, the Trustee's) Equity in the Midland Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

296.   Neither the County of Midland nor Defendant Catherine L. Lunsford initiated any condemnation action or process for Home Opportunity's Equity in the Midland Property.

297.   In addition to the Midland Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Midland County.

298.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**Q.    Lisa Dufore – Montmorency County**

299.   Lisa Dufore was the owner of 1490 County Rd. 612, Lewiston, Michigan (hereinafter the "Montmorency Property").

300.   The Montmorency Property is located within Montmorency County.

301.   As of date of the auction sale, the Montmorency Property accrued a Tax Delinquency of approximately $2,000.00.

302.   On or around 2017, Defendant Jean M. Klein seized ownership of the Montmorency Property on behalf of Montmorency County as its duly elected treasurer.

303.   Defendant Jean M. Klein began serving as Montmorency County's Treasurer in 2014. Defendant Jean M. Klein was succeeded as Treasurer by Defendant Cheri Eggett who began serving as Montmorency County's Treasurer in 2021. At all times relevant, these Defendants acted pursuant to a uniform policy, custom, and practice of seizing real property as discussed below.

304.   As of the date of the seizure, the Montmorency Property had a State Equalized Value of $8,800.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $17,600.00.

305.   On behalf of Montmorency County, Defendant Jean M. Klein sold the Montmorency Property at a tax auction and conveyed the Montmorency Property on or about 2017 for $10,250.00.

306.   Thus, the difference between what Lisa Dufore owed as a Tax Delinquency and what the County received was $8,250.00. The difference between what Lisa Dufore owed as a Tax Delinquency and the minimum fair market value of the Montmorency Property was $15,600.00.

307.   Given that the minimum fair market value of the Montmorency Property was $17,600.00, and given that the Tax Delinquency was $2,000.00, Lisa Dufore had at least $15,600.00 in Equity in the Montmorency Property.

308.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Lisa Dufore had at least $8,250.00 in Equity in the Montmorency Property.

309.   The County of Montmorency and Defendant Jean M. Klein seized this Equity from Lisa Dufore by foreclosing the Montmorency Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Lisa Dufore.

310.   Neither the County of Montmorency, Defendant Eggett, nor Defendant Jean M. Klein afforded Lisa Dufore any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

311.   Thus, the County of Montmorency, Defendant Eggett, and Defendant Jean M. Klein took or destroyed all of Lisa Dufore's Equity in the Montmorency Property.

312.   Defendant Jean M. Klein, Defendant Eggett, and the County of Montmorency refused and refuse to pay just compensation for Lisa Dufore's Equity in the Montmorency Property. These Defendants also has failed to provide any mechanism at all for any such compensation.

313.   Neither the County of Montmorency nor Defendant Jean M. Klein initiated any condemnation action or process for Lisa Dufore's Equity in the Montmorency Property.

314.   In addition to the Montmorency Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Montmorency County.

315.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**R.     Home Opportunity – Ogemaw County**

316. Home Opportunity was the owner of 114 Garfield St., Prescott, Michigan (hereinafter the "Ogemaw Property").

317. The Ogemaw Property is located within Ogemaw County.

318. As of date of the auction sale, the Ogemaw Property accrued a Tax Delinquency of approximately $4,800.00.

319. On or around 2016, Defendant Dwight McIntyre seized ownership of the Ogemaw Property on behalf of Ogemaw County as its duly elected treasurer.

320. Defendant Dwight McIntyre began serving as Ogemaw County's Treasurer from at least 2016 until he was succeeded by Defendant Caren Piglowski who began serving as Montmorency County's Treasurer in 2021. At all times relevant, these Defendants acted pursuant to a uniform policy, custom, and practice of seizing real property as discussed below.

321. As of the date of the seizure, the Ogemaw Property had a State Equalized Value of $21,600.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $43,200.00.

322. On behalf of Ogemaw County, Defendant Dwight McIntyre sold the Ogemaw Property at a tax auction and conveyed the Ogemaw Property on or about 2016 for $5,100.00.

323.   Thus, the difference between what Home Opportunity owed as a Tax Delinquency and what the County received was $300.00. The difference between what Home Opportunity owed as a Tax Delinquency and the minimum fair market value of the Ogemaw Property was $38,400.00.

324.   Given that the minimum fair market value of the Ogemaw Property was $43,200.00, and given that the Tax Delinquency was $4,800.00, Home Opportunity had at least $38,400.00 in Equity in the Ogemaw Property.

325.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Home Opportunity had at least $300.00 in Equity in the Ogemaw Property.

326.   The County of Ogemaw and Defendant Dwight McIntyre seized this Equity from Home Opportunity by foreclosing the Ogemaw Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Home Opportunity.

327.   Neither the County of Ogemaw, Defendant Piglowski, nor Defendant Dwight McIntyre afforded Home Opportunity any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

328.   Thus, the County of Ogemaw, Defendant Piglowski, and Defendant Dwight McIntyre took or destroyed all of Home Opportunity's Equity in the Ogemaw Property.

329.   Defendant Dwight McIntyre, Defendant Piglowski, and the County of Ogemaw refused and refuse to pay just compensation for Home Opportunity's (or, later, the Trustee's) Equity in the Ogemaw Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

330.   Neither the County of Ogemaw nor Defendant Dwight McIntyre initiated any condemnation action or process for Home Opportunity's Equity in the Ogemaw Property.

