UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS A. FOX, et al.,

        Plaintiff,                                 Case No. 1:19-cv-11887

v.                                               Honorable Thomas L. Ludington
                                                           United States District Judge
COUNTY OF SAGINAW, et al.,

        Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND DENYING PLAINTIFFS' MOTION FOR EXPEDITED CONSIDERATION AS MOOT**

Michigan's General Property Tax Act (GPTA) features a tax-foreclosure scheme that allows Michigan counties to foreclose on and auction delinquent taxpayer's properties. But for years, the GPTA required counties to keep the difference between the property owners' tax delinquency and the auction price—what courts now call "surplus proceeds." So, for example, under this framework, if a taxpayer owed $1,000 in delinquent property taxes, the county would auction their property for $10,000, apply $1,000 of it to the tax debt, and then pocket the remaining $9,000. The Sixth Circuit, "the Michigan Supreme Court, and the United States Supreme Court all agree that this kind of scheme is an unconstitutional taking." *Bowles v. Sabree*, 121 F.4th 539, 545 (6th Cir. 2024).

This case stems from that scheme. Plaintiff Thomas Fox and twenty-four other Plaintiffs brought this putative class action against twenty-seven Michigan counties. Plaintiffs allege that the Defendant counties unlawfully retained the surplus proceeds after auctioning Plaintiffs' tax-delinquent properties. But during this case, in December 2020, Michigan's legislature amended the GPTA through Public Act 256 (PA 256), creating a statutory process for taxpayers to reclaim

their surplus proceeds from counties. Recently, Michigan's Supreme Court held that PA 256 is retroactive, so taxpayers whose properties were auctioned before Michigan enacted PA 256 can use it to recover their surplus proceeds by submitting a timely claim.

With a state-crafted March 31, 2025, deadline to submit a PA 256 claim approaching and due process concerns at play, Michigan counties—including Defendants—plan to notify taxpayers whose properties were auctioned before PA 256's enactment about this deadline. The notice informs taxpayers of their recovery rights and briefly explains the process for obtaining their surplus proceeds under PA 256. Plaintiffs oppose Defendants' notice. So, on January 29, 2025, Plaintiffs filed a motion seeking a temporary restraining order (TRO) to enjoin Defendants from issuing the notice. Plaintiffs also filed a motion seeking expedited consideration of their TRO Motion. As explained below, Plaintiffs' motions will be denied.

I.

About five years ago, Plaintiff Thomas A. Fox filed a class action against twenty-seven Michigan counties. ECF No. 1. He alleged, among other things, that the Defendant counties violated his state and federal constitutional rights. *Id.* at PageID.11–18. Specifically, Plaintiff Fox alleged the counties violated his rights when they complied with Michigan's General Property Tax Act's (GPTA), MICH. COMP. LAWS § 211.78 *et seq.*, tax-foreclosure scheme by foreclosing on properties with delinquent property taxes and keeping the taxpayer's equity in the property that exceeded the amount of the unpaid tax. *Id.* After a series of appeals, Plaintiff Fox and twenty-four other Plaintiffs filed a second amended complaint with class allegations against Defendants, ECF

No. 358, bringing the same claims, *compare id.* at PageID.93–103 *with* ECF No. 1 at PageID.11–18. At this juncture, this is a putative class action.[1] *See* ECF. No. 412 at PageID.10456–58.

During this case, various rulings in different jurisdictions have created a patchwork of law governing Plaintiffs' claims. *See Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434 (Mich. 2020) (holding that the retention of surplus proceeds violates Michigan's constitution); *see also Hall v. Meisner*, 51 F.4th 185, 196 (6th Cir. 2022), *reh'g denied*, No. 21-1700, 2023 WL 370649 (6th Cir. Jan. 4, 2023), *cert. denied sub nom. Meisner v. Tawanda Hall*, 143 S. Ct. 2639 (2023) (concluding that a Michigan county retaining surplus proceeds under the GPTA "took the plaintiffs' property without just compensation, in violation of the Takings Clause"); *Tyler v. Hennepin Cnty., Minn.*, 598 U.S. 631, 644 (2023) (holding a county's retention of surplus proceeds from a tax-foreclosure sale violates the Fifth Amendment where there is "no opportunity for the taxpayer to recover" surplus proceeds); *Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284 (6th Cir. 2023); *In re Muskegon Cnty. Treasurer for Foreclosure*, No. 363764, 2023 WL 7093961 (Mich. Ct. App. Oct. 26, 2023); *Schafer v. Kent Cnty.*, No. 164975, 2024 WL 3573500 (Mich. July 29, 2024).