331.   In addition to the Ogemaw Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Ogemaw County.

332.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**S.     Eugene Causley Jr. – Oscoda County**

333.   Eugene Causley Jr. was the owner of 2024 Stutesman Dr., Fairview, Michigan (hereinafter the "Oscoda Property").

334.   The Oscoda Property is located within Oscoda County.

335.   As of date of the auction sale, the Oscoda Property accrued a Tax Delinquency of approximately $1,100.00.

336.   On or around 2019, Defendant William Kendall seized ownership of the Oscoda Property on behalf of Oscoda County as its duly elected treasurer.

337.   As of that date, the Oscoda Property had a State Equalized Value of $7,500.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $15,000.00.

338.   On behalf of Oscoda County, Defendant William Kendall sold the Oscoda Property at a tax auction and conveyed the Oscoda Property on or about 2019 for $5,300.00.

339.   Thus, the difference between what Eugene Causley Sr. owed as a Tax Delinquency and what the County received was $4,200.00. The difference between what Eugene Causley Sr. owed as a Tax Delinquency and the minimum fair market value of the Oscoda Property was $13,900.00.

340.   Given that the minimum fair market value of the Oscoda Property was $15,000.00, and given that the Tax Delinquency was $1,100.00, Eugene Causley Sr. had at least $13,900.00 in Equity in the Oscoda Property.

341.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the

outstanding Delinquent Tax, Eugene Causley Sr. had at least $4,200.00 in Equity in the Oscoda Property.

342.   The County of Oscoda and Defendant William Kendall seized this Equity from Eugene Causley Sr.  by foreclosing the Oscoda Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Eugene Causley Sr.

343.   Neither the County of Oscoda nor Defendant William Kendall afforded any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

344.   Thus, the County of Oscoda and Defendant William Kendall took or destroyed all of Eugene Causley Sr.'s Equity in the Oscoda Property.

345.   Defendant William Kendall and the County of Oscoda refused and refuse to pay just compensation for Eugene Causley Sr.'s Equity in the Oscoda Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

346.   Neither the County of Oscoda nor Defendant William Kendall initiated any condemnation action or process for Eugene Causley Sr.'s Equity in the Oscoda Property.

347.   In addition to the Oscoda Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Oscoda County.

348.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**T.      Mitchell D. James – Presque Isle County**

349.   Mitchell D. James was the owner of 3826 S. 2nd St., Onaway, Michigan (hereinafter the "Presque Isle Property").

350.   The Presque Isle Property is located within Presque Isle County.

351.   As of date of the auction sale, the Presque Isle Property accrued a Tax Delinquency of approximately $3,100.00.

352.   On or around 2018, Defendant Bridget LaLonde seized ownership of the Presque Isle Property on behalf of Presque Isle County as its duly elected treasurer.

353.   As of that date, the Presque Isle Property had a State Equalized Value of $14,200.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $28,400.00.

354.   On behalf of Presque Isle County, Defendant Bridget LeLonde sold the Presque Isle Property at a tax auction and conveyed the Presque Isle Property on or about 2018 for $4,500.00.

355.   Thus, the difference between what Mitchell D. James owed as a Tax Delinquency and what the County received was $1,400.00. The difference between what Mitchell D. James owed as a Tax Delinquency and the minimum fair market value of the Presque Isle Property was $25,300.00.

356.   Given that the minimum fair market value of the Presque Isle Property was $28,400.00, and given that the Tax Delinquency was $3,100.00, Mitchell D. James had at least $25,300.00 in Equity in the Presque Isle Property.

357.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Mitchell D. James had at least $1,400.00 in Equity in the Presque Isle Property.

358.   The County of Presque Isle and Defendant Bridget LaLonde seized this Equity from Mitchell D. James by foreclosing the Presque Isle Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Mitchell D. James.

359.   Neither the County of Presque Isle nor Defendant Bridget LaLonde afforded Mitchell D. James any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

360.   Thus, the County of Presque Isle and Defendant Bridget LaLonde took or destroyed all of Mitchell D. James's Equity in the Presque Isle Property.

361.   Defendant Bridget LaLonde and the County of Presque Isle refused and refuse to pay just compensation for Mitchell D. James' Equity in the Presque Isle Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

362.   Neither the County of Presque Isle nor Defendant Bridget LaLonde initiated any condemnation action or process for Mitchell D. James's Equity in the Presque Isle Property.

363.   In addition to the Presque Isle Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property with Presque Isle County.

364.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**U.     Harold F. Reno Jr. – Roscommon County**

365.   Harold F. Reno Jr. was the owner of 10902 Johnston Blvd., Saint Helen, Michigan (hereinafter the "Roscommon Property").

366.   The Roscommon Property is located within Roscommon County.

367.   As of date of the auction sale, the Roscommon Property accrued a Tax Delinquency of approximately $3,200.00.

368.   On or around 2018, Defendant Rebecca A. Ragan seized ownership of the Roscommon Property on behalf of Roscommon County as its duly elected treasurer.

369.   As of that date, the Roscommon Property had a State Equalized Value of $18,800.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $37,600.00.

370.   On behalf of Roscommon County, Defendant Rebecca A. Ragan sold the Roscommon Property at a tax auction and conveyed the Roscommon Property on or about 2018 for $26,500.00.

371.   Thus, the difference between what Harold F. Reno Jr. owed as a Tax Delinquency and what the County received was $23,300.00. The difference between what Harold F. Reno Jr. owed as a Tax Delinquency and the minimum fair market value of the Roscommon Property was $34,400.00.

372.   Given that the minimum fair market value of the Roscommon Property was $37,600.00, and given that the Tax Delinquency was $3,200.00, Harold F. Reno Jr. had at least $34,400.00 in Equity in the Roscommon Property.

373.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Harold F. Reno Jr. had at least $23,300.00 in Equity in the Roscommon Property.