In response to one of these decisions—the Michigan Supreme Court's *Rafael* decision—Michigan enacted Public Act 256 (PA 256) on December 22, 2020, which provides a statutory process for taxpayers to recover their surplus proceeds. MICH. COMP. LAWS § 211.78t; *see also Schafer*, 2024 WL 3573500, at *14–19. For some time, it was not clear whether PA 256 permitted taxpayers whose properties were foreclosed and sold before PA 256's enactment to use its procedures to retrieve their surplus proceeds. *Schafer*, 2024 WL 3573500, at *14–19. But on July 29, 2024, the Michigan Supreme Court ruled that PA 256 is retroactive, allowing pre-PA 256

---

[1] For a more detailed account of this case's facts and history, see this Court's August 16, 2024, Order, ECF No. 412.

property owners to use the law to recover surplus proceeds. *Id.* The Michigan Supreme Court also concluded that such property owners were entitled to a "reasonable" amount of time to file their claim under PA 256. *Id.* at *20. Further, the Michigan Supreme Court stated that PA 256 "establishes a controlled and limited time window by which claimants may file their notice of intent to claim surplus proceeds." *Id.* at *21 (citing MICH. COMP. LAWS § 211.78t(c)). And the Parties suggest that this window closes on March 31, 2025, because *Schafer* referenced that date in passing. *See id.*; *see also* ECF No. 437 at PageID.11102 ("[Michigan's] Supreme Court found that the statute had accounted for how this deadline would be set, requiring submission by the first March 31 that is 180 days after the Supreme Court's retroactivity decision in *Schafer*. . . . This works out to be March 31, 2025.").

Recognizing that the time to use this exclusive state-law remedy wanes each day, on August 16, 2024, this Court directed the Parties to draft and issue a notice to all putative class members, alerting them of their rights under PA 256. ECF No. 412 at PageID.10455–56. On August 30, 2024, Defendants sought reconsideration and asked this Court to retract its Order directing notice. ECF No. 414. On September 26, 2024, this Court denied that motion and directed the Parties to issue an approved notice under Civil Rule 23(d), in part because "[t]he clock is ticking on . . . property owner's right to relief under PA 256," given the potential statute of limitations deadline of March 31, 2025. ECF No. 427 at PageID.10735. This Court also flagged issues that might arise if taxpayers whose properties were foreclosed and sold before PA 256's enactment did not receive notice of their rights under PA 256. *See id.* at n.2.

Soon after, Defendants filed a petition for a writ of mandamus in the United States Court of Appeals for the Sixth Circuit. ECF No. 436. Defendants argued that this Court erred in ordering

precertification notice to putative class members. ECF No. 436-1 at PageID.11021–27. But before the Sixth Circuit could address this petition, things changed.

On November 4, 2024, the Sixth Circuit issued a decision reiterating that the GPTA's previous scheme of requiring counties to retain surplus proceeds was unconstitutional. *Bowles*, 121 F.4th at 545 (noting that these cases are "not about whether [the counties] violated the law. [They] did."). And the decision closed with a directive to Michigan counties: "[O]ne way or another, the count[ies] need[] to pay up. After all, the 'taxpayer must render unto Caesar what is Caesar's, but no more.'" *Id.* at 556 (citing *Tyler*, 598 U.S. at 647).