374.   The County of Roscommon and Defendant Rebecca A. Ragan seized this Equity from Harold F. Reno Jr. by foreclosing the Roscommon Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Harold F. Reno Jr.

375.   Neither the County of Roscommon nor Defendant Rebecca A. Ragan afforded Harold F. Reno Jr. any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

376.   Thus, the County of Roscommon and Defendant Rebecca A. Ragan took or destroyed all of Harold F. Reno Jr.'s Equity in the Roscommon Property.

377.   Defendant Rebecca A. Ragan and the County of Roscommon refused and refuse to pay just compensation for Harold F. Reno Jr.'s Equity in the

Roscommon Property. These Defendants also has failed to provide any mechanism at all for any such compensation.

378.    Neither the County of Roscommon nor Defendant Rebecca A. Ragan initiated any condemnation action or process for Harold F. Reno Jr.'s Equity in the Roscommon Property.

379.    In addition to the Roscommon Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Roscommon County.

380.    Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**V.      Nicole Vedrode – Saginaw County**

381.    Nicole Vedrode was the owner of 454 W. Alice, Merrill, Michigan (hereinafter the "Saginaw Property").

382.    The Saginaw Property is located within Saginaw County.

383.    As of date of the auction sale, the Saginaw Property accrued a Tax Delinquency of approximately $13,000.00.

384.    On or around 2018, Defendant Timothy M. Novak seized ownership of the Saginaw Property on behalf of Saginaw County as its duly elected treasurer.

385.    As of that date, the Saginaw Property had a State Equalized Value of $51,400.00. Because the fair market value of a property is at least twice the amount

of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $102,800.00.

386.   On behalf of Saginaw County, Defendant Timothy M. Novak sold the Saginaw Property at a tax auction and conveyed the Saginaw Property on or about 2018 for $26,250.00

387.   Thus, the difference between what Nicole Vedrode owed as a Tax Delinquency and what the County received was $13,250.00. The difference between what Nicole Vedrode owed as a Tax Delinquency and the minimum fair market value of the Saginaw Property was $89,800.00.

388.   Given that the minimum fair market value of the Saginaw Property was $102,800.00, and given that the Tax Delinquency was $13,000.00, Nicole Vedrode had at least $89,800.00 in Equity in the Saginaw Property.

389.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Nicole Vedrode had at least $13,250.00 in Equity in the Saginaw Property.

390.   The County of Saginaw and Defendant Timothy M. Novak seized this Equity from Nicole Vedrode by foreclosing the Saginaw Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Nicole Vedrode.

391. Neither the County of Saginaw nor Defendant Timothy M. Novak afforded Nicole Vedrode any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

392. Thus, the County of Saginaw and Defendant Timothy M. Novak took or destroyed all of Nicole Vedrode's Equity in the Saginaw Property.

393. Defendant Timothy M. Novak and the County of Saginaw refused and refuse to pay just compensation for Nicole Vedrode's Equity in the Saginaw Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

394. The County of Saginaw did not initiate any condemnation action or process for Nicole Vedrode's Equity in the Saginaw Property.

395. Neither the County of Saginaw nor Defendant Timothy M. Novak initiated any condemnation action or process for the Plaintiff's Equity in the Saginaw Property.

396. In addition to the Saginaw Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Saginaw County.

397. Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**W.    Shalene Pope – Sanilac County**

67

398.   Shalene Pope was the owner of 146 Wells, Croswell, Michigan (hereinafter the "Sanilac Property").

399.   The Sanilac Property is located within Sanilac County.

400.   As of date of the auction sale, the Sanilac Property accrued a Tax Delinquency of approximately $6,850.00.

401.   On or around 2017, Defendant Trudy M. Bowers seized ownership of the Sanilac Property on behalf of Sanilac County as its duly elected treasurer.

402.   As of that date, the Sanilac Property had a State Equalized Value of $26,900.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $53,800.00.

403.   On behalf of Sanilac County, Defendant Trudy M. Bowers sold the Sanilac Property at a tax auction and conveyed the Sanilac Property on or about 2017 for $25,000.00.

404.   Thus, the difference between what Shalene Pope owed as a Tax Delinquency and what the County received was $18,150.00. The difference between what Shalene Pope owed as a Tax Delinquency and the minimum fair market value of the Sanilac Property was $46,950.00.

405.   Given that the minimum fair market value of the Sanilac Property was $53,800.00, and given that the Tax Delinquency was $6,850.00, Shalene Pope had at least $46,950.00 in Equity in the Sanilac Property.

406.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Shalene Pope had at least $18,150.00 in Equity in the Sanilac Property.

407.   The County of Sanilac and Defendant Trudy M. Bowers seized this Equity from Shalene Pope by foreclosing the Sanilac Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Shalene Pope.

408.   Neither the County of Sanilac nor Defendant Trudy M. Bowers afforded Shalene Pope any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

409.   Thus, the County of Sanilac and Defendant Trudy M. Bowers took or destroyed all of Shalene Pope's Equity in the Sanilac Property.

410.   Defendants the County of Sanilac and Bowers refused and refuse to pay just compensation for Shalene Pope's Equity in the Sanilac Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

411.   Neither the County of Sanilac nor Defendant Trudy M. Bowers initiated any condemnation action or process for Shalene Pope's Equity in the Sanilac Property.

412.   In addition to the Sanilac Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Sanilac County.

413.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

## X.     Lawrence & Brenda Edwards – St. Clair County

414.   Lawrence & Brenda Edwards were the owners of 9725 Willow Ct., Clay Township, Michigan (hereinafter the "St. Clair Property").