Then, on November 9, 2024, the Parties engaged in mediation. ECF No. 462 at PageID.11749. At mediation, the Parties agreed to "principal terms of a settlement that would resolve the claims of all putative class members." *Id.* Thus, the Parties requested that this Court vacate its September 26, 2024 precertification notice order, mooting Defendants' petition for a writ of mandamus and preserving the status quo. *Id.* at PageID.11750. So this Court issued an order doing just that. *Id.* at PageID.11754.

On January 24, 2025, Defense Counsel emailed Plaintiffs' Counsel to notify them that Defendants plan to issue a notice—as soon as January 31, 2025[2]—to taxpayers whose properties were auctioned before PA 256's enactment. *See* ECF No. 466-3. Defendants intend to issue the notice "given the impending [PA 256] deadline and various challenges in various fora" about PA 256 notice requirements under the Fourteenth Amendment's Due Process Clause. *Id.* at PageID.11812. The notice says nothing about this case or other pending federal actions. *See*

---

[2] On January 30, 2025, several Defendants filed a notice indicating that they would not send the notice until February 7, 2025. ECF No. 468. But Defendants Crawford, Presque Isle, and Washtenaw Counties did not join that notice, *id.*, and Defense Counsel's email suggests these Counties intend to send a similar notice possibly as early as January 31, 2025, *see* ECF No. 466-3. So urgency persists.

*generally id.* at PageID.11813. Rather, the notice simply informs recipients about PA 256, its potential March 31, 2025 statute of limitations deadline, taxpayer's rights under PA 256, and how to file a PA 256 claim. *Id.* And in their email, Defense Counsel states that "we have not and are not taking the position that anyone who files a notice by the March 31 deadline must or should be excluded from any settlement class." *Id.* at PageID.11812.

Plaintiffs oppose this notice. On January 29, 2025, Plaintiffs filed an emergency motion seeking a temporary restraining order (TRO) that enjoins Defendants from issuing this notice. ECF No. 466. That same day, Plaintiffs filed a motion to expedite consideration of their TRO Motion. ECF No. 467.

## II.

Plaintiffs' argument for a TRO is two-fold. First, Plaintiffs argue that Civil Rule 23(d) warrants enjoining Defendants from sending their PA 256 notice because it is "abusive." *See* ECF No. 466 at PageID.11790–97. Second, Plaintiffs argue that they are entitled to a TRO under Civil Rule 65(b) because they will suffer irreparable harm if Defendants send the notice. *Id.* at 11797–802. Both arguments are misplaced.

### A.

Start with Plaintiffs argument that Civil Rule 23(d) warrants enjoining Defendants from sending their PA 256 notice. Under Civil Rule 23(d), courts may "enjoin a named party from communicating with unnamed potential class members." *See Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *10 (E.D. Mich. June 30, 2016) (citing FED. R. CIV. P. 23(d)(1)) (collecting cases). But a "court's discretion to issue such an order" is not boundless. *Id.* (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). And the party seeking an injunction under Rule

23(d) "must demonstrate that the actual or anticipated communications are . . . abusive in that they threaten the proper functioning of the litigation." *Id.* at *11 (cleaned up).

Plaintiffs have not met this burden. Plaintiffs argue that Defendants' notice is abusive because it is misleading and could undermine efficient adjudication of this case and its pending settlement. *See* ECF No. 11790–96. To that end, Plaintiffs argue the notice lacks information about this case, which could mislead recipients. *Id.* Further, Plaintiffs argue Defendants may be sending the notice to encourage putative class members to use PA 256 to recover their surplus proceeds so they can later argue that anyone who filed a PA 256 claim cannot participate in this case's class settlement. *Id.*

But the record doesn't support Plaintiffs arguments. The record reflects that Defendants are notifying taxpayers about PA 256 to comply with notice requirements under the Fourteenth Amendment's Due Process Clause. Indeed, the March 31, 2025, claims deadline approaches, and *Plaintiffs* themselves have represented that this date is the PA 256 filing cutoff for taxpayers whose properties were auctioned before Michigan enacted PA 256. *See* ECF Nos. 466-3 at PageID.11812; 437 at PageID.11102 ("[Michigan's] Supreme Court found that the statute had accounted for how this deadline would be set, requiring submission by the first March 31 that is 180 days after the Supreme Court's retroactivity decision in *Schafer*. . . . This works out to be March 31, 2025."). And the proposed notice doesn't contain any misleading information about PA 256. *See generally* ECF No. 466-3 at PageID.11813.