415.   The St. Clair Property is located within St. Clair County.

416.   As of date of the auction sale, the St. Clair Property accrued a Tax Delinquency of approximately $5,600.00.

417.   On or around 2016, Defendant Kelly Roberts-Burnett seized ownership of the St. Clair Property on behalf of St. Clair County as its duly elected treasurer.

418.   As of that date, the St. Clair Property had a State Equalized Value of $18,300.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $36,600.00.

419.   On behalf of St. Clair County, Defendant Kelly Roberts-Burnett sold the St. Clair Property at a tax auction and conveyed the St. Clair Property on or about 2016 for $21,000.00.

420.   Thus, the difference between what Lawrence & Brenda Edwards owed as a Tax Delinquency and what the County received was $15,400.00. The difference between what Lawrence & Brenda owed as a Tax Delinquency and the minimum fair market value of the St. Clair Property was $31,000.00.

421.   Given that the minimum fair market value of the St. Clair Property was $36,600.00, and given that the Tax Delinquency was $5,600.00, Lawrence & Brenda Edwards had at least $31,000.00 in Equity in the St. Clair Property.

422.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Lawrence & Brenda Edwards had at least $15,400.00 in Equity in the St. Clair Property.

423.   The County of St. Clair and Defendant Kelly Roberts-Burnett seized this Equity from Lawrence & Brenda Edwards by foreclosing the St. Clair Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Lawrence & Brenda Edwards.

424.   Neither the County of St. Clair nor Defendant Kelly Roberts-Burnett afforded Lawrence & Brenda Edwards any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

425.   Thus, the County of St. Clair and Defendant Kelly Roberts-Burnett took or destroyed all of Lawrence & Brenda Edwards's Equity in the St. Clair Property.

426.   Defendant Kelly Roberts-Burnett and the County of St. Clair refused and refuse to pay just compensation for Lawrence & Brenda Edwards's Equity in the St. Clair Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

427.   Neither the County of St. Clair nor Defendant Kelly Roberts-Burnett initiated any condemnation action or process for Lawrence & Brenda Edwards's Equity in the St. Clair Property.

428.   In addition to the St. Clair Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within St. Clair County.

429.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**Y.      Bandacar, Inc. – Tuscola County**

430.   Bandacar, Inc. was the owners of 9711 N. Lake Point Dr., Otter Lake, Michigan (hereinafter the "Tuscola Property").

431.   The Tuscola Property is located within Tuscola County.

432.   As of date of the auction sale, the Tuscola Property accrued a Tax Delinquency of approximately $5,300.00.

433.   On or around 2014, Defendant Patricia Donovan-Gray seized ownership of the Tuscola Property on behalf of Tuscola County as its duly elected treasurer.

434.   As of that date, the Tuscola Property had a State Equalized Value of $50,300.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $100,600.00.

435.   On behalf of Tuscola County, Defendant Patricia Donovan-Gray sold the Tuscola Property at a tax auction and conveyed the Tuscola Property on or about 2014 for $82,000.00.

436.   Thus, the difference between what Bandacar, Inc. owed as a Tax Delinquency and what the County received was $76,700.00. The difference between what Bandacar, Inc. owed as a Tax Delinquency and the minimum fair market value of the Tuscola Property was $95,300.00.

437.   Given that the minimum fair market value of the Tuscola Property was $100,600.00, and given that the Tax Delinquency was $5,300.00, Bandacar, Inc. had at least $95,300.00 in Equity in the Tuscola Property.

438.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Bandacar, Inc. had at least $76,700.00 in Equity in the Tuscola Property.

439.   The County of Tuscola and Defendant Patricia Donovan-Gray seized this Equity from Bandacar, Inc. by foreclosing the Tuscola Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Bandacar, Inc.

440.   Neither the County of Tuscola nor Defendant Patricia Donovan-Gray afforded Bandacar, Inc. any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

441.   Thus, the County of Tuscola and Defendant Patricia Donovan-Gray took or destroyed all of Bandacar, Inc.'s Equity in the Tuscola Property.

442.   Defendant Patricia Donovan-Gray and the County of Tuscola refused and refuse to pay just compensation for Bandacar, Inc.'s  Equity in the Tuscola Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

443.   Neither the County of Tuscola nor Defendant Patricia Donovan-Gray initiated any condemnation action or process for Bandacar, Inc.'s Equity in the Tuscola Property.

444.   In addition to the Tuscola Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Tuscola County.

445.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

**Z.     Gina Love – Washtenaw County**

446.   Gina Love was the owner of 715 N. Prospect St., Ypsilanti, Michigan (hereinafter the "Washtenaw Property").

447.   The Washtenaw Property is located within Washtenaw County.

448.   As of date of the auction sale, the Washtenaw Property accrued a Tax Delinquency of approximately $18,227.00.

449.   On or around 2017, Defendant Catherine McClary seized ownership of the Washtenaw Property on behalf of Washtenaw County as its duly elected treasurer.

450.   As of that date, the Washtenaw Property had a State Equalized Value of $53,600.00. Because the fair market value of a property is at least twice the amount of its State Equalized Value, this means that the government would have known or should have known that said property had a fair market value of at least $107,200.00.

451.   On behalf of Washtenaw County, Defendant Catherine McClary sold the Washtenaw Property at a tax auction and conveyed the Washtenaw Property on or about 2017 for $81,000.00.

452.   Thus, the difference between what Gina Love owed as a Tax Delinquency and what the County received was $62,773.00. The difference between what Gina Love owed as a Tax Delinquency and the minimum fair market value of the Washtenaw Property was $88,973.00.