Sure, Defendants' PA 256 notice doesn't address this case. *See id.* But under these circumstances, nothing suggests Defendants omitted this information to mislead or effectuate a scheme to limit putative class members' recovery by shepherding them into PA 256's claims process. Indeed, Defense Counsel explicitly told Plaintiffs that "[Defendants] have not and are not

taking the position that anyone who files a notice by the March 31 deadline must or should be excluded from any settlement class." *Id.* at PageID.11812. Not to mention—as Plaintiffs point out—the Sixth Circuit recently issued decisions that, in many ways, undercut Defendants' ability to make such arguments. *See, e.g., Pung v. Kopke*, No. 22-1919, 2025 WL 318222, at *4 (6th Cir. Jan. 28, 2025) (noting that Fifth Amendment takings compensation requirements are "independent of any compensation remedy available under state law"). At bottom, given the notice's lack of abusive content, Plaintiffs' speculation about what Defendants might argue in the future doesn't warrant an injunction under Civil Rule 23(d).

## B.

Now turn to Civil Rule 65. A Court may issue a temporary restraining order without notice to the adverse party only if the movant sets forth "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and if "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

If the movant clears those procedural hurdles, then courts move to the merits. In determining whether to grant a TRO, a court must weigh four factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief, (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and (4) whether the public interest would be served by granting the preliminary injunctive relief." *A & W X-Press, Inc. v. FCA US, LLC*, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). The TRO standard is "logically the same as for a

preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016).

Here, Plaintiffs' argument that they are entitled to a TRO under Civil Rule 65(b) doesn't pass muster. Critically, Plaintiffs have not shown that they will suffer irreparable harm absent an injunction. Plaintiffs state that "misleading the putative class members undermining the resolution of this case would constitute irreparable injury." ECF No. 466 at PageID.11799. But as explained above, the notice is not misleading. *See supra* Section II.A. Nor does the record support that the notice risks undermining this litigation. *Id.* Further, enjoining Defendants from issuing notice could harm taxpayers with PA 256 claims. Defendants may violate taxpayers' due process rights without issuing notice before the PA 256 filing deadline, as Defendants' Counsel notes in their email. ECF No. 466-3 at PageID.11812. Plaintiffs point to the Parties' signed principal terms sheet to suggest that this concern is now off the table because the settlement would cover the putative class members who miss the PA 256. *See* ECF No. 466 at PageID.11800. But that assumes that a final settlement will come to fruition and that all putative class members who could benefit from PA 256 will opt into the settlement. And this prospective harm to the very people Plaintiffs seek a TRO to purportedly protect demonstrates that a TRO is not in the public interest.

In sum, Plaintiffs have not shown that a TRO is warranted under these circumstances. Plaintiffs did not demonstrate that the notice is abusive such that Civil Rule 23(d) would warrant an injunction. Nor did Plaintiffs demonstrate that they are entitled to a TRO under Civil Rule 65(b). So Plaintiffs' Motion for a TRO, ECF No. 466, will be denied, and Plaintiffs' Motion to Expedite Consideration of their TRO Motion, ECF No. 467, will be denied as moot.

## III.

Accordingly, it is **ORDERED** that Plaintiff's Motion for a Temporary Restraining Order, ECF No. 466, is **DENIED**.

Further, it is **ORDERED** that Plaintiffs' Motion to Expedite Resolution of their Emergency Motion for a Temporary Restraining Order, ECF No. 467, is **DENIED AS MOOT**.

**This is not a final order and does not close the above-captioned case.**

Dated: January 31, 2025                    s/Thomas L. Ludington
                                           THOMAS L. LUDINGTON
                                           United States District Judge