453.   Given that the minimum fair market value of the Washtenaw Property was $107,200.00, and given that the Tax Delinquency was $18,227.00, Gina Love had at least $88,973.00 in Equity in the Washtenaw Property.

454.   Even taking the most conservative approach, and assuming *arguendo* that Equity was defined as the difference between the auction price and the outstanding Delinquent Tax, Gina Love had at least $62,773.00 in Equity in the Washtenaw Property.

455.   The County of Washtenaw and Defendant Catherine McClary seized this Equity from Gina Love by foreclosing the Washtenaw Property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to Gina Love.

456.   Neither the County of Washtenaw nor Defendant Catherine McClary afforded Gina Love any process, plan, or legal mechanism to seek or achieve the return of the Equity they seized.

457.   Thus, the County of Washtenaw took or destroyed all of Gina Love's Equity in the Washtenaw Property.

458.   Defendant the County of Washtenaw and Defendant Catherine McClary refused and refuse to pay just compensation for Gina Love's Equity in the Washtenaw Property. These Defendants also have failed to provide any mechanism at all for any such compensation.

459.   Neither the County of Washtenaw nor Defendant Catherine McClary initiated any condemnation action or process for Gina Love's Equity in the Washtenaw Property.

460.   In addition to the Washtenaw Property, these Defendants have, in an identical fashion as outlined above, seized Equity from other pieces of real property within Washtenaw County.

461.   Moreover, the other named Defendants and Defendant Counties have carried out this practice in their respective jurisdictions.

## III.   The Conduct at Issue Here Reflects County Policy

33.462.      The actions described herein isare a voluntary policy, custom, and/or practice of each County Defendant and/or its final policymaker.

~~34.~~463.     This voluntary policy and/or practice of each County Defendant and/or its final policymaker is sufficient to impose damages and other relief pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), and its progeny.

~~35.~~464.     Specifically, each respective County made the affirmative, voluntary, and discretionary decision to select and designate itself and/or its own county's treasurer to act as the Foreclosing Governmental Unit.

~~36.~~465.     Moreover, each of the Defendant Counties, either through legislative enactment of laws or regulations, official agency or governmental entity policy, and/or actions taken by an official or officials with final decision-making authority has administered the County's foreclosure and auction process generally, including MCL § 211.78m(8), so that after the County sells a parcel at auction, the County retains the entire amount of the proceeds, even if the proceeds exceed the amount of the Tax Delinquency, and never returns anything to the property owner, nor provides any mechanism by which the property owner can secure a return of his, her, or its equity.

~~37.~~466.     Accordingly, the actions at issue here were undertaken pursuant to an official county policy for purposes of *Monell*, 436 U.S. 658.

~~38.~~   ~~If T~~the General Property Tax Act, and specifically MCL § 211.78m(8), ~~does not~~ required or requires the practices that Plaintiff~~s~~ complain~~s~~ of, then .~~Rather,~~

~~the Act can be fairly read to provide for Equity to be returned to the previous owner of a foreclosed property before the resulting funds are allocated.~~

~~39.~~467.   ~~In the alternative, the Act, and in particular MCL § 211.78m(8), are~~it is inherently unconstitutional: if the Act requires Defendants' conduct as set forth herein, then, the Act violates the Michigan and United States Constitutions for all of the reasons that Defendants' conduct violates them.

~~40.~~468.   The actions of Defendants were designed to intentionally or wantonly cause harm to Plaintiff and the Class due to the utter disregard of Plaintiff's and the ~~Class'~~Class's constitutionally protected rights.

## CLASS ALLEGATIONS

~~41.~~469.   This action is brought by Plaintiff individually and pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2)-(3) on behalf of the owners of real property in the counties of Alcona, Alpena, Arenac, Bay, Clare, Crawford, Genesee, Gladwin, Gratiot, Huron, Isabella, Jackson, Lapeer, Lenawee, Macomb, Midland, Montmorency, Ogemaw, Oscoda, ~~Otsego,~~ Presque Isle, Roscommon, Saginaw, Sanilac, St Clair, Tuscola, and Washtenaw during the relevant statutorily-limited time period who were subject to the unconstitutional processes which resulted in the taking and/or unconstitutional forfeiture of their surplus or excess equity beyond the

tax debt owed and due, but excluding those who have separately filed their own personal post-forfeiture legal actions in state or federal courts.

42.470.    The proposed class consists of all the owners of real property in the following counties, whose real property, during the relevant time period,  was seized through a real property tax foreclosure, which was worth and/or which was sold at tax auction for more than the total tax delinquency and who was not refunded the value of the property in excess of the delinquent taxes owed: Alcona, Alpena, Arenac, Bay, Clare, Crawford, Genesee, Gladwin, Gratiot, Huron, Isabella, Jackson, Lapeer, Lenawee, Macomb, Midland, Montmorency, Ogemaw, Oscoda, ~~Otsego,~~ Presque Isle, Roscommon, Saginaw, Sanilac, St Clair, Tuscola, and Washtenaw.

43.471.    39.    The number of persons who have been injured by the practices discussed herein is sufficiently numerous to make class action the most practical method to secure redress for the injuries sustained and to provide class wide equitable relief.

44.472.    40.    Plaintiff's' claims are common to, and typical of, those raised by the Class they seeks to represent, including:

  a. Whether the counties and their respective treasurers are and have been voluntarily exercising discretion to administer MCL § 211.78 in an unconstitutional or otherwise illegal manner, or whether the counties and their respective treasurer are and have been acting to voluntarily

enforce an unconstitutional statute which each has willingly assumed to undertake pursuant to discretion via MCL § 211.78;

b.  Whether each class member's property, prior to foreclosure, was worth and was sold for more than the total Tax Delinquency owed to the respective county;

c.  Whether each class member's property had a fair market value greater than the total Tax Delinquency owed to the respective county;

d.  Whether the county treasurers destroyed or took Equity when selling class member's property at a reduced, below fair market value price;

e.  Whether the county treasurers then kept the remaining Equity for the benefit of their respective counties; and

f.  Whether the county treasurers failed to pay just compensation, failed to initiate any form of condemnation proceedings, or failed to have or undertake a process to return the Equity.

45.473.    There are clear questions of law raised by the named Plaintiff's claims common to, and typical of, those raised by the Class they seeks to represent, including:

a.  whetherWhether MCL § 211.78m forbids Defendants from returning Equity to Class Members;

b. ~~whether~~Whether, if MCL § 211.78m does entail such a prohibition, the statute is facially unconstitutional;

c. ~~whether~~Whether the Defendants committed an unconstitutional taking by refusing to pay just compensation when seizing Equity beyond the Tax Delinquency, and have appropriated property in the form of Equity without the payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article X, Section 2 of the Michigan Constitution;

d. ~~whether~~Whether the Defendants committed an inverse condemnation by destroying Equity via the seizure process and/or the later sale of property at a highly reduced, below fair market price and then retaining the remaining proceeds from the sale of tax foreclosed property that constituted the remaining Equity;

e. ~~if~~If deemed a forfeiture, whether the Defendants violated either the Excessive Fines Clause of the United States Constitution, by retaining proceeds from the sale of tax foreclosed property that exceeded the amount of the Tax Delinquency;

f. ~~whether~~Whether the Class Members had a protected property interest in their property's Equity;

g. ~~whether~~Whether the Defendants deprived the class members of any opportunity to seek the return of their Equity after foreclosure so as to deprive the Class Members of their procedural due process rights;

h. ~~whether~~Whether Defendants acted arbitrarily and capriciously, and/or in a manner that shocks the conscience, in seizing the Class Members' Equity;

i. ~~whether~~Whether Defendants violated the class members' substantive due process rights in seizing the Class Members' Equity; and

j. ~~whether~~Whether the Defendant counties have been unjustly enriched by their retention of Class Members' Equity.

~~46.~~474.    The violations of law and resulting harms alleged by the named Plaintiff are typical of the legal violations and harms suffered by all Class Members.

~~47.~~475.    Plaintiff~~s~~, as Class representative~~s~~, will fairly and adequately protect the interests of the Class Members and will vigorously prosecute the suit on behalf of the Class; and ~~is~~ are represented by highly experienced counsel.

~~48.~~476.    The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice, preventing possible inconsistent or varying adjudications with respect to individual members of the Class and/or one or more of the Defendants.

49.477.    Defendants have acted, failed to act, and/or are continuing to act on grounds generally against Plaintiffs and all members of the Class in the same manner.

50.478.    The violations of law and resulting harms alleged by the named Plaintiffs are typical of the legal violations and harms suffered by all Class Members.

51.479.    The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice, preventing possible inconsistent or varying adjudications with respect to individual members of the Class and/or one or more of the Defendants.

**COUNT I**
**TAKING – FIFTH/FOURTEENTH AMENDMENT**
**VIOLATION**
**42 USC § 1983**
**(AGAINST ALL DEFENDANTS)**

52.480.    The prior paragraphs are restated word for word herein.

53.481.    This claim is being made against all Defendants pursuant to 42 U.S.C. § 1983 and § 1988.

54.482.    The Fifth Amendment, made applicable to the states via the Fourteenth Amendment, is a constitutional provision and right requiring the payment of just compensation upon a taking by Defendants. *See Knick v. Twp. of Scott*, 588 U.S. ___ (2019).

55.483.    Defendants have taken Plaintiffs's and the Class Members' property interests in the form of Equity – that is, the value of their properties to the extent they exceed the properties' Tax Delinquencies – and have appropriated this property for public use without the payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

56.484.    Defendants have refused to take any action for the payment of just compensation for their seizure of Equity from the Plaintiffs and the Class.

57.485.    By Defendants refusal to take any action for the payment of just compensation at the time of the taking, Defendants have deprived Plaintiffs and the Class of their constitutional right to just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

58.486.    The taking of Plaintiffs and the Class's property also violates 42 USC § 1983 and 42 USC § 1988.  Plaintiffs and the Class are entitled to all relief provided by these statutes.

59.487.    Defendants have not paid just compensation.

60.488.    Defendants will not now pay just compensation.

61.489.    Defendants do not intend to pay just compensation in the future.

62.490.    Plaintiffs and the Class have been injured and have suffered damages.

## COUNT II
## TAKING – FIFTH/FOURTEENTH AMENDMENT

**VIOLATION**
**"ARISING DIRECTLY" UNDER THE FIFTH AMENDMENT**
**(AGAINST ALL DEFENDANTS)**

~~63.~~491.      The prior paragraphs are restated word for word herein.

~~64.~~492.      This claim is being made against all Defendants under the Fifth Amendment directly.

~~65.~~493.      The Fifth Amendment, made applicable to the states via the Fourteenth Amendment, is a self-executing constitutional provision requiring the payment of just compensation upon the takings undertaken by Defendants.

~~66.~~494.      Defendants have taken Plaintiffs's and the Class Members' property interests in the form of Equity – that is, the value of their properties to the extent they exceed the properties' Tax Delinquencies – and have appropriated this property for public use without the payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

~~67.~~495.      Defendants have refused to take any action for the payment of just compensation for their seizure of equity from the Plaintiffs and the Class.

~~68.~~496.      By Defendants refusal to take any action for the payment of just compensation at time of the taking, Defendants have deprived Plaintiffs and the Class of their constitutional right to just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and thus the violation can be remedied by a direct claim under the Fifth Amendment.

69.497.    Defendants have not paid just compensation.

70.498.    Defendants will not now pay just compensation.

71.499.    Defendants do not intend to pay just compensation in the future.

500.   Plaintiffs and the Class have been injured and have suffered damages.

72.501.    Plaintiffs acknowledge that the Court has dismissed this claim when it was previously pled. (ECF No. 148). They respect this decision, but make claims against them here in order to preserve appellate rights and in light of their right to plead in the alternative.

**COUNT III**
**STATE LAW - INVERSE CONDEMNATION**
**(AGAINST DEFENDANT COUNTIES AND**
**TREASURERS IN THEIR OFFICIAL CAPACITIES)**

73.502.    The prior paragraphs are restated word for word herein.

74.503.    Defendants have taken Plaintiffs's and the Class Members' property interests in the form of Equity – that is, the value of their properties to the extent they exceed the properties' Tax Delinquencies – and have appropriated this property for public use without the payment of just compensation.

75.504.    Defendants have done so without using any *direct* condemnation processes, including those outlined under the Uniform Condemnation Procedures Act, MCL 213.51, *et seq*.

76.505.    Defendants have not and will not provide Plaintiffs and the Class Members any opportunity to claim the Equity in their properties after the seizure

and/or later sale of their respective property, nor do Defendants provide or have a process for Plaintiffs and the Class Members to claim compensation at the time the Defendants seized title to their taken property interests.

77.506.     Defendants have not paid just compensation.

78.507.     Defendants will not now pay just compensation.

79.508.     Defendants do not intend to pay just compensation in the future.

80.509.     An inverse condemnation with damages has occurred.

81.510.     Plaintiffs and the Class have been injured and have suffered damages.

## COUNT IV
## STATE LAW – VIOLATION OF MICHIGAN CONSTITUTION
## ARTICLE X, SECTION 2
## (AGAINST DEFENDANT COUNTIES AND
## TREASURERS IN THEIR OFFICIAL CAPACITIES)

82.511.     The prior paragraphs are restated word for word herein.

83.512.     Defendants have taken Plaintiffs's and the Class Members' property interests in the form of Equity – that is, the value of their properties to the extent they exceed the properties' Tax Delinquencies – and have appropriated this property for public use without the payment of just compensation.

84.513.     Defendants have done so without using any *direct* condemnation processes, including those outlined under the Uniform Condemnation Procedures

Act, MCL § 213.51, *et seq* and in violation of Article X, Section 2 of the Michigan Constitution.

85.514.　Defendants have not and will not provide Plaintiffs and the members of the Class any opportunity to claim their Equity after the seizure and/or later sale of their respective property, nor do Defendants provide or have a process to claim compensation at the time the Defendants seized title to their taken property interests.

86.515.　Defendants have not paid just compensation.

87.516.　Defendants will not now pay just compensation.

88.517.　Defendants do not intend to pay just compensation in the future.

89.518.　Those Class Members whose principal residences were taken are entitled to compensation equaling 125 percent of the properties' fair market value under Article X § 2 of the Michigan Constitution.

519.　Plaintiffs and the Class have been injured and have suffered damages.

520.　Plaintiffs acknowledge that the Court has dismissed this claim when it was previously pled. (ECF No. 148). They respect this decision, but make claims against them here in order to preserve appellate rights and in light of the Sixth Circuit's decision in *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022).

90.

## COUNT V
## VIOLATION OF THE EIGHTH AMENDMENT

**42 USC § 1983**
**(AGAINST ALL DEFENDANTS)**

~~1.~~521. The prior paragraphs are restated word for word herein.

~~2.~~522. This Count is pled to the extent that Defendants argue or assert that Plaintiff_s_ or any Class Member "forfeited" or, as it is sometimes described, "relinquished" property pursuant to the Act.

~~3.~~523. The Eighth Amendment to the United States Constitution is the part of the United States Bill of Rights prohibiting the government from imposing excessive fines, which the US Supreme Court has applied to action(s) involving forfeitures.

~~4.~~524. The Fourteenth Amendment applies the Eighth Amendment to states and state actors such as Defendants.

~~5.~~525. By imposing and retaining an excessive fine in the form of the forfeiture of value of the equity interest in property in excess of the tax delinquency, Plaintiff_s_~~'s~~ and the Class Members' Eighth Amendment rights have been violated. *See Austin v. United States*, 509 U.S. 602 (1993).

~~6.~~526. Defendants' retention of the Equity, which by definition is exclusive of the Tax Delinquency, is punitive and not remedial.

~~7.~~527. The conduct of Defendants was reckless and undertaken with complete indifference to Plaintiff_s_~~'s~~ and the Class Members' federal rights to be free from violations of the Eighth Amendment to the United States Constitution.

~~8.~~528. Said actions violate the Eighth Amendment to the United States Constitution and are remedied by a money judgment against Defendants pursuant to 42 U.S.C. § 1983 and § 1988.

529.   Plaintiffs and the Class have been injured and have suffered damages.

530.   Plaintiffs acknowledge that the Court has dismissed this claim when it was previously pled. (ECF No. 148). They respect this decision, but make claims against them here in order to preserve appellate rights and in light of the Supreme Court's decision in *Tyler v. Hennepin Cnty., Minnesota*, 215 L. Ed. 2d 564, 143 S. Ct. 1369 (2023).

~~9.~~

**COUNT VI**
**42 USC § 1983**
**VIOLATION OF PROCEDURAL DUE PROCESS**
**(AGAINST ALL DEFENDANTS)**

~~10.~~531.      Plaintiffs restates the prior paragraphs as if restated fully herein.

~~11.~~532.      The Fourteenth Amendment guarantees procedural due process to Plaintiffs and the Class.

~~12.~~533.      Plaintiffs and the Class have a Constitutionally-protected property interest in the Equity of their respective properties.

~~13.~~534.      Defendants have denied Plaintiff~~s~~ and the Class Members these rights by failing to provide for any procedure at all for Plaintiff~~s~~ or the Class Members to secure a refund of their Equity after their properties' sale at auction, or even after their complete seizure in anticipation of same.

~~14.~~535.      As a direct and proximate result of the Defendants' failure to provide adequate procedural due process, Plaintiff~~s~~ and the Class Members have been injured and have suffered damages.

~~15.~~536.      Neither Plaintiff~~s~~ nor any Class Member ~~has~~ have an adequate remedy at law except as set forth in this Complaint.

## COUNT VII
## 42 USC § 1983
## VIOLATION OF SUBSTANTIVE DUE PROCESS
## (AGAINST ALL DEFENDANTS)

~~16.~~537.      Plaintiff~~s~~ restates the prior paragraphs as if restated fully herein.

~~17.~~538.      The Fourteenth Amendment guarantees substantive due process to Plaintiff~~s~~ and the Class.

~~18.~~539.      Defendants' conduct has deprived and is depriving Plaintiff~~s~~ and the Class of their Constitutionally-protected right to their Equity.

~~19.~~540.      Plaintiff~~s~~'s' and the Class Members' rights to their properties, and therefore their Equity, is well established.

20.541.     Defendants' conduct in destroying and/or seizing Plaintiffs's and

Class Members Equity is arbitrary and/or shocks the conscience.

21.542.     As a direct and proximate result of these violations, Plaintiffs and

the Class Members have been injured and have suffered damages.

543.   Plaintiffs and Class Members do not have an adequate remedy at law

except as asserted in this Complaint.

22.544.     Plaintiffs acknowledge that the Court has dismissed this claim

when it was previously pled. (ECF No. 148). They respect this decision, but make

claims against them here in order to preserve appellate rights and in light of their

right to plead in the alternative.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(AGAINST THE COUNTY DEFENDANTS)**

23.545.     Plaintiffs restates the prior paragraphs as if restated fully herein.

24.546.     Defendants have illegally seized Equity from Plaintiffs and the

Class.

25.547.     This illegal seizure has unjustly enriched the Defendant

Counties.

26.548.     Under these circumstances, it is inequitable for the Defendant

Counties to retain the proceeds from the sales of the properties at auction to the

extent that the proceeds from each such sale exceeded the Tax Delinquency for each such property.

27.549.    Plaintiffs and Class Members do not have an adequate remedy at law except as asserted in this Complaint.

28.550.    This unjust enrichment has injured and damaged the Plaintiffs and the Class Members.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs Thomas A. Fox; and Robert A. Mackenzie, Chapter 7 Trustee for Home Opportunity, LLC; Nancy Lambert; Kyle Rowekamp; Brian Scherzer; Felix Escareno; Estate of Troy Pence c/o Anna Pence; Estate of Amy Cantor c/o Jeffrey Cantor; Michael Blaszczak; Kenneth G. McNeil; Donna Sinclair; Gloria Doty; Cynthia M. Zak; Colby Smith; Albert Moore Jr.; Lisa Dufore; Eugene Causley Sr.; Mitchell D. James; Harold F. Reno Jr.; Nicole Vedrode; Shalene Pope f/k/a Shalene Swift; Lawrence Edwards; Brenda Edwards; Bandacar, Inc.; Gina Love and the Class Members respectfully request this Court to:

    a.  Enter an order certifying this case as a class action;

    b.  Enter an order declaring the conduct of Defendants as being unconstitutional under the federal and state constitutions, even if being undertaken consistent with the General Property Tax Act;

c.  Enter an order for any and all damages and/or compensation as is deemed proper;

d.  Enter an order disgorging the County Defendants' proceeds from the sales auctions to the extent that the proceeds from each such sale exceed the Tax Delinquencies for each respective property;

e.  Enter an order of additional damages and/or compensation to reach an amount equaling 125% of the property's fair market value if this Court determines that private property consisting of an individual's principal residence was taken for public use pursuant to Article X, Section 2 of the Michigan Constitution;

f.  Enter an order for an award of interest as provided for in *Knick v. Twp. of Scott*;

g.  Enter an order for any and all damages available under federal law as applicable, including but not limited to an award of nominal and punitive damages;

h.  Enter an order for an award of attorney fees and expenses pursuant to all applicable laws, rules, or statutes;

i.  Enter an order for restitution; and

j.  Enter an order for all such other legal and equitable relief which the Court deems proper.

## JURY DEMAND

For all triable issues, a jury is hereby demanded.

Date: August 14, 2023                    Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Christopher D. Kaye (P61918)
**THE MILLER LAW FIRM PC**
950 West University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
cdk@millerlawpc.com


**OUTSIDE LEGAL
COUNSEL PLC**
Phillip L. Ellison (P74117)
PO Box 107
Hemlock, MI 48626
Tel: (989) 642-0055
Fax: (888) 398-7003
pellison@olcplc.com

Matthew E. Gronda (P73693)
PO Box 70
St. Charles, MI 48655
Tel: (989) 249-0350
Fax: (989) 393-5981
matthewgronda@gmail.com

*Attorneys for Plaintiffs*